# Exhibit A

**Proposed Bidding Procedures Order**

## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF DELAWARE

```
------------------------------------------------------------x
                                          :
In re:                                    :    Chapter 11
                                          :
                                          :    Case No. 10-10250 (MFW)
PCAA PARENT, LLC, et al.,¹                :
                                          :    Jointly Administered
                                          :
                    Debtors.              :    Re: Docket No. ____
------------------------------------------------------------x
```

## ORDER (I) APPROVING BIDDING PROCEDURES IN CONNECTION WITH THE SALE OF CERTAIN ASSETS, (II) AUTHORIZING PCAA TO ENTER INTO AN ASSET PURCHASE AGREEMENT IN CONNECTION THEREWITH, (III) APPROVING BREAK-UP FEE AND EXPENSE REIMBURSEMENT PROTECTIONS, (IV) SCHEDULING AUCTION AND HEARING DATES, AND (IV) GRANTING OTHER RELATED RELIEF

Upon the motion, dated January 28, 2010 [Docket No. ___] (the "Motion"), of

PCAA Parent, LLC, together with its affiliated debtors and debtors in possession (collectively,

"PCAA") in the above-captioned chapter 11 cases (the "Chapter 11 Cases"), pursuant to sections

105, 363, 365, and 503 of chapter 11 of title 11 of the United States Code (the "Bankruptcy

Code") and Rules 2002, 6004, and 6006 of the Federal Rules of Bankruptcy Procedure (the

"Bankruptcy Rules"), for orders, among other things, as to the following: (i) approving the

bidding procedures set forth herein and attached as Exhibit 1 to the Motion (the "Bidding

Procedures"), (ii) authorizing PCAA to enter into that certain Asset Purchase Agreement by and

between PCAA Parent, LLC and the other debtors named therein (collectively, the "Sellers") and

---

[1] The PCAA entities, along with the last four digits of their respective federal tax identification numbers (as applicable), are as follows: PCAA Parent, LLC (8827); PCAA Chicago, LLC (0860); PCAA GP, LLC (4237); PCAA LP, LLC (none); PCAA Properties, LLC (0617); PCAA SP, LLC (3465); Airport Parking Management, Inc. (7571); PCAA Missouri, LLC (5702); PCAA SP-OK, LLC (none); PCAA Oakland, LLC (9451); Parking Company of America Airports, LLC (9249); PCA Airports, Ltd. (8348); Parking Company of America Airports Phoenix, LLC (8343); and RCL Properties, LLC (2006). The mailing address for PCAA is 621 North Governor Printz Boulevard, Essington, PA 19029.

Bainbridge/ZKS Holding Company, LLC ("Buyer"), dated as of January 28, 2010 (including all exhibits, schedules and agreements attached thereto, the "Agreement") or an asset purchase agreement, if any, related to any higher or otherwise better bid, (iii) approving the Break-Up Fee and Expense Reimbursement as set forth in the Agreement (collectively, the "Stalking Horse Provisions"), (iv) approving the form and manner of notice of the sale of assets as set forth in the Motion (the "Procedures Notice"), (v) approving the form and manner of notice of the assumption and assignment of executory contracts and the process for determining any defaults and cure costs or other obligations owing or that may become owing to contract and lease counterparties upon assumption and assignment as set forth herein (the "Contract Procedures"); and (vii) scheduling the Auction for [_____], 2010 and a hearing for [_____], 2010 to approve the sale of the Purchased Assets (the "Sale Hearing"), the assumption and assignment of certain executory contracts and unexpired leases (the "Assumed Agreements"), and the other transactions contemplated by the Agreement (collectively, the "Transactions"); and upon the Court having held a hearing on [_____], 2010 to consider the relief requested in the Motion (the "Procedures Hearing"); and upon the record of the Procedures Hearing with respect to the Motion, the testimony and evidence admitted at the Procedures Hearing and any objections filed and raised at the Procedures Hearing; and upon all of the proceedings had before the Court; and after due deliberation thereon, and sufficient cause appearing therefor,

## IT IS HEREBY FOUND AND DETERMINED THAT:

A.      The Court has exclusive jurisdiction over this matter and over the property of PCAA and its respective bankruptcy estates pursuant to 28 U.S.C. §§ 157(a) and 1334 and Local Rule 6004-1 of the Local Rules for the United States Bankruptcy Court for the District of Delaware (the "Local Rules"). This matter is a core proceeding pursuant to 28 U.S.C. §

2

157(b)(2)(A), (N), and (O). The statutory predicates for the relief sought in the Motion are 11 U.S.C. §§ 105, 363, 364, 365 and 503 and Fed. R. Bankr. P. 2002, 6004, 6006 and 9014. Venue of this case and the Motion is proper pursuant to 28 U.S.C. §§ 1408 and 1409.

B.      PCAA has provided due and proper notice of the Motion, the Bidding Procedures, and the Procedures Hearing to (i) the U.S. Trustee, (ii) counsel for the Buyer, (iii) [counsel for the Creditors' Committee], (iv) PCAA's prepetition secured lenders, and their respective agents, if any, (v) the agents for PCAA's proposed DIP lenders, and (vi) those creditors of PCAA holding the 30 largest unsecured claims, and no other or further notice need be provided. A reasonable opportunity to object or be heard regarding the relief requested in the Motion (including, without limitation, with respect to the Bidding Procedures and the Stalking Horse Provisions) has been afforded.

C.      PCAA has articulated good and sufficient reasons for the Court to (i) approve the Bidding Procedures, (ii) authorize PCAA's entry into the Agreement, (iii) approve the Stalking Horse Provisions, (iv) approve the Procedures Notice, (v) approve the Contract Procedures, and (vi) set dates for objections, competing bids, auction, and hearing as described herein. Such good and sufficient reasons were set forth in the Motion and on the record at the Procedures Hearing and are incorporated by reference herein, and, among other things, form the basis for the findings of fact and conclusions of law set forth herein.

D.      The Procedures Notice is appropriate and reasonably calculated to provide all interested parties with timely and proper notice and an opportunity to be heard with respect to the relief requested in the Motion, and no other or further notice is required.

E.      The Bidding Procedures, including the Stalking Horse Provisions set forth herein, are commercially reasonable, necessary and appropriate, and represent the best method

for maximizing the realizable value of the Purchased Assets. The Bidding Procedures, including the Stalking Horse Provisions, were negotiated at arms' length and in good faith between PCAA and the Buyer. The Buyer has conditioned its bid on the provision for the Break-Up Fee and the Expense Reimbursement.

F.     PCAA has demonstrated a compelling and sound business justification for authorization to (i) enter into the Agreement, and (ii) under certain circumstances (described infra), pay the Break-Up Fee and Expense Reimbursement under the terms and conditions set forth in Section 7.1 of the Agreement.

G.     The Break-Up Fee and Expense Reimbursement, as set forth in Section 7.1 of the Agreement, and as further described in the Bidding Procedures are fair and reasonable, were negotiated at arms' length and in good faith, and provide a significant and demonstrable benefit to PCAA's estates and creditors.

H.     PCAA's payment of the Break-Up Fee and/or the Expense Reimbursement, both under this Order and upon the conditions set forth in the Agreement, are (i) actual and necessary costs of preserving PCAA's estates within the meaning of sections 503(b) and 507(a) of the Bankruptcy Code, (ii) of substantial benefit to PCAA's estates and creditors and all parties in interest herein, (iii) reasonable and appropriate, including in light of the size and nature of the Transactions, and the efforts that have been and will be expended by the Buyer in connection with the Transactions, and (iv) a material inducement for, and condition necessary to ensure that, the Buyer pursue the Transactions.

I.     The Contract Procedures are reasonable and appropriate, provide counterparties to the Assumed Agreements and all other parties in interest with due process including proper notice and an opportunity to be heard, and conform in all respects to the

4

relevant portions of the Bankruptcy Code the Bankruptcy Rules, and Local Rules, except to the extent that, in accordance with the Bankruptcy Code, the Bankruptcy Rules, and Local Rules, the Court has determined it is permissible and appropriate to require modified cure procedures in light of the facts and circumstances of the proposed Transactions and PCAA's Chapter 11 Cases.

J.     The dates established below and in the notices annexed to the Motion for (i) any objections to the sale of assets, assumption, and assignment of executory contracts and unexpired leases, defaults and cure costs and other obligations under executory contracts and unexpired leases, (ii) any competing bids for the purchase of assets, contracts, and leases, (iii) an auction to consider any qualifying competing bids submitted by the Bid Deadline, and (iv) a hearing to approve the sale of assets and the assumption and assignment of Assumed Agreements and other Transactions are reasonable and appropriate, provide counterparties to the Assumed Agreements and all other parties in interest with due process including proper notice and an opportunity to be heard, and conform in all respects to the relevant portions of the Bankruptcy Code , the Bankruptcy Rules, and Local Rules, except to the extent that, in accordance with the Bankruptcy Code and the Bankruptcy Rules, the Court has determined it is permissible and appropriate to require modified dates in light of the facts and circumstances of the proposed Transactions and PCAA's Chapter 11 Cases.

K.     Entry of this Order is in the best interests of PCAA and its estates, creditors, interest holders and all other parties-in-interest.

L.     The findings and conclusions set forth herein constitute the Court's findings of fact and conclusions of law pursuant to Bankruptcy Rule 7052, made applicable to this proceeding pursuant to Bankruptcy Rule 9014.

M.     To the extent any of the following findings of fact constitute conclusions

of law, they are adopted as such. To the extent any of the following conclusions of law constitute findings of fact, they are adopted as such.

### THEREFORE, IT IS ORDERED, ADJUDGED, AND DECREED THAT:

1.  The Motion is granted in its entirety and as provided herein.

2.  All objections filed in response to the Motion or the relief requested therein that have not been withdrawn, waived, settled, or specifically addressed in this Order, and all reservations of rights included in such objections, are specifically overruled in all respects on the merits.

3.  PCAA is hereby granted full corporate power and authority to execute the Agreement, and all other documents and instruments contemplated thereby, provided that the performance by PCAA under such agreements, documents and instruments, except as expressly authorized herein, shall remain subject to the occurrence of the Sale Hearing and entry of the Sale Order.

### I.  Approval of the Bidding Procedures

4.  The Bidding Procedures for the competitive bidding on and sale and assignment of the Purchased Assets, as set forth on Exhibit 1 to the Motion and incorporated herein, are hereby approved in their entirety and PCAA is authorized to act in accordance therewith. The failure specifically to include or reference a particular provision of the Bidding Procedures in this Order shall not diminish or impair the effectiveness of such provision.

5.  To constitute a "Qualified Bid," a bid (other than the Agreement) must be received by the Bid Deadline (as defined in the Bidding Procedures) and comply with the Bidding Procedures. The Agreement is a Qualified Bid and the Buyer is deemed a Qualified Bidder.

6

6.    PCAA (a) may determine which Qualified Bid (as defined in the Bidding Procedures), if any, is the highest or otherwise best offer and (b) may reject, at any time, any bid that is (i) inadequate and insufficient, (ii) not in conformity with the requirements of the Bidding Procedures, or (iii) contrary to the best interests of PCAA, its estates and their constituencies, as determined by PCAA in its sole discretion. Only Qualified Bids shall be considered. Notwithstanding anything contained in this paragraph 6 to the contrary, the Buyer's bid under the Agreement is a Qualified Bid and, in the event there is no auction in accordance with the Bidding Procedures, the Agreement represents the highest and best offer.

## II.    Approval of the Sale Notice

7.    The Procedures Notice, attached as Exhibit D to the Motion is hereby approved.

8.    The Procedures Notice constitutes sufficient notice of the Motion, the Agreement, and the sale of the Purchased Assets, including the Assumed Agreements, free and clear of all liens, claims, encumbrances, and other interests, the assumption of the Assumed Liabilities by the Buyer, the retention of the Excluded Liabilities by the Sellers, and the Transactions, and no other or further notice is necessary or required.

9.    Service of the Procedures Notice on the Notice Parties in the manner described herein and in the Motion constitutes good and sufficient notice of the Auction and the Sale Hearing. No other or further notice is necessary or required.

## III.    Approval of Contract Procedures

10.    The Contract Procedures regarding the process for (i) providing notice of the assumption and assignment of the Assumed Agreements, (ii) determining any defaults that may exist under the Assumed Agreements, and (iii) determining any cure costs or other

7

obligations that are owing or that may become owing to contract and lease counterparties upon assumption and assignment of the Assumed Agreements, as set forth on Exhibit F to the Motion and incorporated herein by reference, are hereby approved and shall govern all proceedings relating to the Transactions.

11.     PCAA shall file with the Court a schedule of Assumed Agreements as designated in the Agreement and subject to modification as set forth therein. PCAA shall serve each of the counterparties to the Assumed Agreements and all other parties in interest, if any, with the Assignment and Cure Notice, as set forth on Exhibit F attached to the Motion, which notice shall include a list of any Cure Amounts that PCAA believes may be payable upon assumption and assignment of such Assumed Agreement and the deadlines by which such non-debtor parties must object.

12.     The Assignment and Cure Notice, as set forth on Exhibit F to the Motion, constitutes sufficient notice to counterparties to the Assumed Agreements and all other parties in interest, if any, of the assumption and assignment of the Assumed Agreements, the proposed Cure Amounts (if any), the assumption of the Assumed Liabilities by the Buyer, the retention of the Excluded Liabilities by the Sellers, and no other or further notice is necessary or required. The delivery of an Assignment and Cure Notice does not obligate the Buyer to take assignment of any contract and the assignment of contracts shall occur only in accordance with, and subject to the conditions of, the Agreement or any other agreement executed by the Successful Bidder (as defined in the Bidding Procedures).

13.     The Contract Procedures constitute a sufficient process for determining any defaults that may exist under the Assumed Agreements, and for determining any Cure Amounts or other obligations that are owing or that may become owing to counterparties under

8

Assumed Agreements upon assumption and assignment, and no other or further process is necessary or required.

14.     Any objections to the assumption and/or assignment of any Assumed Agreement, including to the Cure Amounts set forth on such notice, must be in writing, filed with the Court, and be actually received in accordance with the Contract Procedures.

15.     Provided that the Contract Procedures are complied with in all material respects, (i) all counterparties to the Assumed Agreements and all other parties in interest shall be deemed to have received notice of the assumption and assignment of the Assumed Agreements and the proposed Cure Amounts for the Assumed Agreements, the assumption of the Assumed Liabilities by the Buyer and the retention of the Excluded Liabilities by the Sellers, as may be required by the Bankruptcy Code, the Bankruptcy Rules, and the Local Rules, or otherwise, and any party in interest that fails to raise an objection to the assumption and assignment of an Assumed Agreement in accordance with the process and deadlines set forth herein shall be deemed to have fully and forever waived such objection; and (ii) all counterparties to the Assumed Agreements and all other parties in interest shall be deemed to have had sufficient opportunity to raise and be heard on any defaults, Cure Amounts or other obligations that such counterparty or other party in interest may allege exist or will become due and owing under any Assumed Agreements upon assumption and assignment, as may be required by the Bankruptcy Code, the Bankruptcy Rules, the Local Rules, or otherwise, and any counterparty or other party in interest that fails to raise any alleged defaults or Cure Amounts or other obligations in accordance with the process and deadlines set forth herein shall be deemed to have fully and forever waived such default, Cure Amounts, or other obligations.

16.     If a timely objection is received and such objection cannot otherwise be

9

resolved by the parties, the Court may hear such objection at a later date set by the Court. The

pendency of a dispute relating to Cure Amounts will not prevent or delay the assumption and

assignment of any contracts designated as an Assumed Agreement at Closing.

### IV.   Approval of the Stalking Horse Provisions

17.     The Stalking Horse Provisions are hereby approved, and PCAA is hereby

authorized and directed to perform their obligations thereunder.

18.     Without limiting the immediately preceding paragraph, PCAA is

authorized and directed to pay the Break-Up Fee and the Expense Reimbursement as provided

under the Agreement without further application to or order from the Court. The Break-Up Fee

shall be equal to $3,345,000, and shall be paid as an administrative expense of PCAA's estates in

the manner provided in the Agreement upon the occurrence of any of the conditions set forth in

section 7.1(a) of the Agreement. The Expense Reimbursement shall be in an amount equal to the

actual and documented out-of-pocket fees and expenses of the Buyer, up to a maximum of

$750,000, and shall be paid as an administrative expense of PCAA's estates in the manner

provided in the Agreement upon the occurrence of any of the conditions set forth in section

7.1(a) of the Agreement.

19.     Each PCAA debtor's obligation to pay the Break-Up Fee upon the

occurrence of the conditions set forth in section 7.1(a) of the Agreement and to pay the Expense

Reimbursement upon the conditions set forth in section 7.1(a) of the Agreement shall be joint

and several with the other PCAA debtors, shall survive termination of the Agreement and shall

constitute a super-priority administrative claim against each and all of the PCAA debtors

pursuant to sections 503(b) and 507(a) of the Bankruptcy Code. Without limiting the foregoing,

in the event that the Break-Up Fee or the Expense Reimbursement is payable pursuant to section

10

7.1 of the Agreement and a competing transaction is consummated prior to the payment of the

Break-Up Fee or the Expense Reimbursement, the proceeds (or right to the proceeds) of such

transaction in an amount equal to the unpaid portion(s) of the Break-Up Fee and the Expense

Reimbursement shall be remitted directly to the Buyer or held in trust for the Buyer and shall not

become property of PCAA's estates until all obligations under the Agreement are paid in full

pursuant to this Order and the Agreement.

## V.    **Setting of Relevant Dates**

20.    The following shall be the dates that govern the Transactions, all as further

described in the Bidding Procedures, the Procedures Notice, and the Contract Procedures:

(a)    **Procedures Notice and Contract Notice Dates**. A Procedures Notice substantially in the form attached as Exhibit D to the Motion shall be served by PCAA (including, to the extent available, by electronic service) to all creditors and other potential parties in interest within three (3) business days after entry of this Order.

A separate contract notice in the form attached as Exhibit E to the Motion (the "Assignment and Cure Notice") shall be sent by PCAA by first-class mail (and, to the extent available, electronic service) to all counterparties to contracts designated for possible assumption by PCAA and assignment to the Buyer as soon as practicable after the entry of this Order, but by no later than the Bid Deadline and otherwise in accordance with the applicable Bankruptcy Rules.

(b)    **Sale Objection Deadline**. Objections to the Motion, if any, shall be filed and served on [_____], 2010 no later than 4:00 p.m. (Eastern Time) on [_____], 2010.

(c)    **Bid Deadline**. A Qualified Bidder (as defined in the Bidding Procedures) who desires to make a bid must deliver a Qualified Bid (as defined in the Bidding Procedures) so as to be received not later than 12 noon (Eastern Time) on [_____], 2010 (the "Bid Deadline"), to (a) SSG Capital Advisors, LLC, Five Tower Bridge, 300 Barr Harbor Drive, Suite 420, West Conshohocken, PA 19428, Attention: Robert Smith, investment banker to PCAA, with copies to: (b) Milbank, Tweed, Hadley & M<sup>c</sup>Cloy LLP, 1 Chase Manhattan Plaza, New York, NY 10014, Attention: John D.

11

Franchini and Matthew S. Barr. Qualified Bids must be provided to the Buyer not later than two (2) Business Days prior to the Auction.

(d) **Contract Objection Deadline**. Objections to the assumption and assignment of a Purchased Contract and/or the proposed Cure Amounts, if any, shall be filed and served on each of (a) Milbank, Tweed, Hadley & M$^{c}$Cloy LLP, 1 Chase Manhattan Plaza, New York, NY 10014, Attention: John D. Franchini, Matthew S. Barr (b) Wilmer Cutler Pickering Hale and Dorr LLP, 399 Park Avenue, New York, New York, 10022, Attention: Andrew Goldman, (c) Dewey & LeBoeuf LLP, 1301 Avenue of the Americas, New York, New York, 10019, Attention: Gary Boss, Timothy Q. Karcher, and (d) [_____], counsel to the Official Committee of Unsecured Creditors], no later than 4:00 p.m. (Eastern Time) on the day that is ten (10) days following service of the Assignment and Cure Notice.

(e) **Auction Date**. If any Qualified Bids are submitted by the Bid Deadline, the Auction shall be held on [_____], 2010, at the offices of Milbank, Tweed, Hadley & M$^{c}$Cloy LLP, 1 Chase Manhattan Plaza, New York, NY 10014 at 10:00 a.m. (Eastern Time) or such other date as announced in accordance with the Bidding Procedures. If no Qualified Bids are submitted prior to the Bid Deadline, no auction shall be held.

(f) **Sale Hearing Date**. The Court shall hold a hearing on [_____], 2010, at [_____] a.m. / p.m. (Eastern Time) (the "Sale Hearing") in the United States Bankruptcy Court for the District of Delaware, 824 North Market Street, Wilmington, Delaware 19801, at which time the Court shall consider the approval of the sale as set forth in the Motion, approve the Successful Bidder (as defined in the Bidding Procedures) and Next Highest Bidder (as defined in the Bidding Procedures), and confirm the results of the Auction, if any.

21. The failure of any person or entity to file and serve an objection by the applicable Sale Objection Deadline or Cure Objection Deadline shall be a bar to the assertion by such creditor, counterparty or other party in interest in these Chapter 11 Cases, at the Sale Hearing or thereafter, of any objection to the Motion, the Transactions, the assumption and assignment of the Assumed Agreements, the defaults and Cure Amounts under the Assumed Agreements, or PCAA's consummation and performance of the Agreement and related

12

agreements and documents (including, without limitation, its transfer of the Purchased Assets and the assumption and assignment of the Assumed Agreements (including the Real Property Leases), in each case free and clear of all liens, claims, encumbrances, and interests).

22. With the consent of the Buyer, the Sale Hearing may be adjourned by PCAA from time to time without further notice to creditors or parties-in-interest other than by announcement of the adjournment in open court or an entry of an order on the Court's docket; provided, however, that any such adjournment shall be without prejudice to Buyer's rights under the Agreement.

23. Notwithstanding Bankruptcy Rules 6004, 6006 or otherwise, this Order shall be effective and enforceable immediately upon entry and its provisions shall be self-executing. To the extent applicable, the stays described in Bankruptcy Rules 6004(h) are hereby waived.

24. All time periods set forth in this Order shall be calculated in accordance with Bankruptcy Rule 9006(a).

25. To the extent this Order is inconsistent with any prior order or pleading with respect to the Motion in these cases, the terms of this Order shall govern.

26. This Court shall retain jurisdiction over any matters related to or arising from the implementation or interpretation of this Order. To the extent any provisions of this Order shall be inconsistent with the Motion, the terms of this Order shall control.

27.     PCAA shall serve the Procedures Notice on the Notice Parties within three

(3) business days after entry of this Order.


Dated: February \_\_\_\_, 2010
          Wilmington, Delaware


_____
THE HONORABLE MARY F. WALRATH
UNITED STATES BANKRUPTCY JUDGE

# Exhibit 1

**Bidding Procedures**

EXHIBIT 1 TO BIDDING
BIDDING PROCEDURES ORDER

# BIDDING PROCEDURES

Set forth below are the bidding procedures (the "Bidding Procedures") to be employed with respect to the Asset Purchase Agreement by and between PCAA Parent, LLC, and its affiliated debtors in possession that are parties to the Agreement (as defined herein) (collectively, the "Sellers"), and Bainbridge/ZKS Holding Company, LLC, (the "Buyer"), dated as of January 28, 2010 (including all exhibits, schedules and agreements attached thereto, the "Agreement"), with respect to the sale of substantially all of the assets of the Sellers and the assumption of certain liabilities of the Sellers as set forth in the Agreement,[1] together with the transfer to the Buyer (collectively, the "Sale") of the Sellers' rights and interests under certain related executory contracts and unexpired leases (the "Assumed Agreements") (collectively, the "Assets"). The Sale is subject to competitive bidding as set forth herein and to approval by the Bankruptcy Court pursuant to sections 363 and 365 of the Bankruptcy Code at a hearing scheduled for April 28, 2010, at 10:00 a.m. or as soon after the Auction (as defined below) as the Bankruptcy Court's calendar will permit, but no later than May 21, 2010 (the "Sale Hearing").

## The Sale Hearing

At the Sale Hearing, the Sellers will seek entry of an order or orders, among other things, authorizing and approving the Sale (i) if no other Qualified Bid(s) (as defined below) is received, to the Buyer pursuant to the terms and conditions set forth in the Agreement or (ii) if another Qualified Bid(s) is received, to the Buyer or such other Qualified Bidder(s) (as defined below) as the Sellers, in the exercise of their sole business judgment may determine to have made the highest or otherwise best offer or offers to purchase the Assets (the "Successful Bid"), consistent with the Bidding Procedures (the "Successful Bidder(s)"). The Sale Hearing may be adjourned or rescheduled without notice, other than by an announcement of such adjournment at the Sale Hearing, provided that, unless such adjournment or rescheduling is at the request of the Bankruptcy Court, it is subject to the Buyer's consent, which may be withheld in its sole discretion.

## Bidding Process

The Sellers, in consultation with their legal and financial advisors, shall (i) determine whether any person is a Qualified Bidder, (ii) coordinate the efforts of Qualified Bidders in conducting their respective due diligence investigations regarding the Assets and the Assumed Liabilities, (iii) receive bids from Qualified Bidders, and (iv) negotiate any bid made to purchase the Assets (collectively, the "Bidding Process"). Any person who wishes to participate in the Bidding Process must be a Qualified Bidder. Neither the Sellers nor their representatives shall be obligated to furnish any information of any kind whatsoever relating to the Assets or the Assumed Liabilities to any person who is not a Qualified Bidder. The Sellers shall have the right to adopt such other rules for the Bidding Process which, in their sole judgment will better

---

[1] All capitalized terms not otherwise defined herein have the respective meanings ascribed to them in the Agreement.

promote the goals of the Bidding Process and which are not materially inconsistent with any of the provisions of the Agreement, these Bidding Procedures, or of any Bankruptcy Court order.

## Participation Requirements

Unless otherwise ordered by the Bankruptcy Court for cause shown, to participate in the Bidding Process, each interested person (a "Potential Bidder") must deliver the following (unless previously delivered) to: SSG Capital Advisors, LLC, Five Tower Bridge, 300 Barr Harbor Drive, Suite 420, West Conshohocken, PA 19428, Attention: Robert Smith ("Banker"), by no later than 4:00 p.m.(Eastern Time) on March 10, 2010:

(i) An executed confidentiality agreement in form and substance satisfactory to the Sellers, which is no less favorable to the Sellers than the confidentiality agreement executed by the Buyer;

(ii) The identity of the ultimate equity owner(s) of the Potential Bidder (which shall be one or more individuals or, if the Potential Bidder is a publicly held entity, the identity of such entity and any owner (or affiliated group) of 10% or more of the voting equity thereof; and

(iii) The most current audited and latest unaudited financial statements (collectively, the "Financials") of the Potential Bidder, or, if the Potential Bidder is an entity formed for the purpose of acquiring the Assets, (a) Financials of the equity holder(s) of the Potential Bidder and (b) the written commitment acceptable to the Sellers of such equity holder(s) of the Potential Bidder to be responsible for the Potential Bidder's obligations with respect to the Sale, or such other form of financial disclosure as is acceptable to the Sellers and their advisors.

A "Qualified Bidder" is a Potential Bidder that delivers the documents described in subparagraphs (i), (ii) and (iii) above, whose Financials demonstrate, to the Sellers' satisfaction, the financial capability to consummate the Sale, and that the Sellers determine, is reasonably likely (based on availability of financing, experience and other considerations) to be able to consummate the Sale, if selected as the Successful Bidder, within a time frame acceptable to the Sellers. The Buyer is deemed to be a Qualified Bidder.

No later than two (2) business days after Banker receives from a Potential Bidder all of the materials required by subparagraphs (i), (ii) and (iii) above, the Sellers shall determine, and shall notify each Potential Bidder in writing, whether the Potential Bidder is a Qualified Bidder. At the same time that the Sellers notify a Potential Bidder that it is a Qualified Bidder, the Sellers shall (a) deliver to such Qualified Bidder a copy of the Agreement (including all schedules and exhibits thereto) and (b) allow such Qualified Bidder to conduct due diligence with respect to the Assets and the Assumed Liabilities as provided herein.

2

Each Potential Bidder, whether a Qualified Bidder or not, and its affiliates or joint venturers, as applicable, shall be deemed to have submitted to the exclusive jurisdiction of the Bankruptcy Court with respect to all matters relating to the Agreement, their bids, the Auction and the Sale.

## Due Diligence Access

To obtain due diligence access, each Qualified Bidder (other than the Buyer) must provide the Sellers with a written non-binding expression of interest (the "Expression of Interest"), containing (i) the Assets such Qualified Bidder is interested in acquiring, (ii) the Assumed Liabilities, if different from those specified in the Agreement, (iii) the proposed purchase price range, (iv) the proposed structure and financing of the Sale, including the amount of cash to be committed and the sources of financing, (v) any conditions to closing it wishes to impose in addition to those contained in the Agreement, and (vi) the nature and extent of additional due diligence it requires. If the Sellers determine, based on the applicable Expression of Interest, that the Qualified Bidder is reasonably likely to make a *bona fide* offer for the Assets that may result in a higher or otherwise better offer than that memorialized in the Agreement (taking into account the Sellers' obligation to pay the Break-Up Fee and Expense Reimbursement), the Sellers shall afford such Qualified Bidder reasonable due diligence access.

Neither the Sellers nor any of their representatives are obligated to furnish any information relating to the Assets or Assumed Liabilities to any person except a Qualified Bidder who has submitted an acceptable Expression of Interest.

## Due Diligence

All due diligence requests shall be directed to the Banker at _____. Banker shall coordinate all reasonable requests for additional information and due diligence access from Qualified Bidders. Banker will afford Qualified Bidders access to Sellers' online data room, which shall contain the same documents made available to Buyer (other than those documents or materials that reflect or respond to Buyer's own due diligence process and inquiries). Banker will respond to a Qualified Bidder's request for any additional due diligence information about the Assets as Banker, in consultation with Sellers and their other advisors, determines to be reasonable and appropriate. Additional due diligence provided to any Qualified Bidder (other than those documents or materials that reflect or respond to Buyer's own due diligence process and inquiries) will also be placed in Sellers' online data room. Sellers or their advisors shall promptly notify Buyer upon any such updates to the online data room. The Sellers shall not be obligated to furnish any due diligence information after the Bid Deadline (as defined below), and no conditions relating to the completion of due diligence shall be permitted to exist after the Bid Deadline.

## Bid Deadline

A Qualified Bidder that desires to make a bid shall deliver written copies of its bid to Banker not later than 4:00 p.m. (Eastern Time) on April 10, 2010 (the "Bid Deadline"). Banker shall then distribute a copy of each bid to the Sellers and their legal and other financial advisors. Only Qualified Bidders that have submitted Qualified Bids prior to the Bid Deadline

3

(as it may be extended by the Sellers in compliance with these Bidding Procedures) shall be entitled to bid at the Auction. The Sellers may extend the Bid Deadline once or successively, but are not obligated to do so. If the Sellers extend the Bid Deadline, they shall promptly notify all Qualified Bidders of the extension.

## Bid Requirements

A bid is a written irrevocable offer from a Qualified Bidder (i) stating that such Qualified Bidder is prepared to purchase the Assets and assume the Assumed Liabilities upon the terms and conditions set forth in the asset purchase agreement substantially in the form of the Agreement (except for the terms relating to the Break-Up Fee and Expense Reimbursement) including, without limitation, the transition services agreement substantially in the form of the Transition Services Agreement, (ii) accompanied by copies of such materials marked to show those amendments and modifications to the Agreement (the "Marked Agreement"), including, without limitation, the Transition Services Agreement (the "Marked Ancillary Agreements") that the Qualified Bidder proposes, in form and substance acceptable to the Sellers, and (iii) accompanied by (a) a certified or bank check, or wire transfer or other immediately available funds, in the amount of five percent (5%) of the purchase price payable to the order of the Sellers as a good-faith deposit (the "Good Faith Deposit"), and (b) written evidence of available cash, a firm irrevocable commitment for financing or such other evidence of ability to consummate the transaction and to provide adequate assurance of future performance under the Assumed Agreements as the Sellers may request.

A bid will constitute a Qualified Bid only if the bid:

a. provides for the purchase of all or substantially all Assets for an aggregate purchase price that is greater than the sum of (i) the Purchase Price offered by the Buyer in the Agreement and (ii) the Break-Up Fee and Expense Reimbursement ("Buyer's Purchase Price"), or alternatively provides for the purchase of a portion of the Assets that Sellers determine in consultation with their advisors when taken together with other Qualified Bids is in aggregate greater than the Buyer's Purchase Price;

b. is on terms that, in the Sellers' sole business judgment are substantially the same or better than the terms of the Agreement, including, without limitation, the Transition Services Agreement;

c. is not conditioned on obtaining financing or any internal approval, or on the outcome or review of due diligence with respect to the Assets or the Assumed Liabilities or the Business, but may be subject to the accuracy in all material respects at the closing of specified representations and warranties or the satisfaction in all material respects at the closing of specified conditions, none of which shall be more burdensome when taken as a whole than those set forth in the Agreement;

4

d.    contain a commitment to consummate the Sale pursuant to a chapter 11 plan within not more than 15 days after the Sale Hearing;

e.    is irrevocable (in the form resulting from any modifications that may be made at the Auction) until the earlier of (i) the end of the business day following the closing and (ii) the withdrawal of the Assets for sale by the Sellers (the "Revocability Date");

f.    does not request or entitle the bidder, other than the Buyer, to any breakup fee, termination fee, expense reimbursement or similar type of payment;

g    acknowledges and represents that the bidder (i) has had an opportunity to inspect and examine the Assets and the Assumed Liabilities and to conduct any and all necessary due diligence with respect thereto prior to making its bid, (ii) in making its bid, has relied solely on its own independent review, investigation and/or inspection of the Assets and the Assumed Liabilities, and (iii) did not rely on any written or oral statements, representations, promises, warranties or guaranties whatsoever, whether express, implied or by operation of law or otherwise regarding the Assets or the Assumed Liabilities, or the completeness of any information provided in connection therewith at the Auction, except as expressly stated in the Agreement or these Bidding Procedures;

h.    fully discloses the identity of each entity that will be bidding for the Assets or otherwise participating in connection with such bid, and the complete terms of any such participation; and

i.    includes evidence, in form and substance satisfactory to the Sellers, of authorization and approval from the bidder's board of directors (or comparable governing body) with respect to the submission, delivery and closing of the Marked Agreement and the Marked Ancillary Agreements.

A bid received from a Qualified Bidder before the Bid Deadline that meets all of the above requirements shall constitute a "Qualified Bid". Notwithstanding the foregoing, the Buyer shall be deemed a Qualified Bidder and the Agreement a Qualified Bid for all purposes in connection with the Bidding Process and the Auction.

## "As Is, Where Is"

The Sale shall be on an "as is, where is" basis and without representations or warranties of any kind, nature or description by the Sellers, its agents or its estate, except to the extent expressly set forth in the Agreement or the Marked Agreement, as the case may be. Except as otherwise provided in the Agreement or the Marked Agreement, as the case may be, all of the Sellers' right, title and interest in the Assets shall be sold free and clear of all interests,

liens, charges, claims, pledges, security interests, options, voting trusts or similar restrictions on voting or transfer or other encumbrances (collectively, "Encumbrances") in accordance with section 363 of the Bankruptcy Code, such Encumbrances, if any, to attach to the net proceeds of the Sale, with the same priority as they attached to the relevant Assets.

## Auction

If any Qualified Bid(s) (other than the Buyer's bid) are received by the Bid Deadline, the Sellers will conduct an auction for the Assets (the "Auction"). If no other Qualified Bid(s) is received by the Bid Deadline, the Sellers will not conduct the Auction and shall designate the Buyer's bid as the Successful Bid for the purposes of these Bidding Procedures.

Prior to the Auction, the Sellers will notify all Qualified Bidders that submitted Qualified Bids of the highest or otherwise best Qualified Bid, as determined in the Sellers' sole discretion (the "Baseline Bid"). Sellers shall provide Buyer a copy of the Marked Agreement corresponding to the Baseline Bid no later than two (2) Business Days before the Auction.

The Auction shall take place at 10:00 a.m. (Eastern Time) on April 20, 2010, at the offices of Milbank, Tweed, Hadley & McCloy LLP, or such later time or other place as the Sellers shall notify all Qualified Bidders who have submitted Qualified Bids, it being understood that the Auction shall take place no sooner than two (2) Business Days after Buyer receives a copy of the Marked Agreement corresponding to the Baseline Bid.

The Auction shall be conducted in accordance with the following procedures: (i) only the Sellers, the Buyer, other Qualified Bidders who have timely submitted Qualified Bids, advisors of any official committee (if one is appointed) and the administrative agents and lenders for the Sellers' prepetition secured credit facilities shall be allowed to attend the Auction (and the legal and financial advisors to each of the foregoing); (ii) unless otherwise ordered by the Bankruptcy Court for cause shown or unless the Sellers (upon consent of the Buyer) waive any requirements relating to the qualification of Qualified Bidders, only a Qualified Bidder who has submitted a Qualified Bid will be eligible to participate in the Auction; (iii) all Qualified Bidders must be present at the Auction in person or through a qualified representative; and (iv) once the Auction is commenced, all bids shall be made and received in one room, on an open basis, and all Qualified Bidders shall be entitled to be present for all bidding with the understanding that (a) the true identity of each Qualified Bidder shall be fully disclosed to all other Qualified Bidders, and (b) all material terms of all Qualified Bids will be fully disclosed to all Qualified Bidders participating in the Auction throughout the entire Bidding Process. The Sellers may employ and announce at the Auction additional procedural rules that are reasonable under the circumstances for conducting the Auction.

RLF1 3532765v.1

At the Auction, Qualified Bidders (including the Buyer) will be permitted to increase their bids. The bidding shall start from the Baseline Bid. If the Baseline Bid is the Buyer's bid, the next bid submitted at the Auction must exceed the Buyer's bid (the Buyer's bid being inclusive of the Break-up Fee and Expense Reimbursement) by an amount at least equal to two hundred and fifty thousand dollars ($250,000) (the "Initial Overbid"). All subsequent overbids must be in increments of at least one hundred and fifty thousand dollars ($150,000) ("Subsequent Overbids"). For the purpose of evaluating the value of the consideration provided by subsequent bids, the Sellers will give effect to the Break-Up Fee and the Expense Reimbursement that may be payable to the Buyer under the Agreement and shall credit such amounts as part of any initial or subsequent bid submitted by Buyer. No other Qualified Bidder will be allowed to credit bid (excluding Sellers' prepetition secured lenders who will be allowed to credit bid and participate in the auction notwithstanding anything else herein) any claims it may hold against the Sellers.

Immediately prior to the conclusion of the Auction, the Sellers, in consultation with their financial and legal advisors, shall (i) review each Qualified Bid on the basis of its financial and contractual terms and the factors relevant to the Sale process and the best interests of the Sellers' estate, including those factors affecting the speed and certainty of consummating the Sale, (ii) identify the Successful Bid, (iii) identify the next highest or otherwise best offer after the Successful Bid (the "Next Highest Bid"), provided that the Buyer, in its sole discretion, may decline to be designated Next Highest Bid, and (iv) notify all Qualified Bidders present at the Auction of the identities of the Successful Bidder and the bidder that has submitted the Next Highest Bid (the "Next Highest Bidder"), and the respective amounts of their bids. At the Sale Hearing, the Sellers shall present the Successful Bid to the Bankruptcy Court for approval.

The Sellers may adopt rules for the Bidding Process at the Auction that, in its judgment will better promote the goals of the Bidding Process, so long as they are not materially inconsistent with any of the provisions of the Agreement, the Bidding Procedures, or any Bankruptcy Court order, and so long as the Buyer consents to such changes (which consent shall not be unreasonably withheld).

## Acceptance of Successful Bid

The Sellers presently intend to sell the Assets to the Successful Bidder, whether such entity is the Buyer or another Qualified Bidder. However, the Sellers' presentation of the Successful Bid to the Bankruptcy Court for approval does not constitute the Sellers' acceptance of the bid (except with respect to the Buyer's bid reflected in the Agreement, as it may be modified at the Auction). The Sellers will be deemed to have accepted the Successful Bid only when such bid has been approved by the Bankruptcy Court at the Sale Hearing.

The Sellers and the Successful Bidder shall close the Sale within fifteen (15) days after the Sale Hearing, which can be extended in the Seller's sole discretion (unless the Buyer is the Successful Bidder in which case such deadline can be extended upon the Seller's and Buyer's consent). In the event that the Successful Bidder fails to close the Sale during such time period for any reason (unless such date has been extended), then the Sellers shall be authorized, but not required, to close with the Next Highest Bidder (it being understood that the Buyer, in its sole discretion, may decline to be designated the Next Highest Bid at the auction), without notice to

7

any other party or further court order. If the Sellers decide to close with the Next Highest Bidder, the Sellers and the Next Highest Bidder shall have an additional five (5) business days to close, which can be extended in the Sellers' sole discretion.

The Sellers and the Successful Bidder shall close the Sale at the date the Plan becomes effective or, to the extent applicable, on the closing date otherwise set forth in the Successful Bid.

## Return of Good Faith Deposit

The Good Faith Deposits of all Qualified Bidders, including the Buyer, shall be held in one or more interest-bearing escrow accounts by the Sellers, but shall not become property of the Sellers' estate absent further order of the Bankruptcy Court. Upon the return of the Good Faith Deposits, their respective owners shall receive any and all interest that will have accrued thereon.

All Qualified Bids must remain open, notwithstanding Bankruptcy Court approval of the Sale to the Successful Bidder, until the Revocability Date; provided however, that the Buyer's bid need not remain open if it is not deemed the Successful Bid at the Auction. If the Successful Bidder (or the Next Highest Bidder, if applicable) timely closes the Sale, its Good Faith Deposit shall be credited towards the Purchase Price. If the Successful Bidder (or the Next Highest Bidder, if applicable) fails to timely close the Sale, its Good Faith Deposit shall be disposed of as provided in the Agreement or the applicable Marked Agreement.

## Modifications

The Sellers may, upon the consent of the Buyer, extend or alter any deadline contained herein if it determines that any such extension or alteration will better promote the goals of the Bidding Process. At or before the Sale Hearing, the Bankruptcy Court or the Sellers may impose such other terms and conditions as it may determine to be in the best interests of the Sellers' estate, its creditors and other parties in interest (with the consent of the Buyer, such consent not to be unreasonably withheld).

8