human resources policies and procedures and have terms and responsibilities determined by Purchaser in its sole discretion. The Sellers shall assist Purchaser in contacting such Employees to confirm receipt of the offers. Such individuals who accept such offer by, and commence employment on, the Closing Date are hereinafter referred to as the "Transferred Employees." Purchaser shall make reasonable efforts in good faith to ensure that all of the Transferred Employees are immediately employed by Purchaser on the Closing Date and that the Transferred Employees receive, to the extent commercially available, on the Closing Date, the Employee Benefits described in Section 9.2(a) effective as of the Closing Date.

(b)     Purchaser shall assume the obligations of, and will be a successor with respect to, all Collective Bargaining Agreements, and with respect to the Employees who are covered by any such Collective Bargaining Agreements, Purchaser may provide any offers of employment pursuant to Section 9.1(a) to the appropriate union representative.

9.2     Employee Benefits.

(a)     On the Closing Date, Purchaser shall provide, or cause to be provided, to each of the Transferred Employees categorized as "hourly employees," including all drivers, cashiers, dispatch personnel, maintenance, mechanic, administrative and clerical personnel, employee benefits plans (hereinafter "Purchaser Plans") providing benefits substantially similar in the aggregate to those provided under Employee Benefit Plans in effect as of the Closing Date and as set forth on Schedule 9.2(a); provided that the per-employee cost to Purchaser of providing such benefits shall not exceed the per-employee cost to the Sellers of providing the substantially similar benefits immediately prior to the Closing; provided, further, that such benefits are commercially available. On the Closing Date, Purchaser shall use commercially reasonable efforts to provide, or cause to be provided, to each of the Transferred Employees that are categorized as "salaried" and/or "management personnel" supplemental insurance benefits in addition to benefits available to hourly employees. Except as provided in this Section 9.2, Purchaser shall have no liability for any claims, damages, causes of action or liabilities arising from termination of employment of employees by the Sellers prior to Closing.

(b)     Effective as of the Closing, Purchaser shall assume, under the Purchaser Plans, all of the Sellers' responsibilities under Section 4980B of the Code and similar state laws providing for continuation coverage (collectively, "COBRA") for all individuals entitled to COBRA coverage from the Sellers with respect to the Business ("Seller COBRA Beneficiaries"). In this connection, Purchaser shall charge Seller COBRA Beneficiaries 102% of the "applicable premium" (as defined under COBRA) under Purchaser Plans, except that with respect to any Seller COBRA Beneficiaries entitled to premium reductions pursuant to The American Recovery and Reinvestment Act of 2009 and any similar laws providing for COBRA premium reductions (collectively, "ARRA"), Purchaser shall charge Seller COBRA Beneficiaries the maximum amount permitted under ARRA and apply for the payroll tax credit pursuant to ARRA. To the extent that Purchaser incurs any costs in connection with Seller COBRA Beneficiaries in excess of the premiums and payroll tax credits set forth in the preceding sentence hereof, the Sellers hereby agree to reimburse Purchaser for such excess costs.

(c)     The Transferred Employees shall not accrue benefits, and shall cease to be covered, under any Employee Benefit Plan on and after the Closing Date.

Claims of the Transferred Employees and their eligible beneficiaries and dependents for medical, dental, prescription drug, life insurance, and/or other welfare benefits ("Welfare Benefits") (other than long-term disability benefits) that are incurred on or before the Closing Date shall be the sole responsibility of the Employee Benefit Plans. Claims of the Transferred Employees and their eligible beneficiaries and dependents for Welfare Benefits that are incurred after the Closing Date shall be the sole responsibility of the Purchaser Plans.

(d)     Nothing contained in this Article IX or elsewhere in this Agreement shall be construed to prevent the termination of employment by Purchaser of any individual Transferred Employee or any change in the employee benefits available to any individual Transferred Employee following the Closing.

(e)     Except as required by applicable Law, Sellers shall be responsible for all Liabilities with respect to Transferred Employees attributable to their accrued and unused vacation, sick days and personal days, and otherwise for all claims, through the Closing Date.

## ARTICLE X

## CONDITIONS TO CLOSING

10.1    Conditions Precedent to Obligations of Purchaser. The obligation of Purchaser to consummate the transactions contemplated hereby is subject to the fulfillment, on or prior to the Closing Date, of each of the following conditions (any or all of which may be waived by Purchaser in whole or in part):

(a)     the representations and warranties of the Sellers set forth herein qualified as to materiality or Material Adverse Effect shall be true and correct, and those not so qualified shall be true and correct in all material respects, as of the date of this Agreement and at and as of the Closing Date as though made on the Closing Date, except to the extent such representations and warranties relate to an earlier date (in which case such representations and warranties qualified as to materiality or Material Adverse Effect shall be true and correct, and those not so qualified shall be true and correct in all material respects, on and as of such earlier date);

(b)     the Sellers shall have performed and complied in all material respects with all obligations and agreements required herein to be performed or complied with by the Sellers pursuant to this Agreement prior to the Closing Date;

(c)     Purchaser shall have received a certificate signed by an authorized officer or member, as applicable, of each of the Sellers, dated the Closing Date, to the effect of the matters contained in clauses (a) and (b) of this Section 10.1;

(d)     Owned Real Properties and Leased Real Properties giving rise to any Individual Property Failures shall not, individually or in the aggregate, constitute properties accounting for revenues in excess of $6,800,000 (based on the contribution of such properties as set forth in 2009 Base Plan Revenue);

(e)     the Sellers shall have delivered, or caused to be delivered, to Purchaser all of the items set forth in Section 4.2; and

*Strictly Confidential*

(f)    Purchaser and the Sellers shall have obtained any other consent, approval, order or authorization of, or registration, declaration or filing with, any Governmental Body or any other Person with respect to the consents set forth on Schedule 10.1(f) required to be obtained or made in connection with the execution and delivery of this Agreement or the consummation of the transactions contemplated herein without any terms or conditions that, individually or in the aggregate, would result in the loss of any material benefits reasonably expected to be received by Purchaser in connection with the transactions contemplated hereby, or a material increase in expenses; provided, that any Contract that may be assumed and assigned pursuant to section 365 of the Bankruptcy Code shall not be included on Schedule 10.1(f).

10.2    Conditions Precedent to Obligations of the Sellers. The obligations of the Sellers to consummate the transactions contemplated hereby are subject to the fulfillment, prior to or on the Closing Date, of each of the following conditions (any or all of which may be waived by the Sellers in whole or in part):

(a)    the representations and warranties of Purchaser set forth herein qualified as to materiality shall be true and correct, and those not so qualified shall be true and correct in all material respects, as of the date of this Agreement and at and as of the Closing Date as though made on the Closing Date, except to the extent such representations and warranties relate to an earlier date (in which case such representations and warranties qualified as to materiality shall be true and correct, and those not so qualified shall be true and correct in all material respects, on and as of such earlier date);

(b)    Purchaser shall have performed and complied in all material respects with all obligations and agreements required hereby to be performed or complied with by Purchaser pursuant to this Agreement on or prior to the Closing Date;

(c)    the Sellers shall have received a certificate signed by an authorized officer of Purchaser, dated the Closing Date, to the effect of the matters contained in clauses (a) and (b) of this Section 10.2;

(d)    Purchaser shall have delivered, or caused to be delivered, to the Sellers all of the items set forth in Section 4.3; and

(e)    the Bankruptcy Court shall have entered the Confirmation Order in form and substance satisfactory to the Sellers and reasonably satisfactory to Purchaser and the Confirmation Order shall have remained in full force and effect and shall not have been stayed, vacated, modified or supplemented without the Purchaser's prior written consent; provided that this condition shall no longer be in effect if the Sellers shall have properly received an Expedited Sale Order Request from Purchaser pursuant to Section 7.3(d).

10.3    Conditions Precedent to Obligations of Purchaser and the Sellers. The respective obligations of Purchaser and the Sellers to consummate the transactions contemplated hereby are subject to the fulfillment, on or prior to the Closing Date, of each of the following conditions (any or all of which may be waived by both Purchaser and the Sellers in whole or in part to the extent permitted by applicable Law):

(a)     there shall not be in effect any final, non-appealable Order of a Governmental Body of competent jurisdiction restraining, enjoining or otherwise prohibiting the consummation of the transactions contemplated hereby;

(b)     the Bankruptcy Court shall have entered the Bidding Procedures Order, with such changes and modifications made in accordance with Section 7.3(a), and the Bidding Procedures Order shall have remained in full force and effect and shall not have been stayed, vacated, modified or supplemented, subject to Section 7.3(a), without the Purchaser's prior written consent;

(c)     the Bankruptcy Court shall have entered the Sale Order in form and substance acceptable to Purchaser in its sole discretion and the Sale Order shall have remained in full force and effect and shall not have been stayed, vacated, modified or supplemented without the Purchaser's prior written consent; and

(d)     the waiting period (and any extension thereof) applicable to the consummation of the transactions contemplated hereby under the HSR Act shall have expired or been terminated.

10.4     Frustration of Closing Conditions. Neither the Sellers nor Purchaser may rely on the failure of any condition set forth in Section 10.1, 10.2 or 10.3, as the case may be, if such failure was caused by such party's failure to comply with any provision hereof.

ARTICLE XI

TAXES

11.1     Transfer Taxes. The Sellers shall seek to include in the Sale Order and Confirmation Order a provision under Bankruptcy Code section 1146(c) that provides that the transfer of the Purchased Assets be free and clear of any sales, use, stamp, documentary stamp, filing, recording, transfer or similar fees or Taxes or governmental charges (including any interest and penalty thereon) payable in connection with the transactions contemplated hereby (collectively, "Transfer Taxes"). Sellers shall be solely responsible in all instances for all Transfer Taxes.

11.2     Purchase Price Allocation. Within 60 days after the Closing Date, Purchaser shall prepare and deliver to PCAA Parent an allocation of an amount equal to the Purchase Price, and any Assumed Liabilities properly taken into account for purposes of determining the purchase price for U.S. federal income tax purposes, among the Purchased Assets in accordance with Section 1060 of the Code. Within 30 days of its receipt of such allocation, PCAA Parent shall (i) notify Purchaser that it concurs with the allocation and/or determination of fair market value, or (ii) provide written comments to the allocation and/or determination of fair market value, however, the consent and approval by PCAA Parent shall not be unreasonably withheld, delayed or conditioned. If PCAA Parent and Purchaser disagree on any aspect of the allocation and/or determination of fair market value, PCAA Parent and Purchaser agree to use reasonable best efforts to resolve any such disagreement within 120 days after the Closing. Any allocation agreed to pursuant to this Section 11.2 shall be binding on PCAA Parent and Purchaser for all

*Strictly Confidential*

Tax reporting purposes, and each of PCAA Parent and Purchaser agrees to cooperate with the other in preparing IRS Form 8594 (to the extent required to reflect the allocation), and to furnish the other with a draft copy of such form within a reasonable period before its filing due date. If PCAA Parent and Purchaser are unable to resolve any disagreement with respect to the allocation within such 120 day period, each party shall be entitled to allocate the Purchase Price for U.S. federal income tax purposes among the Purchased Assets as such party sees fit.

## ARTICLE XII

## MISCELLANEOUS

12.1     No Survival of Representations and Warranties.  The parties hereto agree that the representations, warranties, covenants and agreements contained herein or in any other document delivered pursuant to this Agreement shall not survive the Closing Date, except for covenants and agreements that by their terms are to be satisfied after the Closing Date and as otherwise provided in Section 4.6(a), which covenants and agreements shall survive until satisfied in accordance with their terms.

12.2     No Consequential Damages.  Notwithstanding anything herein to the contrary, no party shall, in any event, be liable to any other Person for any consequential, incidental, indirect, special or punitive damages of such other Person, including loss of future revenue, income or profits, diminution of value or loss of business reputation or opportunity relating to the breach or alleged breach hereof.

12.3     Expenses.  Except as otherwise provided herein (including Section 8.4), each of the Sellers and Purchaser shall bear its own expenses incurred in connection with the negotiation and execution hereof and each other agreement, document and instrument contemplated hereby and the consummation of the transactions contemplated hereby and thereby.

12.4     Injunctive Relief.  Damages at law may be an inadequate remedy for the breach of any of the covenants, promises and agreements contained herein, and, accordingly, any party hereto shall be entitled to injunctive relief with respect to any such breach, including without limitation specific performance of such covenants, promises or agreements or an order enjoining a party from any threatened, or from the continuation of any actual, breach of the covenants, promises or agreements contained herein.  The rights set forth in this Section 12.4 shall be in addition to any other rights which a party may have at law or in equity pursuant to this Agreement.

12.5     Submission to Jurisdiction; Consent to Service of Process.

(a)     Without limiting any party's right to appeal any Order of the Bankruptcy Court, (i) the Bankruptcy Court shall retain exclusive jurisdiction to enforce the terms hereof and to decide any claims or disputes which may arise or result from, or be connected with, this Agreement, any breach or default hereunder, or the transactions contemplated hereby, and (ii) any and all proceedings related to the foregoing shall be filed and maintained only in the Bankruptcy Court, and the parties hereby consent to and submit to the jurisdiction and venue of the Bankruptcy Court and shall receive notices at such locations as indicated in Section 12.9;

*Strictly Confidential*

provided, however, that if the Bankruptcy Case has not yet been commenced or has closed, the parties agree to unconditionally and irrevocably submit to the exclusive jurisdiction of the United States District Court for the Southern District of New York sitting in New York County or the Commercial Division, Civil Branch of the Supreme Court of the State of New York sitting in New York County and any appellate court from any thereof, for the resolution of any such claim or dispute. The parties hereby irrevocably waive, to the fullest extent permitted by applicable Law, any objection which they may now or hereafter have to the laying of venue of any such dispute brought in such court or any defense of inconvenient forum for the maintenance of such dispute. Each of the parties hereto agrees that a judgment in any such dispute may be enforced in other jurisdictions by suit on the judgment or in any other manner provided by law.

(b) Each of the parties hereto hereby consents to process being served by any party to this Agreement in any suit, action or proceeding by delivery of a copy thereof in accordance with the provisions of Section 12.9.

12.6 <u>Waiver of Right to Trial by Jury</u>. EACH PARTY TO THIS AGREEMENT WAIVES ANY RIGHT TO TRIAL BY JURY IN ANY ACTION, MATTER OR PROCEEDING REGARDING THIS AGREEMENT OR ANY PROVISION HEREOF.

12.7 <u>Entire Agreement; Amendments and Waivers</u>. This Agreement (including the Schedules and Exhibits hereto), the Seller Documents and the Purchaser Documents represent the entire understanding and agreement between the parties hereto with respect to the subject matter hereof and supersedes all prior discussions and agreements between the parties with respect thereto, including the Letter of Intent between Purchaser and PCAA Parent, dated August 30, 2009, and the Confidentiality Agreement between Purchaser and PCAA Parent, dated July 10, 2009. This Agreement can be amended, supplemented or changed, and any provision hereof can be waived, only by written instrument making specific reference to this Agreement signed by the party against whom enforcement of any such amendment, supplement, modification or waiver is sought. No action taken pursuant to this Agreement, including without limitation, any investigation by or on behalf of any party, shall be deemed to constitute a waiver by the party taking such action of compliance with any representation, warranty, covenant or agreement contained herein. The waiver by any party hereto of a breach of any provision hereof shall not operate or be construed as a further or continuing waiver of such breach or as a waiver of any other or subsequent breach. No failure on the part of any party to exercise, and no delay in exercising, any right, power or remedy hereunder shall operate as a waiver thereof, nor shall any single or partial exercise of such right, power or remedy by such party preclude any other or further exercise thereof or the exercise of any other right, power or remedy. All remedies hereunder are cumulative and are not exclusive of any other remedies provided by law.

12.8 <u>Governing Law</u>. This Agreement shall be governed by and construed in accordance with the laws of the State of New York applicable to contracts made and performed in such State, without giving effect to any choice-of-law principles that would require the application of the laws of another jurisdiction, except as may be governed by the Bankruptcy Code.

12.9 <u>Notices</u>. All notices and other communications hereunder shall be in writing and shall be deemed given (i) when delivered personally by hand (with written confirmation of

*Strictly Confidential*

receipt), (ii) when sent by facsimile (with written confirmation of transmission) or (iii) one Business Day following the day sent by overnight courier (with written confirmation of receipt), in each case at the following addresses and facsimile numbers (or to such other address or facsimile number as a party may have specified by notice given to the other party pursuant to this provision):

If to the Sellers, to:

PCAA Parent, LLC
621 North Governor Printz Boulevard
Essington, PA 19029
Attention:    Mark Shapiro

With a copy (which shall not constitute notice) to:

Todd Weintraub
Director of PCAA Parent
c/o Macquarie Infrastructure Company LLC
125 West 55th Street
New York, NY  10019
Facsimile:    (212) 231-1838

Milbank, Tweed, Hadley & McCloy LLP
1 Chase Manhattan Plaza
New York, NY 10005
Facsimile:    (212) 822-5491
             (212) 822-5194
Attention:    John D. Franchini
             Matthew S. Barr

If to Purchaser, to both:

Bainbridge | ZKS Holding Company, LLC
3570 Carmel Mountain Road, Suite 100
San Diego, CA  92130
Facsimile:    (858) 430-2491
Attention:    Nick Chini

And

Bainbridge | ZKS Holding Company, LLC
2060 Mt. Paran Road, Suite 101
Atlanta, Georgia 30327
Facsimile:    (770) 754-1314
Attention:    Frederick D. Clemente

With a copy to:

*Strictly Confidential*

Fine and Block
2060 Mt. Paran Road, N.W.
Atlanta, Georgia 30327
Facsimile:    (404) 261-6960
Attention:    A. J. Block, Jr., Esq.

Corinthian Capital Group, LLC
601 Lexington Avenue, 59th Floor
New York, New York 10022
Attention: C. Kenneth Clay
Facsimile: (212) 920-2399

And to both:

Wilmer Cutler Pickering Hale and Dorr LLP
399 Park Avenue
New York, NY  10022
Facsimile:    (212) 230-8888
Attention:    Andrew Goldman

Dewey & LeBoeuf LLP
1301 Avenue of the Americas
New York, NY 10019
Facsimile:    (212) 259-6333
Attention:    Gary Boss
             Timothy Q. Karcher

     12.10  <u>Severability</u>.  If any term or other provision hereof is invalid, illegal, or incapable of being enforced by any law or public policy, all other terms or provisions hereof shall nevertheless remain in full force and effect so long as the economic or legal substance of the transactions contemplated hereby is not affected in any manner materially adverse to any party. Upon such determination that any term or other provision is invalid, illegal, or incapable of being enforced, the parties hereto shall negotiate in good faith to modify this Agreement so as to effect the original intent of the parties as closely as possible in an acceptable manner in order that the transactions contemplated hereby are consummated as originally contemplated to the greatest extent possible.

     12.11  <u>Binding Effect; Assignment</u>.  This Agreement shall be binding upon and inure to the benefit of the parties and their respective successors and permitted assigns.  Nothing herein shall create or be deemed to create any third party beneficiary rights in any Person or entity not a party to this Agreement except as provided below.  No assignment hereof or of any rights or obligations hereunder may be made by either the Sellers or Purchaser without the prior written consent of the other parties hereto and any attempted assignment without the required consents shall be void, except (a) for assignments and transfers by operation of Law and (b) that Purchaser may assign any or all of its rights, interests and obligations hereunder to a wholly-owned subsidiary of Purchaser, provided that any such subsidiary agrees in writing to be bound by all of the terms, conditions and provisions contained herein.  No assignment pursuant to this <u>Section</u>

*Strictly Confidential*

12.11 of any obligations hereunder shall relieve the assigning party of any such obligations. Upon any such permitted assignment, the references herein to Purchaser shall also apply to any such assignee unless the context otherwise requires.

12.12 <u>Non-Recourse</u>. No past, present or future director, officer, employee, agent, advisor, incorporator, member, partner or equityholder of any Seller shall have any liability for any obligations or liabilities of such Seller hereunder or the Seller Documents of or for any claim based on, in respect of, or by reason of, the transactions contemplated hereby and thereby.

12.13 <u>Counterparts</u>. This Agreement may be executed in one or more counterparts, each of which will be deemed to be an original copy hereof and all of which, when taken together, will be deemed to constitute one and the same agreement.

*[remainder of page intentionally left blank; signature pages follow]*

*Strictly Confidential*

IN WITNESS WHEREOF, the parties hereto have caused this Agreement to be executed by their duly authorized respective officers, as of the date first written above.

CORINTHIAN-BAINBRIDGE ZKS HOLDINGS, LLC

By: _____

Name: _____

Title: _____

PCAA PARENT, LLC

By: _____
    Name:  Charles Huntzinger
    Title:  Chief Executive Officer

By: _____
    Name:  Todd Weintraub
    Title:  Director


RCL PROPERTIES, LLC

By: PCAA Parent, LLC
Its Sole Member

By: _____
    Name:  Charles Huntzinger
    Title:  Chief Executive Officer

By: _____
    Name:  Todd Weintraub
    Title:  Director


PCAA GP, LLC

By: PCAA Parent, LLC
Its Sole Member

By: _____
    Name:  Charles Huntzinger
    Title:  Chief Executive Officer

By: _____
    Name:  Todd Weintraub
    Title:  Director


PCAA CHICAGO, LLC

By: PCAA Parent, LLC
Its Sole Member

By: _____
    Name:  Charles Huntzinger
    Title:  Chief Executive Officer

By: _____
    Name:  Todd Weintraub
    Title:  Director


PCAA LP, LLC

By: PCAA Parent, LLC
Its Sole Member

By: _____
    Name:  Charles Huntzinger
    Title:  Chief Executive Officer

By: _____
    Name:  Todd Weintraub
    Title:  Director


PARKING COMPANY OF AMERICA
AIRPORTS PHOENIX, LLC

By: PCAA Parent, LLC
Its Sole Member

By: _____
    Name:  Charles Huntzinger
    Title:  Chief Executive Officer

By: _____
    Name:  Todd Weintraub
    Title:  Director

PCAA PARENT, LLC

By: _____
     Name:   Charles Huntzinger
     Title:    Chief Executive Officer

By: _____
     Name:   Todd Weintraub
     Title:    Director


PCAA CHICAGO, LLC

By: PCAA Parent, LLC
Its Sole Member

By: _____
     Name:   Charles Huntzinger
     Title:    Chief Executive Officer

By: _____
     Name:   Todd Weintraub
     Title:    Director


RCL PROPERTIES, LLC

By: PCAA Parent, LLC
Its Sole Member

By: _____
     Name:   Charles Huntzinger
     Title:    Chief Executive Officer

By: _____
     Name:   Todd Weintraub
     Title:    Director


PCAA LP, LLC

By: PCAA Parent, LLC
Its Sole Member

By: _____
     Name:   Charles Huntzinger
     Title:    Chief Executive Officer

By: _____
     Name:   Todd Weintraub
     Title:    Director


PCAA GP, LLC

By: PCAA Parent, LLC
Its Sole Member

By: _____
     Name:   Charles Huntzinger
     Title:    Chief Executive Officer

By: _____
     Name:   Todd Weintraub
     Title:    Director


PARKING COMPANY OF AMERICA
AIRPORTS PHOENIX, LLC

By: PCAA Parent, LLC
Its Sole Member

By: _____
     Name:   Charles Huntzinger
     Title:    Chief Executive Officer

By: _____
     Name:   Todd Weintraub
     Title:    Director

PCAA SP-OK, LLC

By: PCAA Parent, LLC
Its Sole Member

By: _____
    Name:   Charles Huntzinger
    Title:   Chief Executive Officer

By: _____
    Name:   Todd Weintraub
    Title:   Director

PCAA SP, LLC

By: PCAA Parent, LLC
Its Sole Member

By: _____
    Name:   Charles Huntzinger
    Title:   Chief Executive Officer

By: _____
    Name:   Todd Weintraub
    Title:   Director

PARKING COMPANY OF AMERICA
AIRPORTS, LLC

By: PCAA Parent, LLC
Its Sole Member

By: _____
    Name:   Charles Huntzinger
    Title:   Chief Executive Officer

By: _____
    Name:   Todd Weintraub
    Title:   Director

PCAA OAKLAND, LLC

By: PCAA Parent, LLC
Its Sole Member

By: _____
    Name:   Charles Huntzinger
    Title:   Chief Executive Officer

By: _____
    Name:   Todd Weintraub
    Title:   Director

PCAA PROPERTIES, LLC

By: PCAA Parent, LLC
Its Sole Member

By: _____
    Name:   Charles Huntzinger
    Title:   Chief Executive Officer

By: _____
    Name:   Todd Weintraub
    Title:   Director

PARKING COMPANY OF AMERICA
AIRPORTS HOLDINGS, LLC (with respect to
Section 3.3(b) only)

By: _____
    Name:   Todd Weintraub
    Title:   Director

PCAA SP-OK, LLC

By: PCAA Parent, LLC
Its Sole Member

By: _____
      Name:   Charles Huntzinger
      Title:    Chief Executive Officer

By: _____
      Name:   Todd Weintraub
      Title:    Director


PARKING COMPANY OF AMERICA
AIRPORTS, LLC

By: PCAA Parent, LLC
Its Sole Member

By: _____
      Name:   Charles Huntzinger
      Title:    Chief Executive Officer

By: _____
      Name:   Todd Weintraub
      Title:    Director


PCAA PROPERTIES, LLC

By: PCAA Parent, LLC
Its Sole Member

By: _____
      Name:   Charles Huntzinger
      Title:    Chief Executive Officer

By: _____
      Name:   Todd Weintraub
      Title:    Director


PCAA SP, LLC

By: PCAA Parent, LLC
Its Sole Member

By: _____
      Name:   Charles Huntzinger
      Title:    Chief Executive Officer

By: _____
      Name:   Todd Weintraub
      Title:    Director


PCAA OAKLAND, LLC

By: PCAA Parent, LLC
Its Sole Member

By: _____
      Name:   Charles Huntzinger
      Title:    Chief Executive Officer

By: _____
      Name:   Todd Weintraub
      Title:    Director


PARKING COMPANY OF AMERICA
AIRPORTS HOLDINGS, LLC (with respect to
Section 3.3(b) only)

By: _____
      Name:   Todd Weintraub
      Title:    Director

AIRPORT PARKING MANAGEMENT, LLC

By: _____
Name: Charles Huntzinger
Title: Member of the Board

By: _____
Name: Todd Weintraub
Title: Member of the Board

PCAA MISSOURI, LLC

By: PCAA Parent, LLC
Its Sole Member

By: _____
Name: Charles Huntzinger
Title: Chief Executive Officer

By: _____
Name: Todd Weintraub
Title: Director

PCA AIRPORTS, LTD.

By: PCAA GP, LLC
Its General Partner

By: PCAA Parent, LLC
Its Sole Member

By: _____
Name: Charles Huntzinger
Title: Chief Executive Officer

By: _____
Name: Todd Weintraub
Title: Director

By: PCAA LP, LLC
Its Limited Partner

By: PCAA Parent, LLC
Its Sole Member

By: _____
Name: Charles Huntzinger
Title: Chief Executive Officer

By: _____
Name: Todd Weintraub
Title: Director

*[Asset Purchase Agreement Signature Page]*

AIRPORT PARKING MANAGEMENT, LLC     PCAA MISSOURI, LLC

By: PCAA Parent, LLC
Its Sole Member

By: _____     By: _____
    Name:  Charles Huntzinger         Name:  Charles Huntzinger
    Title:  Member of the Board         Title:  Chief Executive Officer

By: _____     By: _____
    Name:  Todd Weintraub         Name:  Todd Weintraub
    Title:  Member of the Board         Title:  Director


PCA AIRPORTS, LTD.

By: PCAA GP, LLC
Its General Partner

    By: PCAA Parent, LLC
    Its Sole Member

    By: _____
        Name: Charles Huntzinger
        Title: Chief Executive Officer

    By: _____
        Name:  Todd Weintraub
        Title:  Director

By: PCAA LP, LLC
Its Limited Partner

    By: PCAA Parent, LLC
    Its Sole Member

    By: _____
        Name:  Charles Huntzinger
        Title: Chief Executive Officer

    By: _____
        Name:  Todd Weintraub
        Title:  Director

*[Asset Purchase Agreement Signature Page]*

**Exhibit A**

# IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF DELAWARE

```
------------------------------------------------x
                                                :
In re:                                          :    Chapter 11
                                                :
                                                :    Case No. 10-10250 (MFW)
PCAA PARENT, LLC, et al.,[1]                    :
                                                :    Jointly Administered
                                                :
                          Debtors.              :    Re: Docket No. ____
------------------------------------------------x
```

## ORDER (I) APPROVING BIDDING PROCEDURES IN CONNECTION WITH THE SALE OF CERTAIN ASSETS, (II) AUTHORIZING PCAA TO ENTER INTO AN ASSET PURCHASE AGREEMENT IN CONNECTION THEREWITH, (III) APPROVING BREAK-UP FEE AND EXPENSE REIMBURSEMENT PROTECTIONS, (IV) SCHEDULING AUCTION AND HEARING DATES, AND (IV) GRANTING OTHER RELATED RELIEF

Upon the motion, dated January 28, 2010 [Docket No. ___] (the "Motion"), of

PCAA Parent, LLC, together with its affiliated debtors and debtors in possession (collectively,

"PCAA") in the above-captioned chapter 11 cases (the "Chapter 11 Cases"), pursuant to sections

105, 363, 365, and 503 of chapter 11 of title 11 of the United States Code (the "Bankruptcy

Code") and Rules 2002, 6004, and 6006 of the Federal Rules of Bankruptcy Procedure (the

"Bankruptcy Rules"), for orders, among other things, as to the following: (i) approving the

bidding procedures set forth herein and attached as Exhibit 1 to the Motion (the "Bidding

Procedures"), (ii) authorizing PCAA to enter into that certain Asset Purchase Agreement by and

between PCAA Parent, LLC and the other debtors named therein (collectively, the "Sellers") and

---

[1]    The PCAA entities, along with the last four digits of their respective federal tax identification numbers (as applicable), are as follows: PCAA Parent, LLC (8827); PCAA Chicago, LLC (0860); PCAA GP, LLC (4237); PCAA LP, LLC (none); PCAA Properties, LLC (0617); PCAA SP, LLC (3465); Airport Parking Management, Inc. (7571); PCAA Missouri, LLC (5702); PCAA SP-OK, LLC (none); PCAA Oakland, LLC (9451); Parking Company of America Airports, LLC (9249); PCA Airports, Ltd. (8348); Parking Company of America Airports Phoenix, LLC (8343); and RCL Properties, LLC (2006). The mailing address for PCAA is 621 North Governor Printz Boulevard, Essington, PA 19029.

Bainbridge/ZKS Holding Company, LLC ("Buyer"), dated as of January 28, 2010 (including all exhibits, schedules and agreements attached thereto, the "Agreement") or an asset purchase agreement, if any, related to any higher or otherwise better bid, (iii) approving the Break-Up Fee and Expense Reimbursement as set forth in the Agreement (collectively, the "Stalking Horse Provisions"), (iv) approving the form and manner of notice of the sale of assets as set forth in the Motion (the "Procedures Notice"), (v) approving the form and manner of notice of the assumption and assignment of executory contracts and the process for determining any defaults and cure costs or other obligations owing or that may become owing to contract and lease counterparties upon assumption and assignment as set forth herein (the "Contract Procedures"); and (vii) scheduling the Auction for [_____], 2010 and a hearing for [_____], 2010 to approve the sale of the Purchased Assets (the "Sale Hearing"), the assumption and assignment of certain executory contracts and unexpired leases (the "Assumed Agreements"), and the other transactions contemplated by the Agreement (collectively, the "Transactions"); and upon the Court having held a hearing on [_____], 2010 to consider the relief requested in the Motion (the "Procedures Hearing"); and upon the record of the Procedures Hearing with respect to the Motion, the testimony and evidence admitted at the Procedures Hearing and any objections filed and raised at the Procedures Hearing; and upon all of the proceedings had before the Court; and after due deliberation thereon, and sufficient cause appearing therefor,

## IT IS HEREBY FOUND AND DETERMINED THAT:

A.     The Court has exclusive jurisdiction over this matter and over the property of PCAA and its respective bankruptcy estates pursuant to 28 U.S.C. §§ 157(a) and 1334 and Local Rule 6004-1 of the Local Rules for the United States Bankruptcy Court for the District of Delaware (the "Local Rules"). This matter is a core proceeding pursuant to 28 U.S.C. §

2

157(b)(2)(A), (N), and (O).  The statutory predicates for the relief sought in the Motion are 11 U.S.C. §§ 105, 363, 364, 365 and 503 and Fed. R. Bankr. P. 2002, 6004, 6006 and 9014.  Venue of this case and the Motion is proper pursuant to 28 U.S.C. §§ 1408 and 1409.

B. PCAA has provided due and proper notice of the Motion, the Bidding Procedures, and the Procedures Hearing to (i) the U.S. Trustee, (ii) counsel for the Buyer, (iii) [counsel for the Creditors' Committee], (iv) PCAA's prepetition secured lenders, and their respective agents, if any, (v) the agents for PCAA's proposed DIP lenders, and (vi) those creditors of PCAA holding the 30 largest unsecured claims, and no other or further notice need be provided.  A reasonable opportunity to object or be heard regarding the relief requested in the Motion (including, without limitation, with respect to the Bidding Procedures and the Stalking Horse Provisions) has been afforded.

C. PCAA has articulated good and sufficient reasons for the Court to (i) approve the Bidding Procedures, (ii) authorize PCAA's entry into the Agreement, (iii) approve the Stalking Horse Provisions, (iv) approve the Procedures Notice, (v) approve the Contract Procedures, and (vi) set dates for objections, competing bids, auction, and hearing as described herein.  Such good and sufficient reasons were set forth in the Motion and on the record at the Procedures Hearing and are incorporated by reference herein, and, among other things, form the basis for the findings of fact and conclusions of law set forth herein.

D. The Procedures Notice is appropriate and reasonably calculated to provide all interested parties with timely and proper notice and an opportunity to be heard with respect to the relief requested in the Motion, and no other or further notice is required.

E. The Bidding Procedures, including the Stalking Horse Provisions set forth herein, are commercially reasonable, necessary and appropriate, and represent the best method

3

for maximizing the realizable value of the Purchased Assets. The Bidding Procedures, including the Stalking Horse Provisions, were negotiated at arms' length and in good faith between PCAA and the Buyer. The Buyer has conditioned its bid on the provision for the Break-Up Fee and the Expense Reimbursement.

F.     PCAA has demonstrated a compelling and sound business justification for authorization to (i) enter into the Agreement, and (ii) under certain circumstances (described infra), pay the Break-Up Fee and Expense Reimbursement under the terms and conditions set forth in Section 7.1 of the Agreement.

G.     The Break-Up Fee and Expense Reimbursement, as set forth in Section 7.1 of the Agreement, and as further described in the Bidding Procedures are fair and reasonable, were negotiated at arms' length and in good faith, and provide a significant and demonstrable benefit to PCAA's estates and creditors.

H.     PCAA's payment of the Break-Up Fee and/or the Expense Reimbursement, both under this Order and upon the conditions set forth in the Agreement, are (i) actual and necessary costs of preserving PCAA's estates within the meaning of sections 503(b) and 507(a) of the Bankruptcy Code, (ii) of substantial benefit to PCAA's estates and creditors and all parties in interest herein, (iii) reasonable and appropriate, including in light of the size and nature of the Transactions, and the efforts that have been and will be expended by the Buyer in connection with the Transactions,  and (iv) a material inducement for, and condition necessary to ensure that, the Buyer pursue the Transactions.

I.     The Contract Procedures are reasonable and appropriate, provide counterparties to the Assumed Agreements and all other parties in interest with due process including proper notice and an opportunity to be heard, and conform in all respects to the

4

relevant portions of the Bankruptcy Code the Bankruptcy Rules, and Local Rules, except to the extent that, in accordance with the Bankruptcy Code, the Bankruptcy Rules, and Local Rules, the Court has determined it is permissible and appropriate to require modified cure procedures in light of the facts and circumstances of the proposed Transactions and PCAA's Chapter 11 Cases.

J. The dates established below and in the notices annexed to the Motion for (i) any objections to the sale of assets, assumption, and assignment of executory contracts and unexpired leases, defaults and cure costs and other obligations under executory contracts and unexpired leases, (ii) any competing bids for the purchase of assets, contracts, and leases, (iii) an auction to consider any qualifying competing bids submitted by the Bid Deadline, and (iv) a hearing to approve the sale of assets and the assumption and assignment of Assumed Agreements and other Transactions are reasonable and appropriate, provide counterparties to the Assumed Agreements and all other parties in interest with due process including proper notice and an opportunity to be heard, and conform in all respects to the relevant portions of the Bankruptcy Code , the Bankruptcy Rules, and Local Rules, except to the extent that, in accordance with the Bankruptcy Code and the Bankruptcy Rules, the Court has determined it is permissible and appropriate to require modified dates in light of the facts and circumstances of the proposed Transactions and PCAA's Chapter 11 Cases.

K. Entry of this Order is in the best interests of PCAA and its estates, creditors, interest holders and all other parties-in-interest.

L. The findings and conclusions set forth herein constitute the Court's findings of fact and conclusions of law pursuant to Bankruptcy Rule 7052, made applicable to this proceeding pursuant to Bankruptcy Rule 9014.

M. To the extent any of the following findings of fact constitute conclusions

5

of law, they are adopted as such. To the extent any of the following conclusions of law constitute findings of fact, they are adopted as such.

## THEREFORE, IT IS ORDERED, ADJUDGED, AND DECREED THAT:

1.  The Motion is granted in its entirety and as provided herein.

2.  All objections filed in response to the Motion or the relief requested therein that have not been withdrawn, waived, settled, or specifically addressed in this Order, and all reservations of rights included in such objections, are specifically overruled in all respects on the merits.

3.  PCAA is hereby granted full corporate power and authority to execute the Agreement, and all other documents and instruments contemplated thereby, provided that the performance by PCAA under such agreements, documents and instruments, except as expressly authorized herein, shall remain subject to the occurrence of the Sale Hearing and entry of the Sale Order.

## I. Approval of the Bidding Procedures

4.  The Bidding Procedures for the competitive bidding on and sale and assignment of the Purchased Assets, as set forth on Exhibit 1 to the Motion and incorporated herein, are hereby approved in their entirety and PCAA is authorized to act in accordance therewith. The failure specifically to include or reference a particular provision of the Bidding Procedures in this Order shall not diminish or impair the effectiveness of such provision.

5.  To constitute a "Qualified Bid," a bid (other than the Agreement) must be received by the Bid Deadline (as defined in the Bidding Procedures) and comply with the Bidding Procedures. The Agreement is a Qualified Bid and the Buyer is deemed a Qualified Bidder.

6

6.     PCAA (a) may determine which Qualified Bid (as defined in the Bidding Procedures), if any, is the highest or otherwise best offer and (b) may reject, at any time, any bid that is (i) inadequate and insufficient, (ii) not in conformity with the requirements of the Bidding Procedures, or (iii) contrary to the best interests of PCAA, its estates and their constituencies, as determined by PCAA in its sole discretion. Only Qualified Bids shall be considered. Notwithstanding anything contained in this paragraph 6 to the contrary, the Buyer's bid under the Agreement is a Qualified Bid and, in the event there is no auction in accordance with the Bidding Procedures, the Agreement represents the highest and best offer.

## II.     **Approval of the Sale Notice**

7.     The Procedures Notice, attached as <u>Exhibit D</u> to the Motion is hereby approved.

8.     The Procedures Notice constitutes sufficient notice of the Motion, the Agreement, and the sale of the Purchased Assets, including the Assumed Agreements, free and clear of all liens, claims, encumbrances, and other interests, the assumption of the Assumed Liabilities by the Buyer, the retention of the Excluded Liabilities by the Sellers, and the Transactions, and no other or further notice is necessary or required.

9.     Service of the Procedures Notice on the Notice Parties in the manner described herein and in the Motion constitutes good and sufficient notice of the Auction and the Sale Hearing. No other or further notice is necessary or required.

## III.     **Approval of Contract Procedures**

10.     The Contract Procedures regarding the process for (i) providing notice of the assumption and assignment of the Assumed Agreements, (ii) determining any defaults that may exist under the Assumed Agreements, and (iii) determining any cure costs or other

7

obligations that are owing or that may become owing to contract and lease counterparties upon assumption and assignment of the Assumed Agreements, as set forth on <u>Exhibit F</u> to the Motion and incorporated herein by reference, are hereby approved and shall govern all proceedings relating to the Transactions.

11. PCAA shall file with the Court a schedule of Assumed Agreements as designated in the Agreement and subject to modification as set forth therein. PCAA shall serve each of the counterparties to the Assumed Agreements and all other parties in interest, if any, with the Assignment and Cure Notice, as set forth on <u>Exhibit F</u> attached to the Motion, which notice shall include a list of any Cure Amounts that PCAA believes may be payable upon assumption and assignment of such Assumed Agreement and the deadlines by which such non-debtor parties must object.

12. The Assignment and Cure Notice, as set forth on <u>Exhibit F</u> to the Motion, constitutes sufficient notice to counterparties to the Assumed Agreements and all other parties in interest, if any, of the assumption and assignment of the Assumed Agreements, the proposed Cure Amounts (if any), the assumption of the Assumed Liabilities by the Buyer, the retention of the Excluded Liabilities by the Sellers, and no other or further notice is necessary or required. The delivery of an Assignment and Cure Notice does not obligate the Buyer to take assignment of any contract and the assignment of contracts shall occur only in accordance with, and subject to the conditions of, the Agreement or any other agreement executed by the Successful Bidder (as defined in the Bidding Procedures).

13. The Contract Procedures constitute a sufficient process for determining any defaults that may exist under the Assumed Agreements, and for determining any Cure Amounts or other obligations that are owing or that may become owing to counterparties under

8

Assumed Agreements upon assumption and assignment, and no other or further process is necessary or required.

14.    Any objections to the assumption and/or assignment of any Assumed Agreement, including to the Cure Amounts set forth on such notice, must be in writing, filed with the Court, and be actually received in accordance with the Contract Procedures.

15.    Provided that the Contract Procedures are complied with in all material respects, (i) all counterparties to the Assumed Agreements and all other parties in interest shall be deemed to have received notice of the assumption and assignment of the Assumed Agreements and the proposed Cure Amounts for the Assumed Agreements, the assumption of the Assumed Liabilities by the Buyer and the retention of the Excluded Liabilities by the Sellers, as may be required by the Bankruptcy Code, the Bankruptcy Rules, and the Local Rules, or otherwise, and any party in interest that fails to raise an objection to the assumption and assignment of an Assumed Agreement in accordance with the process and deadlines set forth herein shall be deemed to have fully and forever waived such objection; and (ii) all counterparties to the Assumed Agreements and all other parties in interest shall be deemed to have had sufficient opportunity to raise and be heard on any defaults, Cure Amounts or other obligations that such counterparty or other party in interest may allege exist or will become due and owing under any Assumed Agreements upon assumption and assignment, as may be required by the Bankruptcy Code, the Bankruptcy Rules, the Local Rules, or otherwise, and any counterparty or other party in interest that fails to raise any alleged defaults or Cure Amounts or other obligations in accordance with the process and deadlines set forth herein shall be deemed to have fully and forever waived such default, Cure Amounts, or other obligations.

16.    If a timely objection is received and such objection cannot otherwise be

9

resolved by the parties, the Court may hear such objection at a later date set by the Court. The pendency of a dispute relating to Cure Amounts will not prevent or delay the assumption and assignment of any contracts designated as an Assumed Agreement at Closing.

## IV.   Approval of the Stalking Horse Provisions

17.   The Stalking Horse Provisions are hereby approved, and PCAA is hereby authorized and directed to perform their obligations thereunder.

18.   Without limiting the immediately preceding paragraph, PCAA is authorized and directed to pay the Break-Up Fee and the Expense Reimbursement as provided under the Agreement without further application to or order from the Court. The Break-Up Fee shall be equal to $3,345,000, and shall be paid as an administrative expense of PCAA's estates in the manner provided in the Agreement upon the occurrence of any of the conditions set forth in section 7.1(a) of the Agreement. The Expense Reimbursement shall be in an amount equal to the actual and documented out-of-pocket fees and expenses of the Buyer, up to a maximum of $750,000, and shall be paid as an administrative expense of PCAA's estates in the manner provided in the Agreement upon the occurrence of any of the conditions set forth in section 7.1(a) of the Agreement.

19.   Each PCAA debtor's obligation to pay the Break-Up Fee upon the occurrence of the conditions set forth in section 7.1(a) of the Agreement and to pay the Expense Reimbursement upon the conditions set forth in section 7.1(a) of the Agreement shall be joint and several with the other PCAA debtors, shall survive termination of the Agreement and shall constitute a super-priority administrative claim against each and all of the PCAA debtors pursuant to sections 503(b) and 507(a) of the Bankruptcy Code. Without limiting the foregoing, in the event that the Break-Up Fee or the Expense Reimbursement is payable pursuant to section

10

7.1 of the Agreement and a competing transaction is consummated prior to the payment of the Break-Up Fee or the Expense Reimbursement, the proceeds (or right to the proceeds) of such transaction in an amount equal to the unpaid portion(s) of the Break-Up Fee and the Expense Reimbursement shall be remitted directly to the Buyer or held in trust for the Buyer and shall not become property of PCAA's estates until all obligations under the Agreement are paid in full pursuant to this Order and the Agreement.

## V. Setting of Relevant Dates

20. The following shall be the dates that govern the Transactions, all as further described in the Bidding Procedures, the Procedures Notice, and the Contract Procedures:

(a) **Procedures Notice and Contract Notice Dates**. A Procedures Notice substantially in the form attached as <u>Exhibit D</u> to the Motion shall be served by PCAA (including, to the extent available, by electronic service) to all creditors and other potential parties in interest within three (3) business days after entry of this Order.

A separate contract notice in the form attached as <u>Exhibit E</u> to the Motion (the "<u>Assignment and Cure Notice</u>") shall be sent by PCAA by first-class mail (and, to the extent available, electronic service) to all counterparties to contracts designated for possible assumption by PCAA and assignment to the Buyer as soon as practicable after the entry of this Order, but by no later than the Bid Deadline and otherwise in accordance with the applicable Bankruptcy Rules.

(b) **Sale Objection Deadline**. Objections to the Motion, if any, shall be filed and served on [_____], 2010 no later than 4:00 p.m. (Eastern Time) on [_____], 2010.

(c) **Bid Deadline**. A Qualified Bidder (as defined in the Bidding Procedures) who desires to make a bid must deliver a Qualified Bid (as defined in the Bidding Procedures) so as to be received not later than 12 noon (Eastern Time) on [_____], 2010 (the "<u>Bid Deadline</u>"), to (a) SSG Capital Advisors, LLC, Five Tower Bridge, 300 Barr Harbor Drive, Suite 420, West Conshohocken, PA 19428, Attention: Robert Smith, investment banker to PCAA, with copies to: (b) Milbank, Tweed, Hadley & M<sup>c</sup>Cloy LLP, 1 Chase Manhattan Plaza, New York, NY 10014, Attention: John D.

Franchini and Matthew S. Barr. Qualified Bids must be provided to the Buyer not later than two (2) Business Days prior to the Auction.

(d) **Contract Objection Deadline**. Objections to the assumption and assignment of a Purchased Contract and/or the proposed Cure Amounts, if any, shall be filed and served on each of (a) Milbank, Tweed, Hadley & McCloy LLP, 1 Chase Manhattan Plaza, New York, NY 10014, Attention: John D. Franchini, Matthew S. Barr (b) Wilmer Cutler Pickering Hale and Dorr LLP, 399 Park Avenue, New York, New York, 10022, Attention: Andrew Goldman, (c) Dewey & LeBoeuf LLP, 1301 Avenue of the Americas, New York, New York, 10019, Attention: Gary Boss, Timothy Q. Karcher, and (d) [_____], counsel to the Official Committee of Unsecured Creditors], no later than 4:00 p.m. (Eastern Time) on the day that is ten (10) days following service of the Assignment and Cure Notice.

(e) **Auction Date**. If any Qualified Bids are submitted by the Bid Deadline, the Auction shall be held on [_____], 2010, at the offices of Milbank, Tweed, Hadley & McCloy LLP, 1 Chase Manhattan Plaza, New York, NY 10014 at 10:00 a.m. (Eastern Time) or such other date as announced in accordance with the Bidding Procedures. If no Qualified Bids are submitted prior to the Bid Deadline, no auction shall be held.

(f) **Sale Hearing Date**. The Court shall hold a hearing on [_____], 2010, at [_____] a.m. / p.m. (Eastern Time) (the "Sale Hearing") in the United States Bankruptcy Court for the District of Delaware, 824 North Market Street, Wilmington, Delaware 19801, at which time the Court shall consider the approval of the sale as set forth in the Motion, approve the Successful Bidder (as defined in the Bidding Procedures) and Next Highest Bidder (as defined in the Bidding Procedures), and confirm the results of the Auction, if any.

21. The failure of any person or entity to file and serve an objection by the applicable Sale Objection Deadline or Cure Objection Deadline shall be a bar to the assertion by such creditor, counterparty or other party in interest in these Chapter 11 Cases, at the Sale Hearing or thereafter, of any objection to the Motion, the Transactions, the assumption and assignment of the Assumed Agreements, the defaults and Cure Amounts under the Assumed Agreements, or PCAA's consummation and performance of the Agreement and related

12

agreements and documents (including, without limitation, its transfer of the Purchased Assets and the assumption and assignment of the Assumed Agreements (including the Real Property Leases), in each case free and clear of all liens, claims, encumbrances, and interests).

22. With the consent of the Buyer, the Sale Hearing may be adjourned by PCAA from time to time without further notice to creditors or parties-in-interest other than by announcement of the adjournment in open court or an entry of an order on the Court's docket; provided, however, that any such adjournment shall be without prejudice to Buyer's rights under the Agreement.

23. Notwithstanding Bankruptcy Rules 6004, 6006 or otherwise, this Order shall be effective and enforceable immediately upon entry and its provisions shall be self-executing. To the extent applicable, the stays described in Bankruptcy Rules 6004(h) are hereby waived.

24. All time periods set forth in this Order shall be calculated in accordance with Bankruptcy Rule 9006(a).

25. To the extent this Order is inconsistent with any prior order or pleading with respect to the Motion in these cases, the terms of this Order shall govern.

26. This Court shall retain jurisdiction over any matters related to or arising from the implementation or interpretation of this Order. To the extent any provisions of this Order shall be inconsistent with the Motion, the terms of this Order shall control.

13

27. PCAA shall serve the Procedures Notice on the Notice Parties within three (3) business days after entry of this Order.

Dated: February _____, 2010
Wilmington, Delaware

_____
THE HONORABLE MARY F. WALRATH
UNITED STATES BANKRUPTCY JUDGE

14

# Exhibit 1

**Bidding Procedures**

EXHIBIT 1 TO BIDDING
BIDDING PROCEDURES ORDER

## BIDDING PROCEDURES

Set forth below are the bidding procedures (the "Bidding Procedures") to be employed with respect to the Asset Purchase Agreement by and between PCAA Parent, LLC, and its affiliated debtors in possession that are parties to the Agreement (as defined herein) (collectively, the "Sellers"), and Bainbridge/ZKS Holding Company, LLC, (the "Buyer"), dated as of January 28, 2010 (including all exhibits, schedules and agreements attached thereto, the "Agreement"), with respect to the sale of substantially all of the assets of the Sellers and the assumption of certain liabilities of the Sellers as set forth in the Agreement,[2] together with the transfer to the Buyer (collectively, the "Sale") of the Sellers' rights and interests under certain related executory contracts and unexpired leases (the "Assumed Agreements") (collectively, the "Assets"). The Sale is subject to competitive bidding as set forth herein and to approval by the Bankruptcy Court pursuant to sections 363 and 365 of the Bankruptcy Code at a hearing scheduled for April 28, 2010, at 10:00 a.m. or as soon after the Auction (as defined below) as the Bankruptcy Court's calendar will permit, but no later than May 21, 2010 (the "Sale Hearing").

### The Sale Hearing

At the Sale Hearing, the Sellers will seek entry of an order or orders, among other things, authorizing and approving the Sale (i) if no other Qualified Bid(s) (as defined below) is received, to the Buyer pursuant to the terms and conditions set forth in the Agreement or (ii) if another Qualified Bid(s) is received, to the Buyer or such other Qualified Bidder(s) (as defined below) as the Sellers, in the exercise of their sole business judgment may determine to have made the highest or otherwise best offer or offers to purchase the Assets (the "Successful Bid"), consistent with the Bidding Procedures (the "Successful Bidder(s)"). The Sale Hearing may be adjourned or rescheduled without notice, other than by an announcement of such adjournment at the Sale Hearing, provided that, unless such adjournment or rescheduling is at the request of the Bankruptcy Court, it is subject to the Buyer's consent, which may be withheld in its sole discretion.

### Bidding Process

The Sellers, in consultation with their legal and financial advisors, shall (i) determine whether any person is a Qualified Bidder, (ii) coordinate the efforts of Qualified Bidders in conducting their respective due diligence investigations regarding the Assets and the Assumed Liabilities, (iii) receive bids from Qualified Bidders, and (iv) negotiate any bid made to purchase the Assets (collectively, the "Bidding Process"). Any person who wishes to participate in the Bidding Process must be a Qualified Bidder. Neither the Sellers nor their representatives shall be obligated to furnish any information of any kind whatsoever relating to the Assets or the Assumed Liabilities to any person who is not a Qualified Bidder. The Sellers shall have the right to adopt such other rules for the Bidding Process which, in their sole judgment will better

---

[2] All capitalized terms not otherwise defined herein have the respective meanings ascribed to them in the Agreement.

promote the goals of the Bidding Process and which are not materially inconsistent with any of the provisions of the Agreement, these Bidding Procedures, or of any Bankruptcy Court order.

## Participation Requirements

Unless otherwise ordered by the Bankruptcy Court for cause shown, to participate in the Bidding Process, each interested person (a "Potential Bidder") must deliver the following (unless previously delivered) to: SSG Capital Advisors, LLC, Five Tower Bridge, 300 Barr Harbor Drive, Suite 420, West Conshohocken, PA 19428, Attention: Robert Smith ("Banker"), by no later than 4:00 p.m.(Eastern Time) on March 10, 2010:

    (i)    An executed confidentiality agreement in form and substance satisfactory to the Sellers, which is no less favorable to the Sellers than the confidentiality agreement executed by the Buyer;

    (ii)    The identity of the ultimate equity owner(s) of the Potential Bidder (which shall be one or more individuals or, if the Potential Bidder is a publicly held entity, the identity of such entity and any owner (or affiliated group) of 10% or more of the voting equity thereof; and

    (iii)    The most current audited and latest unaudited financial statements (collectively, the "Financials") of the Potential Bidder, or, if the Potential Bidder is an entity formed for the purpose of acquiring the Assets, (a) Financials of the equity holder(s) of the Potential Bidder and (b) the written commitment acceptable to the Sellers of such equity holder(s) of the Potential Bidder to be responsible for the Potential Bidder's obligations with respect to the Sale, or such other form of financial disclosure as is acceptable to the Sellers and their advisors.

A "Qualified Bidder" is a Potential Bidder that delivers the documents described in subparagraphs (i), (ii) and (iii) above, whose Financials demonstrate, to the Sellers' satisfaction, the financial capability to consummate the Sale, and that the Sellers determine, is reasonably likely (based on availability of financing, experience and other considerations) to be able to consummate the Sale, if selected as the Successful Bidder, within a time frame acceptable to the Sellers. The Buyer is deemed to be a Qualified Bidder.

No later than two (2) business days after Banker receives from a Potential Bidder all of the materials required by subparagraphs (i), (ii) and (iii) above, the Sellers shall determine, and shall notify each Potential Bidder in writing, whether the Potential Bidder is a Qualified Bidder. At the same time that the Sellers notify a Potential Bidder that it is a Qualified Bidder, the Sellers shall (a) deliver to such Qualified Bidder a copy of the Agreement (including all schedules and exhibits thereto) and (b) allow such Qualified Bidder to conduct due diligence with respect to the Assets and the Assumed Liabilities as provided herein.

3

Each Potential Bidder, whether a Qualified Bidder or not, and its affiliates or joint venturers, as applicable, shall be deemed to have submitted to the exclusive jurisdiction of the Bankruptcy Court with respect to all matters relating to the Agreement, their bids, the Auction and the Sale.

### Due Diligence Access

To obtain due diligence access, each Qualified Bidder (other than the Buyer) must provide the Sellers with a written non-binding expression of interest (the "Expression of Interest"), containing (i) the Assets such Qualified Bidder is interested in acquiring, (ii) the Assumed Liabilities, if different from those specified in the Agreement, (iii) the proposed purchase price range, (iv) the proposed structure and financing of the Sale, including the amount of cash to be committed and the sources of financing, (v) any conditions to closing it wishes to impose in addition to those contained in the Agreement, and (vi) the nature and extent of additional due diligence it requires. If the Sellers determine, based on the applicable Expression of Interest, that the Qualified Bidder is reasonably likely to make a *bona fide* offer for the Assets that may result in a higher or otherwise better offer than that memorialized in the Agreement (taking into account the Sellers' obligation to pay the Break-Up Fee and Expense Reimbursement), the Sellers shall afford such Qualified Bidder reasonable due diligence access.

Neither the Sellers nor any of their representatives are obligated to furnish any information relating to the Assets or Assumed Liabilities to any person except a Qualified Bidder who has submitted an acceptable Expression of Interest.

### Due Diligence

All due diligence requests shall be directed to the Banker at _____. Banker shall coordinate all reasonable requests for additional information and due diligence access from Qualified Bidders. Banker will afford Qualified Bidders access to Sellers' online data room, which shall contain the same documents made available to Buyer (other than those documents or materials that reflect or respond to Buyer's own due diligence process and inquiries). Banker will respond to a Qualified Bidder's request for any additional due diligence information about the Assets as Banker, in consultation with Sellers and their other advisors, determines to be reasonable and appropriate. Additional due diligence provided to any Qualified Bidder (other than those documents or materials that reflect or respond to Buyer's own due diligence process and inquiries) will also be placed in Sellers' online data room. Sellers or their advisors shall promptly notify Buyer upon any such updates to the online data room. The Sellers shall not be obligated to furnish any due diligence information after the Bid Deadline (as defined below), and no conditions relating to the completion of due diligence shall be permitted to exist after the Bid Deadline.

### Bid Deadline

A Qualified Bidder that desires to make a bid shall deliver written copies of its bid to Banker not later than 4:00 p.m. (Eastern Time) on April 10, 2010 (the "Bid Deadline"). Banker shall then distribute a copy of each bid to the Sellers and their legal and other financial advisors. Only Qualified Bidders that have submitted Qualified Bids prior to the Bid Deadline

4

(as it may be extended by the Sellers in compliance with these Bidding Procedures) shall be entitled to bid at the Auction. The Sellers may extend the Bid Deadline once or successively, but are not obligated to do so. If the Sellers extend the Bid Deadline, they shall promptly notify all Qualified Bidders of the extension.

## Bid Requirements

A bid is a written irrevocable offer from a Qualified Bidder (i) stating that such Qualified Bidder is prepared to purchase the Assets and assume the Assumed Liabilities upon the terms and conditions set forth in the asset purchase agreement substantially in the form of the Agreement (except for the terms relating to the Break-Up Fee and Expense Reimbursement) including, without limitation, the transition services agreement substantially in the form of the Transition Services Agreement, (ii) accompanied by copies of such materials marked to show those amendments and modifications to the Agreement (the "Marked Agreement"), including, without limitation, the Transition Services Agreement (the "Marked Ancillary Agreements") that the Qualified Bidder proposes, in form and substance acceptable to the Sellers, and (iii) accompanied by (a) a certified or bank check, or wire transfer or other immediately available funds, in the amount of five percent (5%) of the purchase price payable to the order of the Sellers as a good-faith deposit (the "Good Faith Deposit"), and (b) written evidence of available cash, a firm irrevocable commitment for financing or such other evidence of ability to consummate the transaction and to provide adequate assurance of future performance under the Assumed Agreements as the Sellers may request.

A bid will constitute a Qualified Bid only if the bid:

a.      provides for the purchase of all or substantially all Assets for an aggregate purchase price that is greater than the sum of (i) the Purchase Price offered by the Buyer in the Agreement and (ii) the Break-Up Fee and Expense Reimbursement ("Buyer's Purchase Price"), or alternatively provides for the purchase of a portion of the Assets that Sellers determine in consultation with their advisors when taken together with other Qualified Bids is in aggregate greater than the Buyer's Purchase Price;

b.      is on terms that, in the Sellers' sole business judgment are substantially the same or better than the terms of the Agreement, including, without limitation, the Transition Services Agreement;

c.      is not conditioned on obtaining financing or any internal approval, or on the outcome or review of due diligence with respect to the Assets or the Assumed Liabilities or the Business, but may be subject to the accuracy in all material respects at the closing of specified representations and warranties or the satisfaction in all material respects at the closing of specified conditions, none of which shall be more burdensome when taken as a whole than those set forth in the Agreement;

d.     contain a commitment to consummate the Sale pursuant to a chapter 11 plan within not more than 15 days after the Sale Hearing;

e.     is irrevocable (in the form resulting from any modifications that may be made at the Auction) until the earlier of (i) the end of the business day following the closing and (ii) the withdrawal of the Assets for sale by the Sellers (the "Revocability Date");

f.     does not request or entitle the bidder, other than the Buyer, to any breakup fee, termination fee, expense reimbursement or similar type of payment;

g     acknowledges and represents that the bidder (i) has had an opportunity to inspect and examine the Assets and the Assumed Liabilities and to conduct any and all necessary due diligence with respect thereto prior to making its bid, (ii) in making its bid, has relied solely on its own independent review, investigation and/or inspection of the Assets and the Assumed Liabilities, and (iii) did not rely on any written or oral statements, representations, promises, warranties or guaranties whatsoever, whether express, implied or by operation of law or otherwise regarding the Assets or the Assumed Liabilities, or the completeness of any information provided in connection therewith at the Auction, except as expressly stated in the Agreement or these Bidding Procedures;

h.     fully discloses the identity of each entity that will be bidding for the Assets or otherwise participating in connection with such bid, and the complete terms of any such participation; and

i.     includes evidence, in form and substance satisfactory to the Sellers, of authorization and approval from the bidder's board of directors (or comparable governing body) with respect to the submission, delivery and closing of the Marked Agreement and the Marked Ancillary Agreements.

A bid received from a Qualified Bidder before the Bid Deadline that meets all of the above requirements shall constitute a "Qualified Bid". Notwithstanding the foregoing, the Buyer shall be deemed a Qualified Bidder and the Agreement a Qualified Bid for all purposes in connection with the Bidding Process and the Auction.

### "As Is, Where Is"

The Sale shall be on an "as is, where is" basis and without representations or warranties of any kind, nature or description by the Sellers, its agents or its estate, except to the extent expressly set forth in the Agreement or the Marked Agreement, as the case may be. Except as otherwise provided in the Agreement or the Marked Agreement, as the case may be, all of the Sellers' right, title and interest in the Assets shall be sold free and clear of all interests,

liens, charges, claims, pledges, security interests, options, voting trusts or similar restrictions on voting or transfer or other encumbrances (collectively, "Encumbrances") in accordance with section 363 of the Bankruptcy Code, such Encumbrances, if any, to attach to the net proceeds of the Sale, with the same priority as they attached to the relevant Assets.

## Auction

If any Qualified Bid(s) (other than the Buyer's bid) are received by the Bid Deadline, the Sellers will conduct an auction for the Assets (the "Auction"). If no other Qualified Bid(s) is received by the Bid Deadline, the Sellers will not conduct the Auction and shall designate the Buyer's bid as the Successful Bid for the purposes of these Bidding Procedures.

Prior to the Auction, the Sellers will notify all Qualified Bidders that submitted Qualified Bids of the highest or otherwise best Qualified Bid, as determined in the Sellers' sole discretion (the "Baseline Bid"). Sellers shall provide Buyer a copy of the Marked Agreement corresponding to the Baseline Bid no later than two (2) Business Days before the Auction.

The Auction shall take place at 10:00 a.m. (Eastern Time) on April 20, 2010, at the offices of Milbank, Tweed, Hadley & McCloy LLP, or such later time or other place as the Sellers shall notify all Qualified Bidders who have submitted Qualified Bids, it being understood that the Auction shall take place no sooner than two (2) Business Days after Buyer receives a copy of the Marked Agreement corresponding to the Baseline Bid.

The Auction shall be conducted in accordance with the following procedures: (i) only the Sellers, the Buyer, other Qualified Bidders who have timely submitted Qualified Bids, advisors of any official committee (if one is appointed) and the administrative agents and lenders for the Sellers' prepetition secured credit facilities shall be allowed to attend the Auction (and the legal and financial advisors to each of the foregoing); (ii) unless otherwise ordered by the Bankruptcy Court for cause shown or unless the Sellers (upon consent of the Buyer) waive any requirements relating to the qualification of Qualified Bidders, only a Qualified Bidder who has submitted a Qualified Bid will be eligible to participate in the Auction; (iii) all Qualified Bidders must be present at the Auction in person or through a qualified representative; and (iv) once the Auction is commenced, all bids shall be made and received in one room, on an open basis, and all Qualified Bidders shall be entitled to be present for all bidding with the understanding that (a) the true identity of each Qualified Bidder shall be fully disclosed to all other Qualified Bidders, and (b) all material terms of all Qualified Bids will be fully disclosed to all Qualified Bidders participating in the Auction throughout the entire Bidding Process. The Sellers may employ and announce at the Auction additional procedural rules that are reasonable under the circumstances for conducting the Auction.

7

At the Auction, Qualified Bidders (including the Buyer) will be permitted to increase their bids. The bidding shall start from the Baseline Bid. If the Baseline Bid is the Buyer's bid, the next bid submitted at the Auction must exceed the Buyer's bid (the Buyer's bid being inclusive of the Break-up Fee and Expense Reimbursement) by an amount at least equal to two hundred and fifty thousand dollars ($250,000) (the "Initial Overbid"). All subsequent overbids must be in increments of at least one hundred and fifty thousand dollars ($150,000) ("Subsequent Overbids"). For the purpose of evaluating the value of the consideration provided by subsequent bids, the Sellers will give effect to the Break-Up Fee and the Expense Reimbursement that may be payable to the Buyer under the Agreement and shall credit such amounts as part of any initial or subsequent bid submitted by Buyer. No other Qualified Bidder will be allowed to credit bid (excluding Sellers' prepetition secured lenders who will be allowed to credit bid and participate in the auction notwithstanding anything else herein) any claims it may hold against the Sellers.

Immediately prior to the conclusion of the Auction, the Sellers, in consultation with their financial and legal advisors, shall (i) review each Qualified Bid on the basis of its financial and contractual terms and the factors relevant to the Sale process and the best interests of the Sellers' estate, including those factors affecting the speed and certainty of consummating the Sale, (ii) identify the Successful Bid, (iii) identify the next highest or otherwise best offer after the Successful Bid (the "Next Highest Bid"), provided that the Buyer, in its sole discretion, may decline to be designated Next Highest Bid, and (iv) notify all Qualified Bidders present at the Auction of the identities of the Successful Bidder and the bidder that has submitted the Next Highest Bid (the "Next Highest Bidder"), and the respective amounts of their bids. At the Sale Hearing, the Sellers shall present the Successful Bid to the Bankruptcy Court for approval.

The Sellers may adopt rules for the Bidding Process at the Auction that, in its judgment will better promote the goals of the Bidding Process, so long as they are not materially inconsistent with any of the provisions of the Agreement, the Bidding Procedures, or any Bankruptcy Court order, and so long as the Buyer consents to such changes (which consent shall not be unreasonably withheld).

## Acceptance of Successful Bid

The Sellers presently intend to sell the Assets to the Successful Bidder, whether such entity is the Buyer or another Qualified Bidder. However, the Sellers' presentation of the Successful Bid to the Bankruptcy Court for approval does not constitute the Sellers' acceptance of the bid (except with respect to the Buyer's bid reflected in the Agreement, as it may be modified at the Auction). The Sellers will be deemed to have accepted the Successful Bid only when such bid has been approved by the Bankruptcy Court at the Sale Hearing.

The Sellers and the Successful Bidder shall close the Sale within fifteen (15) days after the Sale Hearing, which can be extended in the Seller's sole discretion (unless the Buyer is the Successful Bidder in which case such deadline can be extended upon the Seller's and Buyer's consent). In the event that the Successful Bidder fails to close the Sale during such time period for any reason (unless such date has been extended), then the Sellers shall be authorized, but not required, to close with the Next Highest Bidder (it being understood that the Buyer, in its sole discretion, may decline to be designated the Next Highest Bid at the auction), without notice to

8

any other party or further court order. If the Sellers decide to close with the Next Highest Bidder, the Sellers and the Next Highest Bidder shall have an additional five (5) business days to close, which can be extended in the Sellers' sole discretion.

The Sellers and the Successful Bidder shall close the Sale at the date the Plan becomes effective or, to the extent applicable, on the closing date otherwise set forth in the Successful Bid.

## Return of Good Faith Deposit

The Good Faith Deposits of all Qualified Bidders, including the Buyer, shall be held in one or more interest-bearing escrow accounts by the Sellers, but shall not become property of the Sellers' estate absent further order of the Bankruptcy Court. Upon the return of the Good Faith Deposits, their respective owners shall receive any and all interest that will have accrued thereon.

All Qualified Bids must remain open, notwithstanding Bankruptcy Court approval of the Sale to the Successful Bidder, until the Revocability Date; provided however, that the Buyer's bid need not remain open if it is not deemed the Successful Bid at the Auction. If the Successful Bidder (or the Next Highest Bidder, if applicable) timely closes the Sale, its Good Faith Deposit shall be credited towards the Purchase Price. If the Successful Bidder (or the Next Highest Bidder, if applicable) fails to timely close the Sale, its Good Faith Deposit shall be disposed of as provided in the Agreement or the applicable Marked Agreement.

## Modifications

The Sellers may, upon the consent of the Buyer, extend or alter any deadline contained herein if it determines that any such extension or alteration will better promote the goals of the Bidding Process. At or before the Sale Hearing, the Bankruptcy Court or the Sellers may impose such other terms and conditions as it may determine to be in the best interests of the Sellers' estate, its creditors and other parties in interest (with the consent of the Buyer, such consent not to be unreasonably withheld).

**Exhibit B**

## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF DELAWARE

```
------------------------------------------------------------x
                                          :
In re:                                    :    Chapter 11
                                          :
                                          :    Case No. 10-10250 (MFW)
PCAA PARENT, LLC, et al.,¹                :
                                          :    Jointly Administered
                                          :
                    Debtors.              :    Re: Docket Nos. _____
------------------------------------------------------------x
```

**ORDER APPROVING PCAA'S MOTION FOR ENTRY OF AN ORDER
(A) APPROVING SALE OF SUBSTANTIALLY ALL OF PCAA'S ASSETS FREE AND
CLEAR OF ALL LIENS, CLAIMS, ENCUMBRANCES AND OTHER INTERESTS
PURSUANT TO SECTIONS 363(b), (f) AND (m) OF BANKRUPTCY CODE,
(B) ASSUMING AND ASSIGNING CERTAIN EXECUTORY CONTRACTS AND
UNEXPIRED LEASES, AND (C) GRANTING RELATED RELIEF**

Upon the motion, dated January [___] 2010 (Docket No. ____) (the "**Sale Motion**")²

of PCAA Parent, LLC, together with its affiliated debtors and debtors in possession (collectively,

"PCAA") in the above-captioned chapter 11 cases (the "Chapter 11 Cases"), for entry of an order

(i) approving the sale of all or substantially all of the Debtors' assets free and clear of any and all

liens, claims, interests and encumbrances under sections 363(b), (f) and (m) of title 11 of the

United States Code, 11 U.S.C. §§ 101-1532 (as amended, the "**Bankruptcy Code**") and the

assumption of certain liabilities, pursuant to the terms of that certain Asset Purchase Agreement,

dated as of January____, 2010, between the Debtors and _____ (the "**Purchaser**") (as same

---

¹       The PCAA entities, along with the last four digits of their respective federal tax identification numbers (as applicable), are as follows:  PCAA Parent, LLC (8827); PCAA Chicago, LLC (0860); PCAA GP, LLC (4237); PCAA LP, LLC (none); PCAA Properties, LLC (0617); PCAA SP, LLC (3465); Airport Parking Management, Inc. (7571); PCAA Missouri, LLC (5702); PCAA SP-OK, LLC (none); PCAA Oakland, LLC (9451); Parking Company of America Airports, LLC (9249); PCA Airports, Ltd. (8348); Parking Company of America Airports Phoenix, LLC (8343); and RCL Properties, LLC (2006).  The mailing address for PCAA is 621 North Governor Printz Boulevard, Essington, PA 19029.

²       Unless otherwise defined, capitalized terms used herein shall have the meanings ascribed to them in the Sale Motion or the Sale Agreement, as the case may be; as to any conflicts with respect to such terms, the meanings contained in the Sale Agreement shall control over the meanings contained in the Sale Motion.

may be subsequently modified, amended or clarified, the "**Sale Agreement**," substantially in the

form attached hereto as **Exhibit A**[3], and the transactions contemplated thereby, the

"**Transactions**"), subject to the procedures set forth in that certain order entered by the Court on

_____, 2010, approving the Bidding Procedures and other related relief (the "**Bidding**

**Procedures Order**"), and (ii) the assumption and assignment of certain executory contracts and

unexpired leases to the Purchaser, as described in the Sale Agreement and a list of which is

attached hereto as **Exhibit B**, (the "**Purchased Contracts**") (collectively, both (i) and (ii), the

"**Sale**"); and an auction having been held on [          ], 2010 in accordance with the Bidding

Procedures Order (the "**Auction**"); and a hearing on the Sale Order having been held on [

], 2010 (the "**Sale Hearing**"), at which time all interested parties were offered a fair and

reasonable opportunity to be heard and object with respect to the Auction, the Sale Motion and

the Sale; and upon the Court's consideration of the Sale Motion, any objections filed thereto, and

the record of the Sale Hearing, including the testimony and evidence admitted at the Sale

Hearing; and after due deliberation thereon, and it appearing that the relief requested in the Sale

Motion is in the best interests of the Debtors, their estates, their creditors and other parties in

interest, and good cause appearing therefor,

THE COURT HEREBY MAKES THE FOLLOWING FINDINGS:

A.     **Findings of the Court**. The findings and conclusions on the record at the Sale

Hearing including, without limitation, the findings and conclusions set forth herein constitute the

Court's findings of fact and conclusions of law pursuant to Rule 7052 of the Federal Rules of

Bankruptcy Procedure (the "**Bankruptcy Rules**"), made applicable to this proceeding pursuant

to Bankruptcy Rule 9014. To the extent any of the following findings of fact constitute

---

[3]     Exhibit A is exclusive of exhibits and schedules, except for those certain exhibits and/or schedules attached
thereto.

conclusions of law, they are adopted as such. To the extent that any of the following conclusions of law constitute findings of fact, they are adopted as such.

**B.** **Jurisdiction and Venue.** This Court has jurisdiction to hear and determine this Sale Motion and the Transactions under 28 U.S.C. § 1334. This is a core proceeding under 28 U.S.C. § 157(b). Venue of these cases and the Sale Motion in this District is proper under 28 U.S.C. §§ 1408 and 1409.

**C.** **Statutory Predicates.** The statutory predicates for the relief sought in the Sale Motion are sections 105(a), 363, 365, 503 and 1146 of the Bankruptcy Code, Bankruptcy Rules 2002, 6004, 6006, 9007 and 9014, and the applicable Local Rules for the United States Bankruptcy Court for the District of Delaware (the "Local Rules").

**D.** **Petitions.** On January 28, 2010 (the "**Petition Date**"), the Debtors filed voluntary petitions for relief under chapter 11 of the Bankruptcy Code. Since the Petition Date, the Debtors have continued in possession and management of their businesses and properties as debtors in possession pursuant to sections 1107 and 1108 of the Bankruptcy Code.

**E.** **Notice.** As evidenced by the affidavits of service filed with this Court and based upon the representations of counsel at the Sale Hearing and as approved under the Bidding Procedures Order: (i) due, proper, timely, adequate and sufficient notice of the Sale Motion, the Auction, the Sale Hearing, the Sale and the Transactions, including the assumption and assignment of the Purchased Contracts designated by the Purchaser and Cure Amounts with respect thereto, has been provided to all counterparties to Purchased Contracts and to all other parties in interest, in light of the circumstances of the Debtors and in accordance with all applicable law, including without limitation, sections 102(1) and 363(b) of the Bankruptcy Code, Bankruptcy Rules 2002, 6004, 9006, 9007, 9008 and 9014, the Local Rules and the procedural

3

due process requirements of the United States Constitution; (ii) such notice was and is good, sufficient and appropriate under the circumstances of the Debtors' Chapter 11 Cases; and (iii) no other or further notice of the Sale Motion, the Auction, the Sale Hearing, the Sale, the Transactions, or the assumption and assignment of the Purchased Contracts is or shall be required.

F.     **Opportunity to Object**. A reasonable opportunity to object and to be heard with respect to the sale of the Purchased Assets, the assumption and assignment of the Purchased Contracts and the defaults and Cure Amounts related thereto, the Transactions, the Sale Motion and the relief requested therein has been given to all interested persons and entities, including, without limitation, the following: (i) the Office of the United States Trustee for the District of Delaware, (ii) counsel for the Purchaser, (iii) counsel for the Official Committee of Unsecured Creditors appointed in these Chapter 11 Cases (the "Committee"), (iv) counsel for the Debtors' prepetition secured lender(s), (v) all known creditors of the Debtors, (vi) any party that expressed an interest in purchasing the Purchased Assets within the last year, (vii) all counterparties to the Purchased Contracts, (viii) all entities known or reasonably believed to have asserted any claims against the Purchased Assets or the Debtors' interest in the Purchased Assets, and other entities known to have asserted a lien, interest or encumbrance in or upon the Purchased Assets, (ix) employees of the Debtors, (x) the Internal Revenue Service and governmental taxing authorities that have, or as a result of the sale of the Purchased Assets, may have claims, contingent or otherwise against the Debtors, (xi) all taxing authorities in the jurisdictions in which the Sellers operate; (xii) the Office of the United States Attorney for the District of Delaware, (xiii) the Securities and Exchange Commission, (xiv) and all other interested governmental, and environmental authorities or entities known by Debtors to assert jurisdiction over Debtors and to

4

have an interest in the proposed Sale or Transactions; (xv) all persons, if any, who have filed objections to the Sale Motion, and (xvi) all persons who have filed a notice of appearance in the Debtors' bankruptcy cases.

G.    [**Auction**. At the Auction, [                    ], was approved as having submitted the highest or otherwise best offer or as the Successful Bidder as provided in the Bidding Procedures Order.

H.    At the Auction, [                    ], was approved as having submitted the next highest or otherwise best offer after the Successful Bidder or as the Next Highest Bidder as provided in the Bidding Procedures Order.

I.    Potential bidders had the full and fair opportunity to submit bids and participate in the Auction on the terms set forth in the Bidding Procedures Order. The Auction was conducted fairly and in good faith, without collusion and in accordance with the Bidding Procedures Order. At the Auction, the Purchaser was selected as the Successful Bidder. At the Auction, [       ] was selected as the Next Highest Bidder. The Sale Agreement with Purchaser constitutes the highest and best offer for the Purchased Assets, and will provide a greater recovery for the Debtors' estates than would be provided by any other available alternative. The Debtors' determination that the Sale Agreement constitutes the highest and best offer for the Purchased Assets constitutes a valid and sound exercise of the Debtors' business judgment.] [**No Competing Bids**. No Qualified Bids other than the Sale Agreement were received and, accordingly, no Auction was held or required to be held pursuant to the Bidding Procedures Order.]

J.    **Arm's-Length Sale**. The Sale Agreement and other documents and instruments related to and connected with the Transactions and the consummation thereof were negotiated,

5

proposed and entered into by the Debtors and the Purchaser without collusion, in good faith and from arm's-length bargaining positions. Neither the Purchaser nor any of their affiliates or their respective representatives is an "insider" of any of the Debtors, as that term is defined in Bankruptcy Code section 101(31). None of the Debtors, the Purchaser or their respective affiliates or their representatives has engaged in any conduct that would cause or permit the Sale Agreement or other documents and instruments related to or connected with the Transactions and the consummation thereof to be avoided under Bankruptcy Code section 363(n), or has acted in any improper or collusive manner with any person. The terms and conditions of the Sale Agreement and other documents and instruments related to and connected with the Transactions and the consummation thereof, and the Transactions themselves, including without limitation the consideration provided in respect thereof, are fair and reasonable, and the Transactions are not avoidable and shall not be avoided under Bankruptcy Code section 363(n).

**K.** **Good Faith Purchaser**. The Purchaser, their respective affiliates and their respective representatives have proceeded in good faith and without collusion in all respects in connection with this proceeding. Such persons are therefore entitled to all of the benefits and protections of Bankruptcy Code section 363(m). Accordingly, the reversal or modification on appeal of the authorization provided herein to consummate the Transactions shall not affect the validity of the Transactions (including, without limitation, the other documents and instruments related to or connected with the Transactions and the consummation thereof, and the assumption and assignment of the Purchased Contracts). No stay pending appeal of this Sale Order has been requested, and the stay contained in Fed. R. Bankr. P. 6004(h) has been and hereby is waived as set forth in paragraph **[24]** below.

6

**L.** **Corporate Authority**. Subject to the entry of this Order, the Debtors have (i) full corporate power and authority to perform all of their obligations under the Sale Agreement and all other documents and instruments related to and connected with the Transactions and the consummation thereof, and the Debtors' prior execution and delivery of, and performance of obligations under, the Sale Agreement and other documents and instruments is hereby ratified, (ii) all of the corporate power and authority necessary to consummate the Transactions, (iii) taken all corporate action necessary to authorize and approve the Sale Agreement and other documents and instruments related to or connected with the Transactions and the consummation thereof and the Transactions themselves, and (iv) no consents or approvals that are required to consummate the Transactions or otherwise perform obligations under the Sale Agreement or other documents and instruments, other than those expressly provided for in the Sale Agreement.

**M.** **Sale in Best Interests**. Good and sufficient reasons for approval of the Sale Agreement and the Transactions have been articulated to the Court in the Sale Motion and on the record at the Sale Hearing, and the relief requested in the Sale Motion and set forth in this Sale Order is in the best interests of the Debtors, their estates, their creditors and other parties in interest.

**N.** **Business Justification**. The Debtors have demonstrated both good, sufficient and sound business purposes and justifications for, and the existence of exigent circumstances to enter into the Sale Agreement, sell the Purchased Assets and assume and assign the Purchased Contracts under sections 363, 365, 1123 and 1141 of the Bankruptcy Code, and such actions are an appropriate exercise of Debtors' business judgment and in the best interests of the Debtors, their estates and creditors. Entry of an order approving the Sale Agreement and the Transactions, and all the provisions thereof, on the terms requested in the Sale Motion and set

7

forth in this Sale Order, is a condition precedent to the Purchaser's consummation of the Transactions.

O.    **Consideration**.  The consideration provided by the Purchaser to the Debtors pursuant to the Sale Agreement constitutes reasonably equivalent value and fair consideration under the Bankruptcy Code, the Uniform Fraudulent Transfer Act, the Uniform Fraudulent Conveyance Act and the laws of the United States, any state, territory, possession thereof or the District of Columbia.  The Sale Agreement represents a fair and reasonable offer to purchase the Purchased Assets under the circumstances of the Debtors' Chapter 11 Cases, which circumstances have been detailed in the Sale Motion and on the record at the Sale Hearing.  The Debtors have adequately marketed the Purchased Assets to potential purchasers, both before and during their Chapter 11 Cases, as described in detail in the Sale Motion.  No other person or entity or group of persons or entities has offered to purchase the Purchased Assets for an amount that would give equal or greater economic value to the Debtors than the value being provided by the Purchaser pursuant to the Sale Agreement.  Among other things, the Transactions are the best alternative available to the Debtors to maximize the return to their creditors.  Approval of the Sale Motion, the Sale Agreement and the Transactions by this Court on the terms of this Sale Order is in the best interests of the Debtors, their creditors and all other parties in interest.  No available alternative to the Transactions exists that would provide a greater value to the Debtors, their creditors, or other parties in interest.

P.    **Free and Clear**.  The transfer of the Purchased Assets to the Purchaser under the Sale Agreement will be a legal, valid, and effective transfer, and vests or will vest, at Closing, the Purchaser with all right, title, and interest of the Debtors to the Purchased Assets free and clear (except for certain enumerated Permitted Exceptions in the Sale Agreement) of all of the

8

following (collectively, "**Interests**") liens, claims (as defined in section 101(5) of the Bankruptcy Code), encumbrances, obligations, liabilities, demands, guarantees, actions, suits, defenses, deposits, credits, allowances, options, rights, restrictions, limitations, contractual commitments, rights of first refusal, rights of setoff or recoupment, or interests of any kind or nature whether known or unknown, legal or equitable, matured or unmatured, contingent or noncontingent, liquidated or unliquidated, asserted or unasserted, whether arising prior to or subsequent to the commencement of these Chapter 11 Cases, whether imposed by agreement, understanding, law, equity or otherwise, including, but not limited to, (i) those Interests that purport to give to any party a right or option to effect a setoff against or any forfeiture, modification or termination of the Debtors' interests in the Purchased Assets, or any similar rights if any; (ii) those Interests arising under all mortgages, deeds of trust, security interests, conditional sale or other title retention agreements, pledges, liens, judgments, demands, encumbrances, rights of first refusal or charges of any kind or nature, if any, (iii) those Interests that are Excluded Liabilities set forth in the Sale Agreement, including without limitation: (a) liabilities arising under or out of, in connection with, or in any way relating to Employees of the Debtors incurred on or prior to the Closing Date, (b) Tax liabilities arising under or out of, in connection with, or in any way relating to the operation of the Debtors' business prior to the Closing Date, except as provided in section 2.3(c) of the Sale Agreement, (c) Transfer taxes arising from or in connection with the Sale, (d) liabilities arising under or out of, in connection with, or in any way relating to Excluded Assets, including Excluded Contracts, and (e) liabilities that arose under the Purchased Contracts prior to their full and complete assignment or novation (to the extent such liabilities are not cured pursuant to section 2.5 of the Sale Agreement); and (iv) those Interests arising in connection with any agreements, acts, or failures to act, of any of the Debtors or any of the Debtors'

9

predecessors, affiliates, or representatives including, but not limited to, Interests arising under any doctrines of successor liability or similar theories under applicable municipal, state or federal law or otherwise. For the avoidance of doubt, without limiting the effect of the foregoing, the assumption and assignment of any Purchased Contract is free and clear of all Interests to the greatest extent allowed under section 363(f) of the Bankruptcy Code and applicable law.

Q.    **Free and Clear Findings Required by Purchaser**. The Purchaser would not have entered into the Sale Agreement and will not consummate the Transactions, thus adversely affecting the Debtors, their estates and their creditors, if the sale of the Purchased Assets to the Purchaser, and the assumption and assignment or transfer of the Purchased Contracts to the Purchaser, were not free and clear of all Interests of any kind or nature whatsoever, or if the Purchaser would, or in the future could, be liable for any of the Interests.

R.    **Satisfaction of Section 363(f) Standards**. The Debtors may sell the Purchased Assets free and clear of any Interests of any kind or nature whatsoever because, in each case, one or more of the standards set forth in section 363(f)(1)-(5) of the Bankruptcy Code has been satisfied. The person or entity with any Interest in the Purchased Assets and/or such Interest:  (i) has, either expressly or subject to the terms and conditions of the Bidding Procedures Order and this Sale Order, consented to the Transactions or is deemed to have consented to the Transactions; (ii) could be compelled in a legal or equitable proceeding to accept money satisfaction of such Interest;  or (iii) otherwise falls within the provisions of section 363(f) of the Bankruptcy Code.  Those holders of Interests who did not object to the Sale Motion in accordance with the terms of the Bidding Procedures Order are deemed to have consented to the Sale Motion, the Sale Agreement and the Transactions, free and clear of such Interests, pursuant to section 363(f)(2) of the Bankruptcy Code.  The Debtors' prepetition secured lenders have

10

expressly consented to the Transactions and the sale of the Purchased Assets free and clear of their Interests. All holders of Interests are adequately protected by having their Interests attach to the net proceeds ultimately attributable to the Purchased Assets against or in which such Interests are asserted, subject to the terms of such Interests, with the same validity, force and effect, and in the same order of priority, which such Interests now have against the Purchased Assets or their proceeds, subject to any rights, claims and defenses the Debtors or their estates, as applicable, may possess with respect thereto.

S.   **No Fraudulent Transfer.** The Sale Agreement was not entered into, and the Transactions are not consummated, for the purpose of hindering, delaying or defrauding creditors of the Debtors under the Bankruptcy Code or under the laws of the United States, any state, territory, possession thereof, or the District of Columbia, or any other applicable law. Neither Debtors nor Purchaser have entered into the Sale Agreement or are consummating the Transactions with any fraudulent or otherwise improper purpose.

T.   **No Successor Liability.** Except for the Assumed Liabilities and the Permitted Exceptions, the transfer of the Purchased Assets to the Purchaser under the Sale Agreement shall not result in Purchaser having any liability or responsibility for, or any Purchased Assets being recourse for, (i) any Interest asserted against the Debtors or against an insider of the Debtors or against any of the Purchased Assets or any other assets of the Debtors, or (ii) the satisfaction in any manner, whether at law or in equity, whether by payment, setoff, recoupment, or otherwise, directly or indirectly, and whether from the Purchased Assets or otherwise, of any Interest or Excluded Liability, or (iii) otherwise to third parties or the Debtors, except, with respect to the Debtors, as is expressly set forth in the Sale Agreement. Without limiting the effect or scope of the foregoing, the transfer of the Purchased Assets from the Debtors to the Purchaser does not

11

and will not subject the Purchaser or its affiliates, successors or assigns or their respective properties (including the Purchased Assets) to any liability for Interests against the Debtors or the Debtors' Interests in such Purchased Assets by reason of such transfer or otherwise under the laws of the United States or any state, territory, possession thereof, or the District of Columbia applicable to such Transaction, including, without limitation, any successor liability or similar theories. For the avoidance of doubt, notwithstanding the consummation of the Transactions and the employment by the Purchaser of certain persons previously employed by the Debtors, Purchaser shall not have any obligations or liabilities to any employee of the Debtors or in respect of any employee benefits owing to any employee of the Debtors by the Debtors or by any plan or program administered by the Debtors or for the benefit of the Debtors' employees or in respect of any collective bargaining agreement on or prior to closing, and any obligations of the Purchaser shall be limited to those obligations expressly agreed by Purchaser under the Sale Agreement, which arise on and following the Closing.

U.  **Cure/Adequate Assurance**. The assumption and assignment or transfer of the Purchased Contracts pursuant to the terms of this Sale Order is integral to the Sale Agreement, does not constitute unfair discrimination, and is in the best interests of the Debtors and their estates, creditors and all other parties in interest, and represents the reasonable exercise of sound and prudent business judgment by the Debtors. The Debtors have or will have as of the Closing, as described in the Sale Agreement, subject to Section 2.5: (i) to the extent necessary, cured or provided adequate assurance of cure, of any default existing prior to the date hereof with respect to the Purchased Contracts, within the meaning of 11 U.S.C. § 365(b)(1)(A) and 365(f)(2(A), and (ii) to the extent necessary, provided compensation or adequate assurance of compensation to any party for any actual pecuniary loss to such party resulting from a default prior to the date

12

hereof with respect to the Purchased Contracts. The Purchaser' promise to perform the obligations under the Purchased Contracts after their assumption and assignment shall constitute adequate assurance of future performance within the meaning of 11 U.S.C. § 365(b)(1)(C) and 365(f)(2)(B) to the extent that any such assurance is required and not waived by the counterparties to such Purchased Contracts. Any objections to any Cure Amounts or defaults under Purchased Contracts, or the assumption and assignment of any of the Purchased Contracts to the Purchaser, are hereby overruled.

V.    **Prompt Consummation**. The Transactions must be approved by the Court and consummated in a timely manner in order to preserve the viability of the business subject to the sale as a going concern, and to thereby maximize the value of the Debtors' estates, for the reasons set forth in the Sale Motion and on the record at the Sale Hearing. For those reasons, the deadlines set forth in the Sale Agreement are material terms and time is of the essence in consummating the Sale.

W.    **Contract Assignments in Best Interests**. The Debtors have demonstrated that assuming and assigning the Purchased Contracts in connection with the Transactions is an exercise of their sound business judgment, and that such assumption and assignment is in the best interests of the Debtors' estates, for the reasons set forth in the Sale Motion and on the record at the Sale Hearing, including, without limitation, because the assumption and assignment of the Purchased Contracts in connection with the Transactions will limit the losses of counterparties to Purchased Contracts and maximize the distribution to creditors of the Debtors.

X.    **Transfer Pursuant to Section 1146(a)**. The Sale constitutes an element of a plan of liquidation or reorganization under chapter 11 of the Bankruptcy Code. The Sale has occurred "under" a plan as such term is used in section 1146(a) of the Bankruptcy Code, and the

Sale does not circumvent chapter 11 plan safeguards, such as those set forth in sections 1125 and 1129 of the Bankruptcy Code.

Y. **Avoidance Action Releases are Required.** The avoidance action releases described in section 4.2(f) and Schedule 2.1(i) of the Sale Agreement, including without limitation the releases of certain causes of action under Section 544 through 553 of the Bankruptcy Code that each Seller and each Seller's bankruptcy estate may have, as set forth therein, are an express condition to the Purchaser's consummation of the Transactions and are required to implement the free and clear nature of the Transactions. The Transactions viewed as a whole, together with such releases, will provide a greater benefit to the Debtors, their estates and their creditors than would the prosecution of the released causes of action in the absence of the Transactions.

**NOW, THEREFORE, IT IS ORDERED THAT:**

1. **Sale Motion is Granted**. The Sale Motion and the relief requested therein is GRANTED and APPROVED.

2. **Objections Overruled**. Any objections to the entry of this Sale Order or the relief granted herein and requested in the Sale Motion that have not been withdrawn, waived, or settled, or not otherwise resolved pursuant to the terms hereof, if any, hereby are denied and overruled on the merits with prejudice. The Bidding Procedures Order has not been vacated, withdrawn, rescinded, or amended, and remains in full force and effect.

3. **Approval**. The Sale Agreement and all other documents and instruments related to and connected with the Transactions and the consummation thereof, and all of the terms and conditions thereto, are hereby approved. Debtors are hereby authorized to (i) execute any additional instruments or documents reasonably necessary to implement the Sale Agreement and the Transactions, and any prior execution by Debtors of such agreements, documents, and

14

instruments is hereby ratified; (ii) perform all obligations under the Sale Agreement and other documents and instruments related to or connected with the Transactions and the consummation thereof, and consummate the Transactions, and any prior performance of such obligations and any prior consummation of such Transactions is hereby ratified; (iii) assume and assign to Purchaser the Purchased Contracts; and (iv) take all other and further actions reasonably necessary to consummate and implement the Transactions and perform all obligations under the Sale Agreement and all other documents and instruments related to and connected with the Transactions and the consummation thereof. Without limiting the foregoing, if required under applicable law for the assignment, transfer, sale or conveyance of any particular Purchased Contract, the Debtors are authorized and directed to execute and deliver novation agreements or consents with Governmental Bodies, in a form and substance acceptable to the Governmental Entity and the Purchaser and permitted pursuant to the Sale Agreement. The terms of such novation agreements, including without limitation the release of any claims and rights of the Debtors against the Governmental Bodies in connection with the Purchased Contract, are hereby approved.

    4.    **Free and Clear**. Except as expressly provided for in the Sale Agreement or this Order, pursuant to Bankruptcy Code sections 105(a) and 363(f), the Debtors are authorized and directed to transfer the Purchased Assets to the Purchaser and the Purchaser shall take title to and possession of the Purchased Assets, upon Closing, free and clear (except for certain Permitted Exceptions) of all Interests of any kind or nature whatsoever, with all such Interests to attach to the proceeds ultimately attributable to the property against or in which such Interests are asserted, subject to the terms of such Interests, with the same validity, force and effect, and in the same order of priority, which such Interests now have against the Purchased Assets or their

proceeds, subject to any rights, claims and defenses the Debtors or their estates, as applicable, may possess with respect thereto.

5. **Transfer Pursuant to Section 1146(a)**. The transfer of the Purchased Assets pursuant to the Sale Agreement is a transfer pursuant to section 1146(a) of the Bankruptcy Code, and accordingly, shall not be taxed under any law imposing a stamp tax or a sale, transfer, or any other similar tax.

6. **Valid Transfer**. As of the Closing, (i) the Transactions shall effect a legal, valid, enforceable and effective sale and transfer of the Purchased Assets to Purchaser, and shall vest Purchaser with title to such Purchased Assets free and clear of all Interests of any kind whatsoever, provided that, with respect to assigned Purchased Contracts with Governmental Entities, the Novation Process to the extent applicable or necessary has been completed upon such Closing; and (ii) the Sale Agreement along with any other documents or instruments related to or connected with the Transactions and the consummation thereof, and the Transactions shall be enforceable against and binding upon, and not subject to rejection or avoidance by, the Debtors, any successor trustee appointed with respect thereto, and each other person and entity.

7. **General Assignment**. On the Closing, this Sale Order shall be construed and shall constitute for any and all purposes a full and complete general assignment, conveyance and transfer of the Debtors' interests in the Purchased Assets. Each and every federal, state, and local governmental agency or department is hereby directed to accept any and all documents and instruments necessary and appropriate to consummate the Transactions and to reflect the effectiveness of the Transactions.

8. **Injunction**. Except as expressly permitted by the Sale Agreement as to Assumed Liabilities, all persons and entities, including, but not limited to, all debt security holders, equity

security holders, governmental, tax and regulatory authorities, lenders, trade creditors, contract counterparties, customers, landlords, licensors, employees, litigation claimants and other persons, holding Interests or Claims of any kind or nature whatsoever against or in the Debtors or the Debtors' interests in the Purchased Assets (whether known or unknown, legal or equitable, matured or unmatured, contingent or noncontingent, liquidated or unliquidated, asserted or unasserted, whether arising prior to or subsequent to the commencement of these Chapter 11 Cases, whether imposed by agreement, understanding, law, equity or otherwise), arising under or out of, in connection with, or in any way relating to, the Debtors, the Purchased Assets, the operation of the Debtors' businesses before the Closing or the transfer of the Debtors' interests in the Purchased Assets to the Purchaser, shall be and hereby are forever barred, estopped and permanently enjoined from asserting, prosecuting or otherwise pursuing Interests against the Purchaser, its property, its successors and assigns, or any of its affiliates or the interests of the Debtors in such Purchased Assets. Following the Closing, no holder of an Interest against the Debtors shall interfere with Purchaser' title to or use and enjoyment of the Debtors' interests in the Purchased Assets based on or related to such Interests, and all such Interests, if any, shall be, and hereby are transferred and attached to the proceeds from the Transaction in the order of their priority, with the same validity, force and effect which they have against such Purchased Assets as of the Closing, subject to any and all rights, claims and defenses that the Debtors' estates and Debtors, as applicable, may possess with respect thereto.

9. **No Successor Liability**. Neither Purchaser nor its affiliates, successors or assigns shall, as a result of the consummation of the Transaction: (i) be a successor to the Debtors or the Debtors' estates; (ii) have, *de facto* or otherwise, merged or consolidated with or into the Debtors or the Debtors' estates; or (iii) be a continuation or substantial continuation of the Debtors or any

17

enterprise of the Debtors. Except for the Assumed Liabilities, the transfer of the Purchased Assets to Purchaser under the Sale Agreement shall not result in (i) any Purchaser, its affiliates, or shareholders, or the Purchased Assets having any liability or responsibility for any Interest against the Debtors or against an insider of the Debtors, (ii) Purchaser, its affiliates, or shareholders, or the Purchased Assets having any liability whatsoever with respect to or be required to satisfy in any manner, whether at law or in equity, whether by payment, setoff or otherwise, directly or indirectly, any Interest or Excluded Liability, or (iii) Purchaser, its affiliates, or shareholders, or the Purchased Assets, having any liability or responsibility to the Debtors except as is expressly set forth in the Sale Agreement.

10.     **Examples of No Successor Liability**. Without limiting the effect or scope of the foregoing, as a result of and following the Closing of the Transactions, the Purchaser shall have no successor or vicarious liabilities of any kind or character, including, but not limited to, federal, state or other tax liabilities, U.S. or foreign pension liabilities, or liabilities based on any theory of antitrust, environmental, labor or employment or benefits law, alter ego, veil piercing, continuity of enterprise, mere continuation, product line, *de facto* merger or substantial continuity, whether known or unknown, legal or equitable, matured or unmatured, contingent or noncontingent, liquidated or unliquidated, asserted or unasserted, whether arising prior to or subsequent to the commencement of these Chapter 11 Cases, whether imposed by agreement, understanding, law, equity or otherwise with respect to the Debtors or any obligations of the Debtors, including, but not limited to, liabilities arising, accruing or payable under, out of, in connection with, or in any way relating to or calculated or determined with respect or or based in whole or in any part upon the operation of the Purchased Assets prior to the Closing, or any taxes in connection with, or in any way relating to the cancellation of debt of the Debtors or their

18

affiliates. For the avoidance of doubt, notwithstanding the consummation of the Transactions and the employment by the Purchaser of certain persons previously employed by the Debtors, Purchaser shall not have any obligations or liabilities to any employee of the Debtors or in respect of any employee benefits owing to any employee of the Debtors by the Debtors or by any plan or program administered by the Debtors or for the benefit of the Debtors' employees or in respect of any collective bargaining agreement on or prior to closing, and any obligations of the Purchaser shall be limited to those obligations expressly agreed by Purchaser on and following the Closing.

11. **Assumption and Assignment**. Pursuant to Bankruptcy Code sections 105(a), 363 and 365, and subject to and conditioned upon the Closing, the Debtors' assumption and assignment to the Purchaser of the Purchased Contracts, and the Purchaser' acceptance of such assignment on the terms set forth in the Sale Agreement, are hereby approved subject to the terms set forth below. The Purchased Contracts shall be transferred to the Purchaser free and clear of all Interests of any kind or nature whatsoever, other than the Assumed Liabilities. The Purchased Contracts shall remain in full force and effect for the benefit of the Purchaser in accordance with their respective terms, notwithstanding any provision in any such Purchased Contracts of the type described in sections 365(b)(2) and (f) of the Bankruptcy Code that prohibits, restricts, or conditions such assignment, transfer or sublease. Without limiting the foregoing, to the extent any provision in a Purchased Contract which prohibits, restricts, or conditions an assignment, transfer or sublease is enforceable under applicable non-bankruptcy law, such contract shall remain in full force and effect for the benefit of the Purchaser in accordance with the terms of the approval, waiver or novation provided by the Govermental Body that is the counterparty thereto. Pursuant to Bankruptcy Code section 365(k), the Debtors

19

shall be relieved from any further liability with respect to the Purchased Contracts after assignment to the Purchaser, except liability for Cure Amounts as set forth in the Sale Agreement and herein. Debtors are hereby authorized to execute and deliver to the Purchaser such documents or other instruments as may be reasonably necessary to assign or transfer the Purchased Contracts to the Purchaser at Closing.

12.  **Payment of Cure Amounts**.  To the extent there are any unpaid Cure Amounts at the Closing, the Debtors are and shall be obligated, and are hereby directed, to pay or cause to be paid such Cure Amounts in accordance with Section 2.5 of the Sale Agreement. The Debtors' obligation to pay the Cure Amounts and the Purchaser' performance of its obligations under the Purchased Contracts after the Closing shall constitute adequate assurance of future performance within the meaning of 11 U.S.C. § 365(b)(1) and 365(f)(2)(B).

13.  **Determination of Cure Amounts**.  The Cure Amounts set forth on **Exhibit C** attached hereto with respect to each Purchased Contract listed thereon shall constitute findings of the Court and shall be final and binding on parties to such Purchased Contracts (and their successors and designees) upon the Closing, and shall not be subject to further dispute or audit based on performance prior to the time of assumption and assignment, irrespective of the terms and conditions of such Purchased Contracts. For Purchased Contracts not included on **Exhibit C**, if any, the Cure Amounts shall be those (a) set forth in the applicable Assignment and Cure Notice, if no objection thereto is filed by the objection deadline, or (b) determined by the Court after notice and a hearing, if an objection thereto is filed by the objection deadline. Each counterparty to a Purchased Contract is hereby forever barred, estopped, and permanently enjoined from (i) asserting against the Purchaser or their property (including without limitation the Purchased Assets), any default arising prior to or existing as of Closing, or any counterclaim,

20

defense, recoupment, setoff or any other Interest asserted or assertable against the Debtors; and (ii) imposing or charging against Purchaser or its affiliates any accelerations, assignment fees, increases or any other fees as a result of the Debtors' assumption and assignment of the Purchased Contract. To the extent that any counterparty was notified of Cure Amounts or defaults (or the absence thereof), in accordance with the Bidding Procedures Order, and failed to object to such Cure Amounts or defaults (or the absence thereof) with respect to any Purchased Contract, in accordance with the Bidding Procedures Order, such counterparty is deemed to have consented to such Cure Amounts or defaults (or the absence thereof) and is deemed to have waived any right to assert or collect any Cure Amounts or enforce any defaults that may arise or have arisen prior to or existed as of the Closing.

14.     **Ipso Facto Clauses Ineffective**. Upon the Debtors' assignment of the Purchased Contracts to the Purchaser under the provisions of this Sale Order, no default shall exist under any Purchased Contract and no counterparty to any such Purchased Contract shall be permitted to declare or enforce a default by the Debtor or Purchaser thereunder or otherwise take action against the Purchaser as a result of any Debtor's financial condition, bankruptcy or failure to perform any of its obligations under the relevant Purchased Contract. Pursuant to section 365(e), any provision in a Purchased Contract that prohibits or conditions the assignment or sublease of such Purchased Contract (including without limitation, the granting of a lien therein) or allows the counterparty thereto to terminate, recapture, impose any penalty, condition on renewal or extension, or modify any term or condition upon such assignment or sublease, constitutes an unenforceable anti-assignment provision that is void and of no force and effect. The failure of the Debtors or the Purchaser to enforce at any time one or more terms or conditions of any

21

Purchased Contract shall not be a waiver of such terms or conditions, or of the Debtors' and Purchaser' rights to enforce every term and condition of the Purchased Contract.

15. **Binding Effect of Order**. This Sale Order shall be binding upon and shall govern the acts of all entities, including without limitation all filing agents, filing officers, title agents, title companies, recorders of mortgages, recorders of deeds, registrars of deeds, administrative agencies, governmental departments, secretaries of state, federal, state and local officials, and all other persons and entities who may be required by operation of law, the duties of their office, or contract, to accept, file, register or otherwise record or release any documents or instruments, or who may be required to report or insure any title or state of title in or to any of the Purchased Assets. The terms and provisions of the Sale Agreement and all other documents and instruments related to or connected with the Transactions and the consummation thereof, the Transactions themselves, the Bidding Procedures Order, and this Sale Order shall be binding in all respects upon the Debtors, the Debtors' estates, all creditors of (whether known or unknown) and holders of equity interests in either the Debtors, Purchaser and their respective affiliates, successors and assigns, and any and all third parties, notwithstanding any subsequent appointment of any trustee of the Debtors under any chapter of the Bankruptcy Code, as to which trustee(s) such terms and provisions likewise shall be binding.

16. **Release of Interests**. This Sale Order (i) shall be effective as a determination that, on the Closing, all Interests of any kind or nature whatsoever existing as to the Purchased Assets prior to the Closing, have been unconditionally released, discharged and terminated, and that the conveyances described herein have been effected, and (ii) shall be binding upon and shall govern the acts of all entities including without limitation, all filing agents, filing officers, title agents, title companies, recorders of mortgages, recorders of deeds, registrars of deeds,

22

administrative agencies, governmental departments, secretaries of state, federal, state, and local officials, and all other persons and entities who may be required by operation of law, the duties of their office, or contract, to accept, file, register or otherwise record or release any documents or instruments, or who may be required to report or insure any title or state of title in or to any of the Purchased Assets. On the Closing, the Debtors and persons holding an Interest in the Purchased Assets as of the Closing are authorized to execute such documents and take all other actions as may be reasonably necessary to release their Interests in the Purchased Assets, if any, as such Interests may have been recorded or may otherwise exist.

17.   **Release of Avoidance Actions.** Prior to or upon the Closing, each Seller, on behalf of itself and its bankruptcy estate, is hereby authorized to execute and deliver to Purchaser a full and irrevocable release of the Avoidance Actions set forth in Schedule 2.1(i) of the Sale Agreement.

18.   **Retention of Jurisdiction.** This Court retains jurisdiction, pursuant to its statutory powers under 28 U.S.C. § 157(b)(2), to, among other things, interpret, implement, and enforce the terms and provisions of this Sale Order, all amendments thereto and any waivers and consents thereunder, including, but not limited to, retaining jurisdiction to (i) compel delivery of the Purchased Assets to Purchaser; (ii) interpret, implement and enforce the provisions of the Bidding Procedures Order, this Sale Order, and any related order; (iii) protect Purchaser, their affiliates, or shareholders against any Interests against the Debtors or the Purchased Assets of any kind or nature whatsoever, including, without limitation, through the grant of declaratory and injunctive relief determining that the Purchaser, their affiliates, or shareholders and their assets (including the Purchased Assets) are not subject to such Interests and prohibiting persons and entities from asserting such Interests against the Purchaser, their affiliates or shareholders and

their assets (including the Purchased Assets), and (iv) enter any orders under sections 363 and 365 of the Bankruptcy Code with respect to the Purchased Contracts,.

19.     **Fees, Expenses and Other Obligations**.  All obligations of the Debtors under the Sale Agreement and any and all of the documents delivered by the Debtors in connection with the Sale Agreement, including, but not limited to, the Break-Up Fee and the Expense Reimbursement, shall be paid, to the extent due and owing, in the manner provided in the Sale Agreement and the Bidding Procedures Order, without further order of this Court.  All such obligations shall constitute allowed administrative claims in each of the Debtors' Chapter 11 Cases, with first priority administrative expense under section 507(a)(1) of the Bankruptcy Code as set forth in the Bidding Procedures Order.  Until satisfied, all such obligations shall continue to have the protections provided in the Bidding Procedures Order and this Sale Order, and shall not be discharged, modified or otherwise affected by any reorganization plan for the Debtors, except by an express agreement with Purchaser.

20.     **Sale Proceeds**.  Any and all valid and perfected Interests in the Purchased Assets of the Debtors shall attach to any proceeds of such Purchased Assets immediately upon receipt of such proceeds by the Debtors in the order of priority, and with the same validity, force and effect which they now have against such Purchased Assets, subject to any rights, claims and defenses the Debtors, the Debtors' estates or any trustee for any Debtor, as applicable, may possess with respect thereto, in addition to any limitations on the use of such proceeds pursuant to any provision of the Sale Agreement or this Sale Order.  For the avoidance of doubt, the Purchaser is permitted to assume and pay the Trade Payables, upon which event the proceeds of the Transactions shall be reduced dollar for dollar in an amount equal to the Trade Payables, as set forth in the Sale Agreement.

24

21.     **No Material Modifications**. The Sale Agreement and any related agreements, documents or other instruments may be modified, amended or supplemented by the Debtors and the Purchaser, in a writing signed by such parties, and in accordance with the terms thereof, without further order of the Court, provided that any such modification, amendment or supplement does not have a material adverse effect on the Debtors' estates and has been agreed to between the Debtors and the Purchaser. The Debtors' representatives are hereby authorized to execute such modifications, amendments or supplements.

22.     **Subsequent Orders and Plan Provisions**. Nothing contained in any subsequent order of this Court or any court of competent jurisdiction in these or other Chapter 11 Cases (including without limitation, an order authorizing the sale of assets pursuant to sections 363, 365 or any other provision of the Bankruptcy Code or any order entered after any conversion of a Chapter 11 Case of the Debtors to a case under chapter 7 of the Bankruptcy Code) or any chapter 11 plan confirmed in any Debtors' bankruptcy cases or any order confirming any such plan shall nullify, alter, conflict with, or in any manner derogate from the provisions of this Sale Order, and the provisions of this Sale Order shall survive and remain in full force and effect and shall control to the extent of such conflict or derogation.

23.     **Failure to Specify Provisions**. The failure specifically to include any particular provisions of the Sale Agreement in this Sale Order shall not diminish or impair the effectiveness of such provisions, it being the intent of the Court that the Sale Agreement be authorized and approved in its entirety.

24.     **No Stay of Order**. Notwithstanding the provisions of Bankruptcy Rule 6004 and Bankruptcy Rule 6006 or any applicable provisions of the Local Rules, this Sale Order shall not be stayed for fourteen (14) days after the entry hereof, but shall be effective and enforceable

25

immediately upon entry. Time is of the essence in approving the Transactions, and the Debtors and the Purchaser intend to close the Transactions as soon as practicable. Any party objecting to this Sale Order must exercise due diligence in filing an appeal and pursuing a stay within the time prescribed by law and prior to Closing, or risk its appeal will be foreclosed as moot.

25.     **Closing Conditions and Termination Rights**. Nothing in this Sale Order shall modify or waive any closing conditions or termination rights in Articles IV and X of the Sale Agreement, and all such conditions and rights shall remain in full force and effect in accordance with their terms.

26.     **Allocation.** The Purchaser shall pay proceeds of the Transactions to the Debtors, collectively, to be held by PCAA Parent, LLC on behalf of all the Debtors. The allocation provisions of the Sale Agreement shall govern.

Dated: April _____, 2010
        Wilmington, Delaware

                        _____
                        THE HONORABLE MARY F. WALRATH
                        UNITED STATES BANKRUPTCY JUDGE

RLF1 3532793v.1