**IN THE UNITED STATES BANKRUPTCY COURT**
**FOR THE DISTRICT OF DELAWARE**

```
------------------------------------------------------------- x
                                         :
In re:                                   :      Chapter 11
                                         :
                                         :      Case No. 10-10250 (MFW)
PCAA PARENT, LLC, et al.,¹               :
                                         :      (Jointly Administered)
                                         :
                          Debtors.       :
------------------------------------------------------------- x
```

**JOINT CHAPTER 11 PLAN OF PCAA PARENT, LLC**
**AND ITS AFFILIATED DEBTORS AND DEBTORS IN POSSESSION**

**February 16, 2010**

MILBANK, TWEED, HADLEY &
MᶜCLOY LLP

Matthew S. Barr
Michael E. Comerford
One Chase Manhattan Plaza
New York, NY  10005-1413

RICHARDS, LAYTON & FINGER,
P.A.

Mark Collins (Bar No. 2981)
John H. Knight (Bar No. 3848)
Lee Kaufman (Bar No. 4877)
One Rodney Square
920 North King Street
Wilmington, Delaware 19801

*Proposed Attorneys For PCAA Parent, LLC And Its*
*Affiliated Debtors And Debtors In Possession*

---

1    The PCAA entities, along with the last four digits of their respective federal tax identification numbers (as applicable), are as follows:  PCAA Parent, LLC (8827); PCAA Chicago, LLC (0860); PCAA GP, LLC (4237); PCAA LP, LLC (none); PCAA Properties, LLC (0617); PCAA SP, LLC (3465); Airport Parking Management, Inc. (7571); PCAA Missouri, LLC (5702); PCAA SP-OK, LLC (none); PCAA Oakland, LLC (9451); Parking Company of America Airports, LLC (9249); PCA Airports, Ltd. (8348); Parking Company of America Airports Phoenix, LLC (8343); and RCL Properties, LLC (2006).  The mailing address for PCAA is 621 North Governor Printz Boulevard, Essington, PA 19029.

**TABLE OF CONTENTS**

**Page**

ARTICLE I          DEFINED TERMS, RULES OF INTERPRETATION, COMPUTATION OF TIME AND GOVERNING LAW ................................1

ARTICLE II          TREATMENT OF ADMINISTRATIVE EXPENSE CLAIMS AND PRIORITY TAX CLAIMS...............................................................................13

ARTICLE III         CLASSIFICATION AND TREATMENT OF CLAIMS AND EQUITY INTERESTS........................................................................................15

ARTICLE IV        ACCEPTANCE OR REJECTION OF PLAN...................................................20

ARTICLE V          PROVISIONS FOR IMPLEMENTATION OF PLAN...................................20

ARTICLE VI        EXECUTORY CONTRACTS AND UNEXPIRED LEASES.......................26

ARTICLE VII       PROVISIONS REGARDING DISTRIBUTIONS ..........................................27

ARTICLE VIII      PROCEDURES FOR RESOLUTION OF DISPUTED, CONTINGENT AND UNLIQUIDATED CLAIMS.......................................31

ARTICLE IX        CONDITIONS PRECEDENT TO CONFIRMATION AND EFFECTIVE DATE OF THE PLAN ................................................................32

ARTICLE X          RELEASE, EXCULPATION, INJUNCTIVE AND RELATED PROVISIONS ...................................................................................................34

ARTICLE XI        VESTING AND PRESERVATION OF CAUSES OF ACTION ..................36

ARTICLE XII       RETENTION OF JURISDICTION.................................................................37

ARTICLE XIII      MISCELLANEOUS PROVISIONS...............................................................38

# CHAPTER 11 PLAN

Pursuant to title 11 of the United States Code, 11 U.S.C. §§ 101 - 1532, PCAA Parent, LLC, together with its affiliated debtors and debtors in possession in the above-captioned chapter 11 cases, hereby respectfully jointly propose the following Chapter 11 Plan:

## ARTICLE I

## DEFINED TERMS, RULES OF INTERPRETATION, COMPUTATION OF TIME AND GOVERNING LAW

A.     *Rules of Interpretation, Computation of Time and Governing Law*

1.     For purposes herein: (a) whenever from the context it is appropriate, each term, whether stated in the singular or the plural, shall include both the singular and the plural, and pronouns stated in the masculine, feminine or neuter gender shall include the masculine, feminine and the neuter gender; (b) any reference herein to a contract, instrument, release, note or other agreement or document being in a particular form or on particular terms and conditions means that such document shall be substantially in such form or substantially on such terms and conditions; (c) any reference herein to an existing document or exhibit Filed, or to be Filed, shall mean such document or exhibit, as it may have been or may be amended, modified or supplemented; (d) unless otherwise specified, all references herein to articles, exhibits and schedules are references to the respective Articles, Exhibits or Schedules hereof or hereto; (e) the words "herein," "hereof" and "hereto" refer to the Plan in its entirety rather than to a particular portion of the Plan; (f) captions and headings to Articles and Sections are inserted for convenience of reference only and are not intended to be a part of or to affect the interpretation hereof; (g) the rules of construction set forth in Section 102 of the Bankruptcy Code shall apply; and (h) any term used in capitalized form herein that is not otherwise defined but that is used in the Bankruptcy Code or the Bankruptcy Rules shall have the meaning assigned to such term in the Bankruptcy Code or the Bankruptcy Rules, as the case may be.

2.     In computing any period of time prescribed or allowed hereby, the provisions of Bankruptcy Rule 9006(a) shall apply.

3.     Except to the extent that the Bankruptcy Code or Bankruptcy Rules apply, and subject to the express provisions of any contract, instrument, release, note or other agreement or document entered into in connection herewith, the laws of the State of New York, giving effect to the conflicts of laws' principles thereof, shall govern the construction of the Plan and any agreements, documents, and instruments executed in connection with the Plan, including, without limitation, any rule of law or procedure supplied by federal law as interpreted under the decisions in the State of New York (including the Bankruptcy Code and the Bankruptcy Rules).

B.    *Defined Terms*

Unless the context otherwise requires, the following terms shall have the following meanings when used in capitalized form herein:

1.    "*Administrative Agent*" means ING, in its capacity as administrative agent for the Term Loan Lenders.

2.    "*Administrative Expense Claim*" means any right to payment constituting a cost or expense of administration of the Chapter 11 Cases pursuant to Sections 503(b) and 507(a)(2) or 507(b) of the Bankruptcy Code, including but not limited to: (a) the actual and necessary costs and expenses incurred after the Petition Date of preserving the Estates and operating the Debtors' business; (b) compensation for legal, financial advisory, accounting and other professional services, and reimbursement of expenses awarded or allowed pursuant to Sections 327, 328, 330, 331, 503 or 1103 of the Bankruptcy Code, including Creditors' Committee Members' Expenses; (c) any indebtedness or obligations incurred or assumed by the Debtors in connection with the conduct of their business; (d) DIP Financing Claims; and (e) all fees and charges assessed against the Estates pursuant to Section 1930 of chapter 123 of title 28 of the United States Code; *provided*, *however*, that the term Administrative Expense Claim does not include any Assumed Liabilities under the APA.

3.    "*Administrative Expense Bar Date*" has the meaning set forth in Article II.A.1 of the Plan.

4.    "*Affiliate*" has the meaning set forth in Section 101(2) of the Bankruptcy Code.

5.    "*Allowed*" means a Claim allowable pursuant to Section 502 of the Bankruptcy Code or an Administrative Expense Claim allowable pursuant to Section 503 of the Bankruptcy Code: (a) for which a Proof of Claim or request for payment of administrative expense was filed on or before the applicable Bar Date established by the Bankruptcy Court or by other order of the Bankruptcy Court and as to which no objection or other challenge to allowance thereof has been Filed, or if an objection or challenge has been timely Filed, such Claim or Administrative Expense Claim is allowed by a Final Order; (b) for which a Proof of Claim or request for administrative expense is not filed and that has been listed in the Schedules and is not listed as disputed, contingent or unliquidated; or (c) that is deemed allowed under the Plan or by prior order of the Bankruptcy Court; *provided, however,* that "Allowed Claim" shall not include any Claim subject to disallowance in accordance with Section 502(d) of the Bankruptcy Code.

6.    "*APA*" means Asset Purchase Agreement.

7.    "*Asset Purchase Agreement*" means an agreement for the purchase of the Purchased Assets and any ancillary documents referred to therein, as the case may be, as approved by the Bankruptcy Court in the Sale Order.

8.    "*Assumed Liabilities*" means those liabilities of the Debtors assumed by the Purchaser pursuant to the APA.

9.    "*Auction*" means the auction conducted in accordance with the BPO.

10.     "*Bankruptcy Clerk*" means Clerk of the United States Bankruptcy Court for the District of Delaware, 824 North Market Street, 3rd Floor, Wilmington, Delaware 19801.

11.     "*Bankruptcy Code*" means title 11 of the United States Code, as amended from time to time, as in effect on the Confirmation Date, as applicable to the Chapter 11 Cases.

12.     "*Bankruptcy Court*" means the United States Bankruptcy Court for the District of Delaware, or any other court having jurisdiction over the Chapter 11 Cases.

13.     "*Bankruptcy Rules*" means the Federal Rules of Bankruptcy Procedure, as amended from time to time, as applicable to the Chapter 11 Cases, promulgated pursuant to 28 U.S.C. § 2075.

14.     "*Bar Date*" means, as applicable, the (i) Claims Bar Date, (ii) Governmental Unit Bar Date, or (iii) Administrative Expense Bar Date.

15.     "*Bar Date Order*" means any Final Order of the Bankruptcy Court in the Chapter 11 Cases establishing the Claims Bar Date and Governmental Unit Bar Date in the Chapter 11 Cases.

16.     "*Business Day*" means any day, other than a Saturday, Sunday, "legal holiday" (as defined in Bankruptcy Rule 9006(a)) or any other day on which commercial banks in New York are required or are authorized to close by law or executive order.

17.     "*BPO*" means any Final Order approving bidding and sale procedures for the Sale of the Purchased Assets as proposed by the Motion For (I) Order (A) Establishing Bidding Procedures Relating To Sale Of Substantially All Of PCAA's Assets, (B) Approving Stalking Horse Protections, (C) Authorizing And Scheduling Date And Time For Auction, (D) Scheduling Date And Time For Hearing On Sale Order, (E) Approving Assignment And Cure Procedures, And (F) Setting Objection Deadlines And (II) Order Approving Sale Of Substantially All Of PCAA's Assets, filed on January 28, 2010 (Docket No. 22).

18.     "*Cash*" means lawful currency of the United States of America.

19.     "*Causes of Action*" means, without limitation, all Claims, actions, causes of action, choses in action, suits, debts, dues, damages, judgments, third-party claims, counterclaims and crossclaims (including, but not limited to, all claims arising under state, federal or other non-bankruptcy law, and any avoidance, recovery, subordination or other actions against Insiders and/or any other Persons or Entities under the Bankruptcy Code, including Sections 506, 510, 542, 543, 544, 545, 547, 548, 549, 550, 551, and 553 of the Bankruptcy Code or otherwise) of the Debtors or any Debtor, the Estates or any Estate (including, but not limited to, those actions described in Article XI hereof) that are or may be pending or existing on the Effective Date, or which are based on any facts or circumstances occurring on or before the Effective Date, against any Person or Entity, based in law or equity, including, but not limited to, under the Bankruptcy Code, whether direct, indirect, known or unknown, derivative, or otherwise and whether asserted or unasserted as of the Effective Date; *provided*, *however*, that Causes of Action in no event shall include the Excluded Actions.

20.     "*Chicago Collateral*" means those certain assets of PCAA Chicago, LLC and the proceeds thereof which secure the Chicago Facility, including all obligations thereunder, as set forth in the Chicago Loan Documents.

21.     "*Chicago Lender*" means Wells Fargo Bank, N.A., as trustee for the registered holders of the GMAC Commercial Mortgage Securities, Inc., Mortgage Pass-Through Certificates, Series 2004-C1, its successors and/or assigns, which was assigned all of GMAC Commercial Mortgage Bank's interests as the original lender under the Chicago Facility.

22.     "*Chicago Loan Agreement*" or "*Chicago Facility*" means that certain loan agreement, dated December 22, 2003 (as amended, restated, or supplemented), among PCAA Chicago, LLC, as borrower, PCAA Parent, LLC, as guarantor under that certain guarantee, dated December 22, 2003, and GMAC Commercial Mortgage Bank, as original lender, for the provision of a loan in the original principal amount of $4,750,000, as evidenced by a certain Promissory Note, dated December 22, 2003.

23.     "*Chicago Loan Documents*" means the Chicago Facility together with all related security agreements, notes, guarantees, pledge agreements, mortgages, fixture filings, transmitting utility filings, deeds of trust, financing statements, instruments, agreements, documents, assignments (including assignments of leases and rents), account control agreements, or other security documents, as each of the foregoing may be amended, modified or supplemented.

24.     "*Chicago Secured Claim*" means a Secured Claim against PCAA Chicago, LLC arising pursuant to the Chicago Loan Documents.

25.     "*CFI*" means Capmark Finance Inc.

26.     "*Chapter 11 Cases*" means the chapter 11 cases styled *In re PCAA Parent, LLC, et al.*, Case Number 10-10250 (MFW) (Jointly Administered), pending in the Bankruptcy Court.

27.     "*Claim*" means a claim, as defined in Section 101(5) of the Bankruptcy Code, against a Debtor.

28.     "*Claims Agent*" means Epiq Bankruptcy Solutions, LLC; the Claims Agent is located at (i) via first class mail, PCAA Parent, LLC Claims Processing Center c/o Epiq Bankruptcy Solutions, LLC, FDR Station, P.O. Box 5286, New York, NY 10150-5286, (646) 282-2400, or (ii) via hand delivery or overnight mail, PCAA Parent, LLC Claims Processing Center c/o Epiq Bankruptcy Solutions, LLC, 757 Third Avenue, 3rd Floor, New York, NY 10017, (646) 282-2400.

29.     "*Claims Bar Date*" means the date established by the Bankruptcy Court in any Bar Date Order by which Holders of Claims other than Governmental Unit Claims and Administrative Expense Claims are required to File Proofs of Claim on account of such Claims.

30.     "*Claims Objection Deadline*" means 180 days after the Effective Date, or such later date as may be ordered by the Bankruptcy Court.

31. "*Class*" means a category of Holders of Claims or Equity Interests as set forth in Article III herein.

32. "*Closing Date*" has the meaning set forth in Article V.A of the Plan.

33. "*Collateral*" means any property or interest in property of the Estates of any of the Debtors that is subject to an unavoidable Lien to secure the payment or performance of a Claim.

34. "*Confirmation*" means the entry on the docket by the Clerk of the Bankruptcy Court of the Confirmation Order, subject to all conditions specified in Article IX.A herein having been satisfied or waived pursuant to Article IX.C herein.

35. "*Confirmation Date*" means the date upon which the Confirmation Order is entered by the Bankruptcy Court on its docket, within the meaning of Bankruptcy Rules 5003 and 9021.

36. "*Confirmation Hearing*" means the hearing or hearings at which the Bankruptcy Court considers entry of the Confirmation Order.

37. "*Confirmation Order*" means the order of the Bankruptcy Court confirming the Plan pursuant to Section 1129 of the Bankruptcy Code.

38. "*Creditor*" means any Holder of a Claim.

39. "*Creditors' Committee*" means the Official Committee of Unsecured Creditors appointed by the United States Trustee in these Chapter 11 Cases on February 9, 2010.

40. "*Creditors' Committee Members*" means the current and any former members of the Creditors' Committee, if any, each in their capacity as a member of the Creditors' Committee.

41. "*Creditors' Committee Members' Expenses*" means any Administrative Expense Claim of a Creditors' Committee Member under Section 503(b)(3)(F) of the Bankruptcy Code.

42. "*Debtors*" means PCAA Parent, LLC; PCAA Chicago, LLC; PCAA GP, LLC; PCAA LP, LLC; PCAA Properties, LLC; PCAA SP, LLC; Airport Parking Management, Inc.; PCAA Missouri, LLC; PCAA SP-OK, LLC; PCAA Oakland, LLC; Parking Company of America Airports, LLC; PCA Airports, Ltd.; Parking Company of America Airports Phoenix, LLC; and RCL Properties, LLC.

43. "*Delaware Local Rules*" means the Local Rules of Bankruptcy Practice and Procedure of the United States Bankruptcy Court for the District of Delaware, as amended from time to time.

44. "*DIP Agent*" means ING, as administrative agent for the DIP Lenders under the DIP Credit Agreement.

45.     "*DIP Lenders*" means the lenders under the DIP Credit Agreement.

46.     "*DIP Financing Claims*" means all Claims held by the DIP Agent and the DIP Lenders pursuant to the DIP Credit Agreement and the Final DIP Order.

47.     "*DIP Credit Agreement*" means that certain Debtor-In-Possession Credit Agreement (as amended in accordance with the terms thereof and the terms of the Final DIP Order), by and among PCAA Parent, LLC, as borrower, and the other Debtors (excluding PCAA Parent, LLC), as guarantors, the DIP Agent, and the DIP Lenders, approved by the Bankruptcy Court pursuant to the Final DIP Order.

48.     "*Disclosure Statement*" means the Disclosure Statement for the Plan as it may be amended, supplemented, or modified from time to time, that is prepared and distributed in accordance with Sections 1125, 1126(b) and/or 1145 of the Bankruptcy Code, Bankruptcy Rule 3018 and/or other applicable law and approved by the Bankruptcy Court in the Disclosure Statement order.

49.     "*Disputed*" means, with respect to any Claim or Equity Interest, as of the date of determination, any Claim or Equity Interest: (a) listed on the Schedules as unliquidated, disputed or contingent, unless and until it is Allowed pursuant to an order that is a Final Order; (b) as to which any Debtor or any other party in interest has Filed a timely objection or request for estimation in accordance with the Bankruptcy Code and the Bankruptcy Rules, which objection or request for estimation has not been withdrawn with prejudice or determined by a Final Order; (c) as to which the deadline for filing objections has not passed (whether or not an objection has been Filed), unless and to the extent such Claim or Equity Interest has been Allowed pursuant to an order that is a Final Order; or (d) that is otherwise disputed by any of the Debtors, the Liquidating Trustee or any other party in interest, or is subject to any right of setoff or recoupment, or the Holder thereof is subject to any Claim or Cause of Action, in accordance with applicable law, which dispute, right of setoff or recoupment, Claim or Cause of Action, has not been withdrawn or determined in favor of such Holder by a Final Order.

50.     "*Effective Date*" means the date which is the first Business Day after the Confirmation Date on which: (a) no stay of the Confirmation Order is in effect, and (b) all conditions specified in Article IX.B herein have been (x) satisfied or (y) waived pursuant to Article IX.C herein.

51.     "*Employee Incentive Plan*" means any sale-related incentive plan approved by the Bankruptcy Court pursuant to any Employee Incentive Plan Order.

52.     "*Employee Incentive Plan Order*" means any order, pursuant to 11 U.S.C. §§ 363(b) and 105, authorizing and approving the Debtors' sale-related management incentive plan and payments thereunder entered by the Bankruptcy Court in the Chapter 11 Cases.

53.     "*Employee Incentive Plan Payments*" means those cash payments approved pursuant to the Employee Incentive Plan Order and funded with (i) financing under the DIP Credit Agreement or (ii) Sale Proceeds that would otherwise be distributed to the Term Loan Lenders.

54. "*Employee Priority Claim*" means any Claim under Sections 507(a)(4) or 507(a)(5) of the Bankruptcy Code, which shall be treated as a Priority-Non Tax Claim for purposes of this Plan.

55. "*Entity*" means an entity as defined in Section 101(15) of the Bankruptcy Code.

56. "*Equity Interest*" means any equity interest in any of the Debtors, including, but not limited to, any issued, unissued, authorized or outstanding shares of stock together with any warrants, options or contract rights to purchase or acquire such interests at any time.

57. "*ERISA*" means the Employee Retirement Income Security Act of 1974, 29 U.S.C. §§ 1001-1461, as amended.

58. "*Estate*" means the estate of each of the Debtors created pursuant to Section 541 of the Bankruptcy Code upon the commencement of the Chapter 11 Cases for each Debtor.

59. "*Excluded Actions*" means only those Causes of Action (i) against those certain parties that Purchaser(s) intends to continue to do business with in connection with the closing of one or more APAs, which parties shall be set forth on a schedule reasonably acceptable to the Term Loan Lenders and Filed not less than five (5) Business Days prior to the Confirmation Hearing and delivered to the Liquidating Trustee, (ii) released under the Plan, and (iii) against a party released under the Plan or otherwise released pursuant to the Plan.

60. "*File*" or "*Filed*" means file or filed with the Bankruptcy Court in the Chapter 11 Cases.

61. "*Final Decree*" means the decree contemplated under Bankruptcy Rule 3022.

62. "*Final DIP Order*" means a Final Order of the Bankruptcy Court in the Chapter 11 Cases approving the DIP Credit Agreement and granting related relief.

63. "*Final Order*" means an order of the Bankruptcy Court: (i) as to which the time to appeal, petition for certiorari or move for reargument, reconsideration or rehearing has expired and as to which no appeal, petition for certiorari or other proceeding for reargument, reconsideration or rehearing is pending; or (ii) if an appeal, writ of certiorari, reargument or rehearing thereof has been sought, such order has been affirmed by the highest court to which such order was appealed or from which certiorari was sought, reargument, reconsideration or rehearing has been denied or resulted in no modification of such order, and the time to take any further appeal, petition for certiorari or move for reargument, reconsideration or rehearing has expired; *provided*, *however*, that the possibility of a motion pursuant to Rule 59 or 60 of the Federal Rules of Civil Procedure or any analogous Bankruptcy Rule being Filed with respect to such order shall not cause such order to be deemed a non-Final Order.

64. "*General Unsecured Claim*" means any Claim that is not an Administrative Expense Claim, DIP Financing Claim, Priority Claim, Prepetition Lender Claim, Other Secured Claim, or Intercompany Claim.

65. "*Governmental Unit*" has the meaning ascribed to it in Section 101(27) of the Bankruptcy Code.

66. "*Governmental Unit Bar Date*" means the date established by the Bankruptcy Court in any Bar Date Order by which Holders of Governmental Unit Claims are required to File Proofs of Claim on account of such Governmental Unit Claims in accordance with the Bar Date Order.

67. "*Governmental Unit Claim*" means any Claim the Holder of which is a Governmental Unit.

68. "*Holder*" means the Person or Entity holding the beneficial interest in a Claim, Equity Interest, or Liquidating Trust Interest.

69. "*Impaired*" means, with respect to any Class of Claims or Equity Interests, a Claim or Equity Interest that is impaired within the meaning of Section 1124 of the Bankruptcy Code.

70. "*Impaired Claim*" or "*Impaired Equity Interest*" means a Claim or Equity Interest, as the case may be, classified in an Impaired Class.

71. "*Insider*" means an insider as defined in Section 101(31) of the Bankruptcy Code.

72. "*Intercompany Claim*" means any Claim held by any direct or indirect subsidiary of any Debtor against any Debtor, or by any Debtor against any other Debtor.

73. "*Intercompany Interest*" means any Equity Interest of a Debtor or any subsidiary of a Debtor that is owned by any Debtor or any subsidiary of any Debtor as of the Record Date.

74. "*ING*" means ING Real Estate Finance (USA) LLC.

75. "*IRS*" means the Internal Revenue Service.

76. "*Lien*" means a lien as defined in Section 101(37) of the Bankruptcy Code.

77. "*Liquidating Trust*" means the liquidating trust established on the Effective Date, in accordance with the Plan and Liquidating Trust Agreement, for the benefit of the Liquidating Trust Beneficiaries to which the Liquidating Trust Assets will be transferred and liquidated in accordance with the terms of this Plan and the Liquidating Trust Agreement; the Liquidating Trust shall conduct no business and shall qualify as a liquidating trust pursuant to Treasury Regulations §301.7701-4(d).

78. "*Liquidating Trust Agreement*" means the trust agreement between the Debtors and the Liquidating Trustee that, among other things, creates and establishes the Liquidating Trust, describes the powers, duties and responsibilities of the Liquidating Trustee, and provides for the liquidation and distribution of proceeds of the Liquidating Trust Assets, which trust agreement shall be substantially in the form filed in the Plan Supplement.

79.　"*Liquidating Trust Assets*" means [the Liquidating Trust Funding and] all assets of the Debtors and the Estates as of the Effective Date not sold pursuant to any APA, including, but not limited to the Remaining Assets, the Causes of Action, and all rights of setoff and recoupment and other defenses that the Debtors and the Estates may have with respect to any Claim.

80.　"*Liquidating Trust Beneficiaries*" means each Holder of a Liquidating Trust Interest.

81.　"*Liquidating Trust Funding*" has the meaning set forth in Article V.C.2 of the Plan.

82.　"*Liquidating Trustee*" means the Person appointed as trustee for the Liquidating Trust by the Term Loan Lenders unless such Term Loan Lenders are paid off in full, in Cash from the Sale Proceeds of their Term Loan Collateral, in which case the Liquidating Trustee shall be appointed by the Holders of Liquidating Trust Interests in accordance with the Liquidating Trust Agreement, or as otherwise determined by the Bankruptcy Court.

83.　"*Liquidating Trust Interest*" has the meaning set forth in the Liquidating Trust Agreement.

84.　"*Official Bankruptcy Forms*" means the Official and Procedural Bankruptcy Forms, prescribed by the Judicial Conference of the United States, in accordance with Bankruptcy Rule 9009.

85.　"*Other Administrative Expense Claim*" means any Administrative Expense Claim other than Professional Fee Claims.

86.　"*Other Secured Claim*" means any Secured Claim other than a Prepetition Lender Claim.

87.　"*Permissible Investments*" has the meaning set forth in Article V.C.6 of the Plan.

88.　"*Person*" means a person as defined in Section 101(41) of the Bankruptcy Code.

89.　"*Petition Date*" means January 28, 2010.

90.　"*Plan*" means this chapter 11 plan of liquidation, including the Plan Supplement and all exhibits, supplements, appendices, and schedules hereto, either in its present form or as it may be altered, amended, modified or supplemented from time to time in accordance with the terms hereof, the Bankruptcy Code and the Bankruptcy Rules.

91.　"*Plan Supplement*" means the compilation of documents and form of documents, schedules and exhibits to be Filed on or before seven (7) days prior to the Voting Deadline and which may be amended from time to time until Confirmation.

92.　"*Prepetition Agents*" means the Administrative Agent and any other agents of the Prepetition Lenders under the Prepetition Facilities.

93. "*Prepetition Facilities*" means the Term Loan Facility, the Chicago Facility, and the RCL Facility.

94. "*Prepetition Lenders*" means, collectively, the Term Loan Lenders, Chicago Lender, and RCL Lender.

95. "*Prepetition Lender Claim*" means any Secured Claim that is a Term Loan Secured Claim, a Chicago Secured Claim, or a RCL Secured Claim.

96. "*Priority Claim*" means any Priority Non-Tax Claim or Priority Tax Claim.

97. "*Priority Non-Tax Claim*" means a Claim accorded priority in right of payment under Section 507(a) of the Bankruptcy Code, other than a Priority Tax Claim, or Administrative Expense Claim.

98. "*Priority Tax Claim*" means an unsecured Claim of a Governmental Unit of the kind specified in Sections 502(i) or 507(a)(8) of the Bankruptcy Code.

99. "*Professional*" means a Person or Entity employed pursuant to a Final Order in accordance with Sections 327 or 1103 of the Bankruptcy Code and to be compensated for services rendered prior to the Confirmation Date, pursuant to Sections 327, 328, 330, 331, 503 or 1103 of the Bankruptcy Code, or for which compensation and reimbursement has been allowed by the Bankruptcy Court pursuant to Section 503(b)(4) of the Bankruptcy Code.

100. "*Professional Fee Claim*" means any Claim for fees and expenses (including, but not limited to, hourly, transaction, and success fees) for services rendered by Professionals in the Chapter 11 Cases, including Creditors' Committee Members' Expenses.

101. "*Proof of Claim*" has the meaning ascribed to it in Bankruptcy Rule 3001.

102. "*Pro Rata*" means the proportion that an Allowed Claim in a particular Class bears to the aggregate amount of Allowed Claims in such Class.

103. "*Purchase Price*" means that certain amount of Cash and any other related payments provided by the Purchaser to the Debtors in connection with the purchase of the Purchased Assets as set forth in the APA.

104. "*Purchased Assets*" means certain assets of the Debtors identified in the APA which are to be sold to the Purchaser thereunder.

105. "*Purchaser*" means the purchaser of the Purchased Assets or any of the Term Loan Lenders in the event of a credit bid thereby at the Auction, as the case may be, pursuant to the APA and the Sale Order.

106. "*RCL Collateral*" means those certain assets of RCL Properties, LLC and the proceeds thereof which secure the RCL Facility, including all obligations thereunder, as set forth in the RCL Loan Documents.

107.  "*RCL Loan Agreement*" or "*RCL Facility*" means that certain loan agreement, dated April 30, 2004 (as amended, restated, or supplemented), among RCL Properties, LLC, as borrower, certain original guarantors, and GMAC Commercial Mortgage Bank, as original lender, for the provision of a loan in the original principal amount of $2,300,000, as evidenced by a certain Promissory Note, dated April 30, 2004.

108.  "*RCL Lender*" means LaSalle Bank National Association, as trustee for the registered holders of the GMAC Commercial Mortgage Securities, Inc. Commercial Mortgage Pass-Through Certificates, Series 2004-C2, its successors and/or assigns, which was assigned all of GMAC Commercial Mortgage Bank's interests as the original lender under the RCL Facility.

109.  "*RCL Loan Documents*" means the RCL Facility together with all related security agreements, notes, guarantees, pledge agreements, mortgages, fixture filings, transmitting utility filings, deeds of trust, financing statements, instruments, agreements, documents, assignments (including assignments of leases and rents), account control agreements, or other security documents, as each of the foregoing may be amended, modified or supplemented.

110.  "*RCL Secured Claim*" means a Secured Claim against RCL Properties, LLC arising pursuant to the RCL Loan Documents.

111.  "*Record Date*" means the date as of which the identity of Holders of Claims or Interests is set for purposes of determining the identity of Entities entitled to receive a ballot(s) and vote on the Plan.  Pursuant to Bankruptcy Rules 3017(d) and 3018(a), this date is the date of entry of an order by the Bankruptcy Court approving the Disclosure Statement or such other date as the Bankruptcy Court may set.

112.  "*Releasee*" has the meaning set forth in Article X.A of the Plan.

113.  "*Remaining Assets*" means the proceeds or rights in any remaining assets of the Estates following any Sales or otherwise, excluding the Excluded Actions.

114.  "*Sale*" means the sale of the Purchased Assets to the Purchaser pursuant to the APA approved under the Sale Order.

115.  "*Sale Proceeds*" means the net proceeds of the Sale.

116.  "*Sale Order*" means an order of the Bankruptcy Court in the Chapter 11 Cases approving the Sale of the Purchased Assets to the Purchaser or Purchasers.

117.  "*Schedules*" mean the schedules of assets and liabilities and the statement of financial affairs that were filed by each of the Debtors in accordance with Section 521 of the Bankruptcy Code, the Official Bankruptcy Forms and the Bankruptcy Rules, as they may be amended and supplemented from time to time.

118.  "*Secured Claim*" means (a) any Claim against a Debtor to the extent reflected in the Schedules or upon a Proof of Claim as a Secured Claim, that is secured by a Lien on Collateral of such Debtor, which Lien is valid, perfected and enforceable under applicable law or by reason of a Final Order, or that is subject to setoff pursuant to Section 553 of the Bankruptcy

Code, to the extent of the value of such Collateral as determined pursuant to Section 506(a) of the Bankruptcy Code, or (b) any Claim Allowed under this Plan as a Secured Claim.

119.    "*Term Loan Agreement*" means that certain loan agreement, dated as of September 1, 2006, among the Term Loan Borrowers, PCAA Parent, LLC, as guarantor, and the Term Loan Lenders, providing the Term Loan Borrowers with a loan in the aggregate principal amount of up to $195 million, as evidenced by certain Term Notes.

120.    "*Term Loan Borrowers*" means, collectively, Parking Company of America Airports, LLC, Parking Company of America Airports Phoenix, LLC, PCAA SP, LLC and PCA Airports, Ltd., as borrowers under the Term Loan Agreement.

121.    "*Term Loan Collateral*" means those certain assets of the Term Loan Borrowers and the proceeds thereof which secure the Term Loan Obligations as set forth in the Term Loan Documents.

122.    "*Term Loan Documents*" means the Term Loan Agreement together with the Term Notes, and all related security agreements, notes, guarantees, pledge agreements, mortgages, fixture filings, transmitting utility filings, deeds of trust, financing statements, instruments, agreements, documents, assignments (including assignments of leases and rents), account control agreements, or other security documents, as each of the foregoing may be amended, modified or supplemented.

123.    "*Term Loan Facility*" means that certain term loan facility provided by the Term Loan Lenders to the Term Loan Borrowers, and guaranteed by PCAA Parent LLC, pursuant to the Term Loan Documents.

124.    "*Term Loan Guaranty*" means that certain guaranty, dated as of September 1, 2006, made by PCAA Parent LLC in respect of the Term Loan Obligations

125.    "*Term Loan Guaranty Claim*" has the meaning set forth in Article III.C.6 of the Plan.

126.    "*Term Loan Lender Deficiency Claim*" has the meaning set forth in Article III.C.6 of the Plan.

127.    "*Term Loan Lenders*" means, collectively, Dekabank Deutsche Girozentrale, Deutsche Hypothekenbank AG, and ING, in their capacity as holders of the Term Notes.

128.    "*Term Loan Obligations*" means all obligations of the Term Loan Borrowers under the Term Loan Documents, including, without limitation, in respect of principal, interest, fees and expenses owing thereunder

129.    "*Term Loan Secured Claim*" means a Secured Claim against the Term Loan Borrowers arising pursuant to the Term Loan Documents.

130.     "*Term Notes*" means those certain promissory notes executed by the Term Loan Borrowers evidencing the Term Loan Obligations, and defined in the Term Loan Agreement as "Note A-1," "Note A-2," "Note A-3," "Note B-1," and "Note B-2."

131.     "*Treasury Regulations*" means title 26 of the Code of Federal Regulations.

132.     "*Unimpaired*" means, with respect to a Class of Claims, a Claim that is not impaired within the meaning of Section 1124 of the Bankruptcy Code.

133.     "*Voting Agent*" means Epiq Bankruptcy Solutions, LLC; the Voting Agent can be contacted at (i) via first class mail, PCAA Parent, LLC Ballot Processing Center c/o Epiq Bankruptcy Solutions, LLC, FDR Station, P.O. Box 5014, New York, NY 10150-5014, (646) 282-2400, or (ii) via hand delivery or overnight mail, PCAA Parent, LLC Ballot Processing Center c/o Epiq Bankruptcy Solutions, LLC, 757 Third Avenue, 3rd Floor, New York, NY 10017, (646) 282-2400.

134.     "*Voting Deadline*" means the deadline to vote on the Plan as set by the Bankruptcy Court.

## ARTICLE II

## TREATMENT OF ADMINISTRATIVE
## EXPENSE CLAIMS AND PRIORITY TAX CLAIMS

A.     *Administrative Expense Claims*

1.     Administrative Expense Bar Dates

All Other Administrative Expense Claims (other than DIP Financing Claims) that are not otherwise paid in the ordinary course of the Debtors' business shall be filed with the Bankruptcy Court not later than ten (10) days before the date scheduled for the Confirmation Hearing (the "*Administrative Expense Bar Date*"), and objections (if any) to such Other Administrative Expense Claim shall be filed no later than forty-five (45) days after the Effective Date. Any Holder of an Other Administrative Expense Claim who fails to file a timely request for the payment of an Other Administrative Expense Claim as provided in this paragraph: (a) shall be forever barred, estopped and enjoined from asserting such Other Administrative Expense Claim against each of the Debtors, any Purchaser or the Liquidating Trust Assets (or filing a request for the allowance thereof), and each of the Debtors, their property, and the Liquidating Trust Assets shall be forever discharged from any and all indebtedness or liability with respect to such Other Administrative Expense Claim; and (b) such Holder shall not be permitted to participate in any distribution under the Plan on account of such Other Administrative Expense Claim.

2.     Treatment of Other Administrative Expense Claims

Each Holder of an Allowed Other Administrative Expense Claim shall, in full and final satisfaction of such Allowed Other Administrative Expense Claim, be paid either (i) in Cash, in full, from the Sale Proceeds on, or as soon as practicable following, the later of the (x) Effective Date and (y) date such claim becomes due and payable in the ordinary course of business, or

(ii) on such other terms and conditions as may be agreed between the Holder of such Claim, on the one hand, and the Debtors or the Liquidating Trustee (as the case may be), on the other hand.

For the avoidance of doubt, each Holder of an Allowed DIP Financing Claim shall, in full and final satisfaction of such Allowed DIP Financing Claim, be paid in full, in Cash, from the Sale Proceeds on the earlier of the closing of the Sale or the Effective Date, unless the Holder consents to other treatment, and all commitments under the DIP Facility Agreement shall be cancelled. The DIP Financing Claims shall be paid, first, from the proceeds of First Lien Collateral (as defined in the DIP Credit Agreement) and, thereafter, from the proceeds of Second Lien Collateral (as defined in the DIP Credit Agreement). Notwithstanding anything herein to the contrary, the Liens and security interests securing the DIP Financing Claims shall continue in full force and effect until such time as the Allowed DIP Financing Claims have been paid in full and in Cash, after which such Liens and security interests shall be deemed cancelled, released, terminated, and extinguished, in each case without further notice to or order of the Bankruptcy Court, act or action under applicable law, regulation, order or rule or the vote, consent, authorization or approval of any Person.

3.      Treatment of Professional Fee Claims

Notwithstanding anything herein to the contrary, all entities seeking awards by the Bankruptcy Court of Professional Fee Claims for compensation for services rendered or reimbursement of expenses incurred prior to the Effective Date shall (a) file, on or before the date that is thirty (30) days after the Effective Date their respective applications for final allowances of compensation for services rendered and reimbursement of expenses incurred and (b) be paid in full by the Liquidating Trustee, in Cash, in such amounts as are Allowed by the Bankruptcy Court, within five (5) Business Days of entry of such order. The Debtors are authorized to pay compensation for services rendered or reimbursement of expenses incurred after the Confirmation Date in the ordinary course of business and without the need for Bankruptcy Court approval.

B.      *Priority Tax Claims*

1.      Treatment of Priority Tax Claims

Each Holder of an Allowed Priority Tax Claim shall, in full and final satisfaction of such Allowed Priority Tax Claim, be paid in full through deferred Cash payments from the Sale Proceeds in an aggregate principal amount equal to the amount of the Allowed Claim plus interest on the unpaid portion at the rate of 4% per annum from the Effective Date through the date of payment thereof (which may be no later than five (5) years after the date of the order for relief).

# ARTICLE III

## CLASSIFICATION AND TREATMENT OF
## CLAIMS AND EQUITY INTERESTS

A.    *Non-Substantive Consolidation*

This Plan is a joint plan that does not provide for substantive consolidation of the Debtors' Estates, and on the Effective Date, the Debtors' Estates shall not be deemed to be substantively consolidated for purposes thereof.  Except as specifically set forth herein, nothing in the Plan or Disclosure Statement shall constitute or be deemed to constitute an admission that any one of the Debtors is subject to or liable for any claim against any other Debtor.

Additionally, claimants holding Claims against multiple Debtors, to the extent Allowed in each Debtor's case, will be treated as a separate claim against each Debtor's Estate; *provided*, *however*, that no Holder shall be entitled to receive more than payment in full of its Allowed Claim (plus postpetition interest, if and only to the extent provided herein), and such Claims will be administered and treated in the manner provided for herein by the Debtors or otherwise.

B.    *Summary*

The categories listed below classify Claims against and Equity Interests in each of the Debtors for all purposes, including voting, confirmation and distribution pursuant hereto and pursuant to Sections 1122 and 1123(a)(l) of the Bankruptcy Code.  A Claim or Equity Interest shall be deemed classified in a particular Class only to the extent that the Claim or Equity Interest qualifies within the description of that Class and shall be deemed classified in a different Class to the extent that any remainder of such Claim or Equity Interest qualifies within the description of such different Class.  A Claim or Equity Interest is in a particular Class only to the extent that such Claim or Equity Interest is Allowed in that Class and has not been paid or otherwise satisfied prior to the Effective Date.

### Summary of Classification and Treatment of Claims and Equity Interests

| Class | Claim | Status | Voting Right |
|---|---|---|---|
| 1 | Priority Non-Tax Claims | Unimpaired | Deemed to accept |
| 2 | Term Loan Secured Claims | Impaired | Entitled to vote |
| 3 | Chicago Secured Claims | Unimpaired | Deemed to accept |
| 4 | RCL Secured Claims | Unimpaired | Deemed to accept |
| 5 | Other Secured Claims | Unimpaired | Deemed to accept |
| 6 – 19 | General Unsecured Claims | Impaired | Entitled to vote |
| 20 | Equity Interests | Impaired | Entitled to vote |
| 21 | Intercompany Claims | Impaired | Deemed to reject |

C. *Classification, Treatment and Voting*

1. **Class 1 – Priority Non-Tax Claims**

   (a) *Classification*: Class 1 comprises the Priority Non-Tax Claims against the Debtors.

   (b) *Treatment*: The Plan will not alter any of the legal, equitable and contractual rights of the Holders of Allowed Priority Non-Tax Claims. Each Holder of an Allowed Priority Non-Tax Claim (including, as applicable, Allowed Employee Priority Claims) shall, in full and final satisfaction of such Priority Non-Tax Claim, be paid in full, in Cash, from the Sale Proceeds, on, or as soon as practicable following, the Effective Date, unless the Holder of such Allowed Priority Non-Tax Claim consents to other treatment.

   (c) *Voting*: Class 1 is Unimpaired and the Holders of Class 1 Claims are conclusively deemed to have accepted the Plan pursuant to Section 1126(f) of the Bankruptcy Code. Therefore, the Holders of Claims in Class 1 are not entitled to vote to accept or reject the Plan.

2. **Class 2 – Term Loan Secured Claims**

   (a) *Classification*: Class 2 comprises the Term Loan Secured Claims against the Term Loan Borrowers.

   (b) *Treatment*: The Term Loan Secured Claims shall be Allowed under this Plan in an amount not less than $195,000,000 plus accrued and unpaid interest and fees. Each Holder of an Allowed Term Loan Secured Claim shall receive, in full and final satisfaction of such Allowed Term Loan Secured Claim, its Pro Rata share of: (i) Cash on the Effective Date from the Sale Proceeds in respect of its Term Loan Collateral, or (ii) such other treatment as may be agreed upon with the Holder of such Allowed Term Loan Secured Claim, on the one hand, and the Debtors, on the other hand, in each case, after satisfaction of Administrative Expense Claims and Priority Claims, as applicable. Pursuant to the Sale, it is contemplated that assets on which the Holders of Allowed Term Loan Secured Claims have Liens shall be sold to the Purchaser free and clear of such Liens, which Liens shall attach solely to the proceeds of such Holders' Collateral. On the full payment or other satisfaction of the obligations set forth in this paragraph, the Liens securing the Allowed Term Loan Secured Claims shall be deemed released, terminated and extinguished, in each case without further notice to or order of the Bankruptcy Court, act or action under applicable law, regulation, order or rule or the vote, consent, authorization or approval of any Person.

   (c) *Voting*: Class 2 is Impaired and the Holders of Class 2 Claims are entitled to vote to accept or reject the Plan.

3.      **Class 3 – Chicago Secured Claims**

(a)     *Classification*:   Class 3 comprises the Chicago Secured Claims against PCAA Chicago, LLC.

(b)     *Treatment*:  The Chicago Secured Claims shall be Allowed under the Plan in an amount not less than $3,967,000 plus accrued and unpaid interest and fees.  Each Holder of an Allowed Chicago Secured Claim shall, in full and final satisfaction of such Allowed Chicago Secured Claim, (i) be paid in full, in Cash, on the Effective Date from the Sale Proceeds in respect of its Chicago Collateral, or (ii) receive such other treatment as may be agreed upon with the Holder of such Allowed Chicago Secured Claim, on the one hand, and the Debtors, on the other hand, in each case, after satisfaction of Administrative Expense Claims and Priority Claims, as applicable.  Pursuant to the Sale, it is contemplated that assets on which the Holders of Chicago Secured Claims have Liens shall be sold to the Purchaser free and clear of such Liens, which Liens shall attach solely to the proceeds of such Holders' Collateral.  On the full payment or other satisfaction of the obligations set forth in this paragraph, the Liens securing the Allowed Chicago Secured Claims shall be deemed released, terminated and extinguished, in each case without further notice to or order of the Bankruptcy Court, act or action under applicable law, regulation, order or rule or the vote, consent, authorization or approval of any Person.

(c)     *Voting*:   Class 3 is Unimpaired and the Holders of Class 3 Claims are conclusively deemed to have accepted the Plan pursuant to Section 1126(f) of the Bankruptcy Code.  Therefore, the Holders of Claims in Class 3 are not entitled to vote to accept or reject the Plan.

4.      **Class 4 – RCL Secured Claims**

(a)     *Classification*:   Class 4 comprises the RCL Secured Claims against RCL Properties, LLC.

(b)     *Treatment*:  The RCL Secured Claims shall be Allowed under the Plan in an amount not less than $2,032,000 plus accrued and unpaid interest and fees.  Each Holder of an Allowed RCL Secured Claim shall, in full and final satisfaction of such Allowed RCL Secured Claims, (i) be paid in full, in Cash on the Effective Date from Sale Proceeds in respect of its RCL Collateral, or (ii) receive such other treatment as may be agreed upon with the Holder of such Allowed RCL Secured Claim, on the one hand, and the Debtors, on the other hand, in each case, after satisfaction of Administrative Expense Claims and Priority Claims, as applicable.  Pursuant to the Sale, it is contemplated that assets on which the Holders of RCL Secured Claims have Liens shall be sold to the Purchaser free and clear of such Liens, which Liens shall attach solely to the proceeds of such Holders' Collateral.  On the full payment or other satisfaction of the obligations set forth in this paragraph, the Liens securing the Allowed RCL Secured Claims shall be deemed released, terminated and extinguished, in each case without further notice to or order of the Bankruptcy Court, act or action under applicable law, regulation, order or rule or the vote, consent, authorization or approval of any Person.

(c)     *Voting*:  Class 4 is Unimpaired and the Holders of Class 4 Claims are conclusively deemed to have accepted the Plan pursuant to Section 1126(f) of the Bankruptcy Code.  Therefore, the Holders of Claims in Class 4 are not entitled to vote to accept or reject the Plan.

5.     **Class 5 – Other Secured Claims**

(a)     *Classification*:  Class 5 comprises the Other Secured Claims against the Debtors.

(b)     *Treatment:*  Each Holder of an Allowed Other Secured Claim shall receive, in full and final satisfaction of such Allowed Other Secured Claim: (i) Cash on, or as soon as practicable following, the Effective Date, equal to the Allowed amount of such Other Secured Claim; (ii) treatment that leaves unaltered the legal, equitable and contractual rights to which such Allowed Other Secured Claim entitles the Holder of such Claim; (iii) reinstatement of the Allowed portion of such Other Secured Claim; or (iv) such other treatment as may be agreed upon with the Holder of such Allowed Other Secured Claim, on the one hand, and the Debtors, on the other hand.  On the full payment or other satisfaction of the obligations set forth in this paragraph, the Liens securing the Allowed Other Secured Claims shall be deemed released, terminated and extinguished, in each case without further notice to or order of the Bankruptcy Court, act or action under applicable law, regulation, order or rule or the vote, consent, authorization or approval of any Person.

(c)     *Voting*:  Class 5 is Unimpaired and the Holders of Class 5 Claims are conclusively deemed to have accepted the Plan pursuant to Section 1126(f) of the Bankruptcy Code.  Therefore, the Holders of Claims in Class 5 are not entitled to vote to accept or reject the Plan.

6.     **Classes 6 through 19 – General Unsecured Claims**

(a)     *Classification*:  Classes 6 through 19, as set forth on Exhibit A hereto, comprise the General Unsecured Claims against the Debtors (which include any deficiency Claim of a Holder of an Allowed Term Loan Secured Claim against the Term Loan Borrowers (a "*Term Loan Lender Deficiency Claim*") and the Claim of a Term Loan Lender against PCAA Parent, LLC on account of the Term Loan Guaranty (a "*Term Loan Guaranty Claim*"); *provided* that each such Holder's Term Loan Guaranty Claim shall be reduced by the amount of such Holder's Allowed Term Loan Secured Claim satisfied from Sale Proceeds in respect of its Term Loan Collateral.

(b)     *Treatment*:  In full and final satisfaction of Allowed General Unsecured Claims, on, or as soon as practicable following, the Effective Date, each Holder of an Allowed General Unsecured Claim shall receive its Pro Rata share of:

(i)     Distributable value allocated to the specific Debtor entity such General Unsecured Claim is Allowed against for distribution purposes after satisfaction, as applicable, in full of all Allowed DIP Financing Claims, Allowed Administrative Expense Claims, Allowed Priority Claims, and Allowed

Prepetition Lender Claims; *provided* that no Holder of a General Unsecured Claim shall receive any distribution in excess of the Allowed amount of its General Unsecured Claim; *provided*, *further*, that to the extent the Allowed amount of all General Unsecured Claims asserted against a specific Debtor entity has been satisfied in full, any residual value will be distributed to the equity of any such Debtor entity;

(ii)     100% of the Liquidating Trust Interests in the Liquidating Trust (as further set forth in Article V herein).

(c)     *Voting*:  Classes 6 through 19 are Impaired and the Holders of Claims in Classes 6 through 19 are entitled to vote to accept or reject the Plan.

7.     **Class 20 – Equity Interests**

(a)     *Classification*:  Class 20 comprises the Equity Interests in the Debtors.

(b)     *Treatment*:  On the Effective Date, all Equity Interests of the Debtors (including any and all Claims subordinated under Section 510(b) of the Bankruptcy Code that are in any way arising from, of or in connection with such Equity Interests) shall be deemed cancelled and of no further force and effect, whether surrendered for cancellation or otherwise.  Holders of Equity Interests of the Debtors shall not receive or retain any property under the Plan on account of such Equity Interests after giving effect to the transactions contemplated by this Plan (including any distribution of any residual value).

(c)     *Voting*:  Class 20 is Impaired and the Holders of Class 20 Equity Interests are deemed to reject the Plan.

8.     **Class 21 – Intercompany Claims**

(a)     *Classification*:  Class 21 comprises the Intercompany Claims against the Debtors.

(b)     *Treatment*:  No distributions shall be made under the Plan on account of Intercompany Claims among the Debtors or any of their subsidiaries and any and all liability on account of such Intercompany Claims shall be deemed discharged on the Effective Date.

(c)     *Voting*:  Class 21 is Impaired and the Holders of Class 21 Intercompany Claims are deemed to reject the Plan.

# ARTICLE IV

## ACCEPTANCE OR REJECTION OF PLAN

A.     *Voting Classes*

Holders of Claims in each Impaired Class of Claims are entitled to vote as a Class to accept or reject the Plan.  Each Holder of a Claim in Class 2 and Classes 6 through 19 shall be entitled to vote to accept or reject the Plan.  Class 20 and Class 21 are deemed to reject the Plan because the Holders of Class 20 Equity Interests and Class 21 Intercompany Claims will receive no distribution on account of their Equity Interests and Intercompany Claims, respectively.

B.     *Acceptance by Impaired Classes*

An Impaired Class of Claims shall be deemed to have accepted the Plan if the (a) Holders (other than any Holder designated pursuant to Section 1126(e) of the Bankruptcy Code) of at least two-thirds in amount of the Claims actually voting in such Class have voted to accept the Plan and (b) Holders (other than any Holder designated pursuant to Section 1126(e) of the Bankruptcy Code) of more than one-half in number of the Claims actually voting in such Class have voted to accept the Plan.

C.     *Presumed Acceptance of Plan*

Class 1, Class 3, Class 4 and Class 5 are Unimpaired under the Plan, and, therefore, are presumed to have accepted the Plan pursuant to Section 1126(f) of the Bankruptcy Code.

D.     *Non-Consensual Confirmation*

To the extent that any Impaired Class rejects the Plan or is deemed to have rejected the Plan, the Debtors will request confirmation of the Plan pursuant to Section 1129(b) of the Bankruptcy Code.  The Debtors reserve the right to alter, amend, modify, revoke or withdraw this Plan or any document in the Plan Supplement, including to amend or modify it to satisfy the requirements of Section 1129(b) of the Bankruptcy Code, if necessary.

# ARTICLE V

## PROVISIONS FOR IMPLEMENTATION OF PLAN

A.     *Sale of Substantially All of Debtors' Assets*

This Plan contemplates one or more Sales of substantially all of the Debtors' assets to one or more Purchasers pursuant to Section 363 of the Bankruptcy Code, and provides for the orderly distribution of the Sale Proceeds as well as the proceeds or rights in any Remaining Assets under the terms and conditions of this Plan.  The Debtors have entered into a "stalking horse" APA and, in connection with such APA, filed a motion, in the Chapter 11 Cases, pursuant to Section 363 of the Bankruptcy Code, seeking entry of the Sale Order, and approval of the Sale at the conclusion of the Auction in connection with the Confirmation Hearing.  The Sale shall be consummated pursuant to this Plan.

On or before the Effective Date, the Debtors and the Purchaser shall take all steps necessary to consummate the Sale in accordance with the Sale Order and this Plan (such date referred to herein as the "*Closing Date*").  On the Closing Date, pursuant to the APA, the Debtors shall transfer the Purchased Assets to the Purchaser for the aggregate consideration of the Purchase Price plus the assumption by the Purchaser of the Assumed Liabilities. Distributions of the Sale Proceeds shall be in accordance with the DIP Credit Agreement, as applicable, and in accordance with the priorities set forth in and the other provisions of this Plan, as well as any subsequent Final Order(s) of the Bankruptcy Court with respect to the distribution of such amounts.  The descriptions of the distributions with respect to the Sale Proceeds contained herein, and the treatment provided for the Term Loan Lender Claims, are subject to, and qualified by, the Term Loan Lenders' right to credit bid pursuant to section 363(k) of the Bankruptcy Code and the BPO.

Upon consummation of the Sale, the Assumed Liabilities shall be obligations of the Purchaser and, from and after the Closing Date, shall no longer be obligations of the Debtors or their Estates, and any Holder of any Claim with respect thereto shall have no recourse on account of such Claim against the Debtors or their Estates.

B.      *Employee Incentive Plan*

The Debtors have filed a motion with the Bankruptcy Court seeking approval of the Employee Incentive Plan.  Any Employee Incentive Plan Payments, to the extent earned and payable, will be made in accordance with the Employee Incentive Plan Order entered by the Bankruptcy Court and funded with (i) financing under the DIP Credit Agreement or (ii) Sale Proceeds that would otherwise be distributed to the Term Loan Lenders.

C.      *Liquidating Trust*

1.      Establishment of Liquidating Trust

On the Effective Date, the Debtors and the Liquidating Trustee, on their own behalf and on behalf of Holders of Allowed General Unsecured Claims (and the Term Loan Lender Deficiency Claim) in Classes 6 through 19, shall execute the Liquidating Trust Agreement and shall take all other steps necessary to establish the Liquidating Trust for the benefit of the Liquidating Trust Beneficiaries in accordance with the Plan.

2.      Funding of Liquidating Trust

The Liquidating Trust will be irrevocably funded with the (i) Remaining Assets, (ii) Causes of Action and proceeds thereof, and (iii) Cash in the sum of $25,000 from the Sale Proceeds that would otherwise be distributed to Holders of General Unsecured Claims (the "*Liquidating Trust Funding*"), on the Effective Date of the Plan.

3.      Appointment of Liquidating Trustee

The Liquidating Trustee shall be appointed by the Holders of Allowed Term Loan Secured Claims unless such claims are paid off in full, in Cash from the Sale Proceeds of their Term Loan Collateral, in which case the Liquidating Trustee shall be appointed by the Holders of

Liquidating Trust Interests in accordance with the Liquidating Trust Agreement, or as otherwise determined by the Bankruptcy Court.

4.      Transfer and Vesting of Liquidating Trust Assets in Liquidating Trust

Notwithstanding any prohibition on assignability under applicable non-bankruptcy law, on the Effective Date and periodically thereafter if additional Liquidating Trust Assets become available, the Debtors shall be deemed to have automatically transferred to the applicable Liquidating Trust all of their right, title and interest in and to all of such additional Liquidating Trust Assets, and in accordance with Section 1141 of the Bankruptcy Code, all such assets shall automatically irrevocably vest in the Liquidating Trust free and clear of all Claims and Liens, subject only to the Allowed Claims of the applicable Liquidating Trust Beneficiaries, as set forth in the Plan, and the reasonable fees and expenses of administering the Liquidating Trust, including, without limitation, the reasonable fees and expenses of the Liquidating Trustee, as provided in the Liquidating Trust Agreement. Thereupon, the Debtors shall have no interest in or with respect to such additional Liquidating Trust Assets or the Liquidating Trust. In connection with the vesting and transfer of the Liquidating Trust Assets, including the Causes of Action and Remaining Assets, any attorney-client privilege, work-product protection or other privilege or immunity attaching to any documents or communications (whether written or oral) transferred to the Liquidating Trust shall vest in the Liquidating Trust. The Debtors and the Liquidating Trustee are authorized to take all necessary actions to effectuate the transfer of such privileges, protections and immunities. For the avoidance of doubt, the Liquidating Trust shall not be vested with the Excluded Actions.

5.      Preservation of Confidences and Attorney-Client Privilege

To effectively investigate, defend or pursue the Liquidating Trust Assets, including the Causes of Action and the Remaining Assets, the Debtors, the Liquidating Trust, Liquidating Trustee and all counsel thereto, must be able to exchange information with each other on a confidential basis and cooperate in common interest efforts without waiving any applicable privilege. Given the common interests of the parties and the Liquidating Trust's position as successor to the Liquidating Trust Assets, including the Causes of Action and the Remaining Assets, sharing such information in the manner described in the previous sentence, shall not waive or limit any applicable privilege or exemption from disclosure or discovery related to such information.

6.      Treatment of Liquidating Trust for Federal Income Tax Purposes; No Successor-in-Interest

The Liquidating Trust shall be established for the primary purpose of liquidating its assets, in accordance with Treas. Reg. § 301.7701-4(d), with no objective to continue or engage in the conduct of a trade or business, except to the extent reasonably necessary to, and consistent with, the liquidating purpose of the Liquidating Trust. Accordingly, the Liquidating Trustee shall in an expeditious but orderly manner, liquidate and convert to Cash the Liquidating Trust Assets, including the Causes of Action and the Remaining Assets, make timely distributions of the proceeds therefrom to the Liquidating Trust Beneficiaries, as the case may be, and not unduly prolong their duration. The Liquidating Trust shall not be deemed a successor in interest of the

Debtors for any purpose other than as specifically set forth herein or in the Liquidating Trust Agreement.

The Liquidating Trust is intended to qualify as a "grantor trust" for federal income tax purposes with the Liquidating Trust Beneficiaries treated as grantors and owners of the Liquidating Trust. For all federal income tax purposes, all parties (including, without limitation, the Debtors, the Liquidating Trustee, and the Liquidating Trust Beneficiaries) shall treat the transfer of the Liquidating Trust Assets by the Debtors to the Liquidating Trust, as set forth in the Liquidating Trust Agreement, as a transfer of such assets by the Debtors to the Liquidating Trust Beneficiaries entitled to distributions from the Liquidating Trust Assets, followed by a transfer by such beneficiaries to the Liquidating Trust. Thus, the Liquidating Trust Beneficiaries shall be treated as the grantors and owners of a grantor trust for federal income tax purposes.

As soon as practicable after the Effective Date, the Liquidating Trustee (to the extent that he or she deems it necessary or appropriate in his or her sole discretion) shall value the Liquidating Trust Assets in the Liquidating Trust, based on the good faith determination of the Liquidating Trust, and shall apprise the Liquidating Trust Beneficiaries of such valuation. The valuation shall be used consistently by all parties (including the Debtors, the Liquidating Trustee, and the Liquidating Trust Beneficiaries) for all federal income tax purposes. The Bankruptcy Court shall resolve any dispute regarding the valuation of the Liquidating Trust Assets.

The right and power of the Liquidating Trustee to invest the Liquidating Trust Assets transferred to the Liquidating Trust, the proceeds thereof, or any income earned by the Liquidating Trust, shall be limited to the right and power to (i) invest the Liquidating Trust Assets (pending distributions in accordance with the Plan) in (a) short-term direct obligations of, or obligations guaranteed by, the United States of America, (b) short-term obligations of any agency or corporation which is or may hereafter be created by or pursuant to an act of the Congress of the United States as an agency or instrumentality thereof or (c) such other investments as the Bankruptcy Court may approve from time to time; or (ii) deposit such assets in demand deposits or certificates of deposit at any bank or trust company, which has, at the time of the deposit, a capital stock and surplus aggregating at least $1,000,000,000 (collectively, the "*Permissible Investments*"); *provided*, *however*, that the scope of any such Permissible Investments shall be limited to include only those investments that a liquidating trust, within the meaning of Treas. Reg. § 301.7701-4(d), may be permitted to hold, pursuant to the Treasury Regulations, or any modification in the IRS guidelines, whether set forth in IRS rulings, other IRS pronouncements or otherwise.

Subject to the provisions of this Article V, the Liquidating Trustee shall distribute to the Liquidating Trust Beneficiaries all net Cash income plus all net Cash proceeds from the liquidation of the Liquidating Trust Assets (including as Cash for this purpose, all Cash equivalents) at such time intervals as decided by the Liquidating Trustee in his or her discretion, pursuant to the terms of the Plan. The Liquidating Trust shall make distributions no less frequently than once per twelve-month period, such period to be measured from the Effective Date; *provided*, *however*, that the Liquidating Trustee may, in his or her sole discretion, cause the Liquidating Trust to retain an amount of net Cash proceeds or net Cash income reasonably necessary to maintain the value of its assets or to meet Claims and contingent liabilities

(including Disputed Claims).  The Liquidating Trustee may also determine that in a given period or on the anniversary of the Effective Date, there are insufficient assets to make a distribution.

The Liquidating Trustee shall require any Liquidating Trust Beneficiary or other distributee to furnish to the Liquidating Trustee in writing his or its Employer or Taxpayer Identification Number as assigned by the IRS and the Liquidating Trustee may condition any distribution to any Liquidating Trust Beneficiary or other distributee upon receipt of such identification number.

7.      Liquidating Trustee's Authority and Duties

From and after the Effective Date, the Liquidating Trustee shall serve as trustee of the Liquidating Trust and shall have all powers, rights and duties of a trustee, as set forth in the Liquidating Trust Agreement.  Among other things, the Liquidating Trustee shall:  (i) hold and administer the Liquidating Trust Assets, including the Remaining Assets and Causes of Action, (ii)  have the sole authority and discretion on behalf of the Liquidating Trust to evaluate and determine strategy with respect to the Causes of Action and Remaining Assets, and to litigate, settle, transfer, release or abandon and/or compromise in any manner any and all such Causes of Action or Remaining Assets on behalf of the Liquidating Trust on any terms and conditions as it may determine in good faith based on the best interests of the Liquidating Trust Beneficiaries, (iii) have the power and authority to retain, as an expense of the Liquidating Trust, attorneys, advisors, other professionals and employees as may be appropriate to perform the duties required of the Liquidating Trustee hereunder or in the Liquidating Trust Agreement, (iv) make distributions to the Liquidating Trust Beneficiaries as provided in the Liquidating Trust Agreement and the Plan, (v) have the right to receive reasonable compensation for performing services as the Liquidating Trustee and to pay the reasonable fees, costs and expenses of any counsel, professionals, advisors or employees as may be necessary to assist the Liquidating Trustee in performing the duties and responsibilities required under the Plan and the Liquidating Trust Agreement, (vi) file, litigate, settle, compromise or withdraw objections to Claims as set forth in Article VIII.A herein, and (vii) have the right to provide periodic reports and updates to its Liquidating Trust Beneficiaries regarding the status of the administration of the Liquidating Trust Assets, including the Causes of Action and Remaining Assets, and the assets, liabilities and transfers of the Liquidating Trust.  For the avoidance of doubt, the Liquidating Trust shall not be funded with, and the Liquidating Trustee shall not have any authority or duties with respect to, the Excluded Actions.

8.      Termination of Liquidating Trust

The Liquidating Trust will terminate as soon as practicable, but in no event later than the fifth (5th) anniversary of the Effective Date; _provided_, _however_, that, on or prior to the date of such termination, the Bankruptcy Court, upon motion by a party in interest, may extend the term of the Liquidating Trust for a finite period, if such an extension is necessary to liquidate such Liquidating Trust Assets or for other good cause.  Notwithstanding the foregoing, multiple extensions may be obtained so long as Bankruptcy Court approval is obtained prior to the expiration of each extended term; _provided further, however_, that the Liquidating Trustee receives an opinion of counsel or a favorable ruling from the IRS that any further extension

would not adversely affect the status of the Liquidating Trust as a grantor trust for federal income tax purposes.

9.      Termination of Liquidating Trustee

The duties, responsibilities and powers of the Liquidating Trustee shall terminate in accordance with the terms of the Liquidating Trust Agreement.

10.      Exculpation; Indemnification

*The Liquidating Trustee, and its respective professionals, shall be exculpated and indemnified pursuant to and in accordance with the terms of the Liquidating Trust Agreement*.

11.      Preservation of Records and Documents

The Debtors, the Liquidating Trustee and any Purchaser or Purchasers, as applicable, shall:  (i) take commercially reasonable efforts to preserve all records and documents (including any electronic records or documents) related to the Liquidating Trust Assets (including the Causes of Action and Remaining Assets) for a period of five (5) years from the Effective Date or, if actions with respect to any applicable Causes of Action are then pending, until the Liquidating Trustee notifies the Liquidating Trust Beneficiaries such records are no longer required to be preserved; and (ii) provide the Liquidating Trust, the Liquidating Trust Beneficiaries and their respective counsel, agents and advisors, with reasonable access to such records and documents.

12.      Discovery

The Liquidating Trust shall be authorized to employ Bankruptcy Rule 2004 and any other bankruptcy tools of discovery as such are available prior to the Effective Date to the Estates.

D.      *Dismissal of Officers and Directors and Dissolution of Debtors and Board*

Upon the Effective Date, (i) the existing board of directors of each Debtor and any remaining officer of any Debtor shall be dismissed and (ii) each of the Debtors shall be deemed dissolved without any further action required on the part of the Debtors, the shareholders of the Debtors, or the officers and directors of the Debtors.

E.      *Binding Effect*

Except as otherwise expressly provided in the Plan, on and after the Effective Date, the Plan shall bind the Creditors' Committee and all Holders of Claims and Equity Interests.

F.      *Corporate Action*

Each of the matters provided for under the Plan involving any corporate action to be taken or required by the Debtors shall, as of the Effective Date, be deemed to have occurred and be effective as provided herein, and shall be authorized and approved without any requirement of further action by the Debtors, the Debtors' shareholders or the Debtors' board of directors.

Without limiting the foregoing, including, without limitation, Article V.F, the Debtors (and their board of directors) are hereby authorized in their sole discretion, to dissolve or otherwise terminate on the Effective Date (i) their existence, by filing a certificate of dissolution and a copy of the Confirmation Order with the Secretary of State of their respective States of incorporation, (ii) the existence of wholly owned non-Debtor subsidiaries, or (iii) any remaining health, welfare or benefit plans.

G.      *Indemnification of Directors and Officers*

On the Effective Date the Debtors shall purchase, continuing director and officer insurance coverage for a tail period of six years.

H.      *Cancellation of Notes, Instruments, Debentures and Equity Securities*

On the Effective Date, except to the extent provided otherwise in the Plan, any agreement, note, instrument, certificate or other document evidencing or creating any Claim or Equity Interest in or against any of the Debtors shall be automatically cancelled and terminated and of no further force and effect, without any further act or action and deemed surrendered without further act or action under any applicable agreement, law, regulation, order or rule and the obligations of the Debtors under the agreements, notes, instruments, certificates or other documents governing such Claims and Equity Interests shall be discharged.

I.      *Liquidating Companies*

Upon consummation of this Plan, each of the Debtor entities not sold pursuant to the Sale(s) shall dissolve and cease to exist and all Remaining Assets shall be vested in the Liquidating Trust.

## ARTICLE VI

## EXECUTORY CONTRACTS AND UNEXPIRED LEASES

A.      *Assumption and Rejection of Executory Contracts and Unexpired Leases*

Any executory contracts or unexpired leases that have not expired by their own terms on or prior to the Effective Date, (i) which the Debtors have not assumed and assigned or rejected with the approval of the Bankruptcy Court (whether as part of the Sale or otherwise), or (ii) that are not the subject of a motion to assume the same pending as of the Effective Date, shall be deemed rejected by the Debtors on the Effective Date, and the entry of the Confirmation Order by the Bankruptcy Court shall constitute approval of such rejections pursuant to Sections 365(a) and 1123 of the Bankruptcy Code, except to the extent that the Debtors identify any executory contracts or unexpired leases in the Plan Supplement which the Debtors do not intend to reject.

B.      *Rejection Claims; Cure of Defaults*

**If the rejection of an executory contract or unexpired lease results in damages to the other party or parties to such contract or lease, any Claim for such damages, if not heretofore evidenced by a Proof of Claim that has been timely Filed, shall be forever barred and shall not**

*be enforceable against the Debtors or the Liquidating Trust, as applicable, or their properties, successors or assigns, unless a Proof of Claim is timely Filed with the Claims Agent and served upon the Debtors or the Liquidating Trustee and their respective counsel on or before (x) thirty (30) days after the later to occur of (a) the Effective Date and (b) the date of entry of an order by the Bankruptcy Court authorizing rejection of a particular executory contract or unexpired lease, or (y) such other date as may be ordered by the Bankruptcy Court.*

*Any monetary amounts by which each executory contract and unexpired lease to be assumed is in default shall be satisfied, pursuant to Section 365(b)(1) of the Bankruptcy Code, by payment of the default amount in Cash on the Effective Date or on such other terms as the parties to each such executory contract or unexpired lease may otherwise agree. In the event of a dispute regarding (a) the amount of any cure payments, (b) the ability of the Debtors to provide "adequate assurance of future performance" (within the meaning of Section 365 of the Bankruptcy Code) under the contract or lease to be assumed, or (c) any other matter pertaining to assumption, the cure payments required by Section 365(b)(1) of the Bankruptcy Code shall be made following the entry of a Final Order resolving the dispute and approving the assumption. Pending the Bankruptcy Court's ruling on such dispute, the executory contract or unexpired lease at issue shall be deemed assumed by the Debtors unless otherwise ordered by the Bankruptcy Court.*

## ARTICLE VII

## PROVISIONS REGARDING DISTRIBUTIONS

A.    *Time and Method of Distributions*

1.    Any distributions and deliveries to be made under this Plan shall be made on the Effective Date or as soon as practicable thereafter, unless otherwise specifically provided for by this Plan. If any payment or act under this Plan is required to be made or performed on a date that is not a Business Day, then the making of such payment or the performance of such act may be completed on the next succeeding Business Day, but shall be deemed to have been completed as of the required date.

2.    Liquidating Trust Distributions

The Liquidating Trustee, on behalf of the Liquidating Trust, or such other Entity as may be designated in accordance with the Liquidating Trust Agreement, will make the distributions to Liquidating Trust Beneficiaries required under the Plan in accordance with the Liquidating Trust Agreement and in accordance with the priorities set forth herein and the other provisions of the Plan, and administer and liquidate any assets in the Liquidating Trust and otherwise wind down the Estates, including, without limitation, the following: (a) general administration costs (*e.g.*, trustee/trust fees, etc.), (b) access to and review of information for any and all potential Claims, (c) access to and review of information for any and all Causes of Action, (d) analysis and assessment related to Claims objection/resolution, (e) analysis and assessment related to Causes of Action, (f) preparation of Claims objection/resolution, (g) preparation of Causes of Action (excluding the actual prosecution thereof) and (h) distribution of proceeds (*e.g.*, claims agent, etc.). Whenever any distribution to be made under the Plan or the Liquidating Trust Agreement

is due on a day other than a Business Day, such distribution shall be made, without interest, on the immediately succeeding Business Day, but any such distribution will have been deemed to have been made on the date due.

The Liquidating Trust Assets, including all proceeds from the liquidation thereof, shall be distributed to the Liquidating Trust Beneficiaries by the Liquidating Trustee in the following order of priority:

(i)      First, to satisfy the expenses of administering the Liquidating Trust, including, without limitation, reasonable fees and expenses of any attorneys, advisors, other professionals and employees employed by the Liquidating Trustee; and

(ii)      Second, to the Holders of Liquidating Trust Interests, in accordance with the Pro Rata Liquidating Trust Interests afforded to the Liquidating Trust Beneficiaries (as determined by the Liquidating Trustee upon segregation of the Liquidating Trust Assets attributable to the Debtor(s) against which such Liquidating Beneficiaries hold General Unsecured Claims).

B.      *Reserve for Disputed Claims*

The Debtors or Liquidating Trustee may separately maintain a reserve for any distributable amounts required to be set aside on account of Disputed Claims and shall distribute such amounts (net of any expenses, including any taxes relating thereto), as provided herein and in the Liquidating Trust Agreement, as such Disputed Claims are resolved by Final Order, and such amounts shall be distributable in respect of such Disputed Claims as such amounts would have been distributable had the Disputed Claims been Allowed Claims as of the Effective Date, provided that no interest shall be distributable or accrue with respect thereto.

C.      *Manner of Distribution under Plan and Liquidating Trust*

Any distribution in Cash to be issued under the Plan or the Liquidating Trust Agreement shall, at the election of the issuer, be made by check drawn on a domestic bank or by wire transfer from a domestic bank.

D.      *Delivery of Distributions*

Subject to the provisions of Federal Rule of Bankruptcy Procedure 2002(g), and except as otherwise provided herein, distributions and deliveries to Holders of record of Allowed Claims shall be made at the address of each such Holder set forth on the Debtors' books and records unless superseded by the address set forth on Proofs of Claim filed by any such Holders. By the Effective Date, the Debtors shall provide the Liquidating Trustee with the addresses and other books and records relating to the Liquidating Trust Beneficiaries, including, without limitation, all taxpayer identification information.

E.    *Undeliverable Distributions*

1.    Holding of Undeliverable Distributions

If any distribution to the Holder of an Allowed Claim under the Plan or the Liquidating Trust Agreement is returned as undeliverable, no further distributions shall be made to such Holder unless and until the issuer of the distribution is notified in writing of such Holder's then-current address.   Any Holder ultimately receiving a distribution that was returned as undeliverable shall not be entitled to any interest or other accruals of any kind on such distribution.  Nothing contained in the Plan or the Liquidating Trust Agreement shall require the issuer of any distribution to attempt to locate any Holder of an Allowed Claim.

2.    Failure to Claim Undeliverable Distributions

Any Holder of an Allowed Claim that does not assert its rights pursuant to the Plan or the Liquidating Trust Agreement to receive a distribution within three (3) months from and after the date such distribution is returned as undeliverable shall have such Holder's Claim for such undeliverable distribution discharged and shall be forever barred from asserting any such Claim against the Debtors, the Liquidating Trust, the Liquidating Trustee and its respective professionals, or the Liquidating Trust Assets.   In such case, any consideration held for distribution on account of such Claim shall belong to the Liquidating Trust for distribution by the Liquidating Trustee to Liquidating Trust Beneficiaries in accordance with the terms of the Plan and the Liquidating Trust Agreement.  After final distributions have been made in accordance with the terms of the Plan and the Liquidating Trust Agreement, if the amount of undeliverable Cash remaining is less than $25,000, the Liquidating Trustee, in his or her sole discretion, may donate such amount to a charity.

F.    *Compliance with Tax Requirements/Allocation*

The issuer of any distribution under the Plan or the Liquidating Trust shall comply with all applicable tax withholding and reporting requirements imposed by any Governmental Unit, and all distributions pursuant to the Plan or the Liquidating Trust shall be subject to any such applicable withholding and reporting requirements.  For tax purposes, distributions received in respect of Allowed Claims will be allocated first to the principal amount of such Claims, with any excess allocated to unpaid accrued interest, if any.

G.    *Time Bar to Cash Payments*

Checks issued on account of Allowed Claims shall be null and void if not negotiated within forty-five (45) days from and after the date of issuance thereof.  Requests for reissuance of any check shall be made directly to the issuer of the check by the Holder of the Allowed Claim with respect to which such check originally was issued.  Any claim in respect of such a voided check shall be made within six (6) months from and after the date of issuance of such check.  After such date, all Claims in respect of voided checks shall be discharged and forever barred, and the Liquidating Trust shall be entitled to retain all monies related thereto for distribution to the Liquidating Trust Beneficiaries in accordance with the terms of the Plan and Liquidating Trust Agreement.

H.     *Distributions After Effective Date*

Distributions made after the Effective Date to Holders of Claims that are not Allowed as of the Effective Date, but which later become Allowed, shall be deemed to have been made on the Effective Date.  Except as otherwise specifically provided in the Plan or the Liquidating Trust Agreement, no interest shall be payable on account of any Allowed Claim not paid on the Effective Date.

I.     *Fractional Dollars; De Minimis Distributions*

Notwithstanding anything contained herein to the contrary, payments of fractions of dollars will not be made.  Whenever any payment of a fraction of a dollar under the Plan or the Liquidating Trust would otherwise be called for, the actual payment made will reflect a rounding of such fraction to the nearest dollar (up or down), with half dollars being rounded down.  No payment shall be made on account of any distribution less than twenty-five dollars ($25) with respect to any Allowed Claim unless a request therefor is made in writing to the issuer of such payment on or before ninety (90) days after the Effective Date; *provided*, *however*, the Liquidating Trustee may make a payment of any amount with respect to any Allowed Claim in its sole discretion.

J.     *Setoffs/Recoupment*

The Debtors or the Liquidating Trustee (as applicable) may, pursuant to applicable non-bankruptcy law, set off against any Allowed Claim and the distributions to be made pursuant to the Plan or Liquidating Trust Agreement on account thereof (before any distribution is made on account of such Claim), the Claims, rights and causes of action of any nature the Debtors or the Liquidating Trust may hold against the Holder of such Allowed Claim; *provided*, *however*, that neither the failure to effect such a setoff nor the allowance of any Claim hereunder shall constitute a waiver or release by the Debtors or Liquidating Trust of any such Claims, rights and causes of action that the Debtors or the Liquidating Trust may possess against such Holder; and, *provided*, *further*, that nothing contained herein is intended to limit the rights of any Creditor to rights of setoff prior to the Effective Date in accordance with the provisions of Sections 362 and 553 of the Bankruptcy Code.

K.     *Preservation of Subordination Rights*

Except as otherwise provided herein, all subordination rights and claims relating to the subordination by the Debtors or the Liquidating Trustee of any Allowed Claim shall remain valid, enforceable and unimpaired in accordance with Section 510 of the Bankruptcy Code or otherwise.

L.     *Waiver by Creditors of All Subordination Rights*

Except as otherwise ordered by the Bankruptcy Court, each Holder of a Claim shall be deemed to have waived all contractual, legal and equitable subordination rights that they may have, whether arising under general principles of equitable subordination, Section 510(c) of the Bankruptcy Code or otherwise, with respect to any and all distributions to be made under the Plan, and all such contractual, legal or equitable subordination rights that each Holder has

individually and collectively with respect to any such distribution made pursuant to this Plan shall be discharged and terminated, and all actions related to the enforcement of such subordination rights will be permanently enjoined.

M.      *Compromise and Settlement of Claims*

The distributions provided for herein represent the compromise and settlement within the meaning of Section 1123(b)(3) of the Bankruptcy Code and Bankruptcy Rule 9019, of any and all claims and issues that have been asserted, or may be asserted, against the Prepetition Lenders, claims under Section 506(c) of the Bankruptcy Code, claims with respect to the allocation or determination of values of any assets of the Estates, and the validity, priority and extent of the Prepetition Lender Claims.  Confirmation of the Plan shall constitute approval of such compromise and settlement in accordance with Bankruptcy Rule 9019, and, notwithstanding any Claims or defenses that may have been asserted or may be asserted against the Prepetition Lenders, upon the Effective Date and without any further action or order of any court, any and all such claims shall forever be barred, released, dismissed, with prejudice, and discharged, and the Confirmation Order shall so provide.

# ARTICLE VIII

## PROCEDURES FOR RESOLUTION OF DISPUTED, CONTINGENT AND UNLIQUIDATED CLAIMS

A.      *Prosecution of Objections to Disputed Claims*

Upon the Effective Date, the Liquidating Trustee shall be responsible for pursuing any objection to the allowance of all Disputed Claims with respect to which an objection has been filed with the Bankruptcy Court and notice thereof has been given to the Holder of the Disputed Claim.  Prior to the Effective Date, the Debtors shall have the right to object to the allowance of Claims with respect to which they dispute liability or allowance in whole or in part.

The Liquidating Trustee shall have the authority to file, settle, compromise or withdraw any objections to Disputed Claims (within any parameters as may be established by the Liquidating Trust Agreement) without approval of the Bankruptcy Court.  However, the Bankruptcy Court may approve any compromises and settlements in accordance with Bankruptcy Rule 9019.

Unless otherwise provided herein or ordered by the Bankruptcy Court, all objections to Disputed Claims shall be served and filed not later than one hundred eight (180) days after the Effective Date; *provided*, *however*, that this deadline may be extended upon motion by the Liquidating Trustee, without notice to Holders of Disputed Claims.

B.      *Estimation of Claims*

The Debtors, prior to the Effective Date, and thereafter the Liquidating Trustee in accordance with the Liquidating Trust Agreement, as applicable, may at any time request that the Bankruptcy Court estimate any contingent or unliquidated Claim pursuant to Section 502(c) of the Bankruptcy Code regardless of whether the Debtors or the Liquidating Trustee previously

have objected to such Claim or whether the Bankruptcy Court has ruled on any such objection. The Bankruptcy Court will retain jurisdiction to estimate any Claim at any time during litigation concerning any objection to any Claim, including, without limitation, during the pendency of any appeal relating to any such objection. Subject to the provisions of Section 502(j) of the Bankruptcy Code, in the event that the Bankruptcy Court estimates any contingent or unliquidated Claim, the amount so estimated shall constitute the maximum allowed amount of such Claim. If the estimated amount constitutes a maximum limitation on the amount of such Claim, the Debtors or Liquidating Trustee, as applicable, may pursue supplementary proceedings to object to the allowance of such Claim. All of the aforementioned objection, estimation and resolution procedures are intended to be cumulative and not necessarily exclusive of one another. Claims may be estimated and subsequently compromised, settled, withdrawn or resolved by any mechanism approved by the Bankruptcy Court.

C.    *Controversy Concerning Impairment*

If a controversy arises as to whether any Claims or Class of Claims are Impaired under the Plan, the Bankruptcy Court shall, after notice and a hearing, determine that controversy before the Confirmation Date.

D.    *Payments and Distributions on Disputed Claims*

1.    Notwithstanding any provision hereof to the contrary, any issuer of a distribution hereunder may, in its discretion, pay the undisputed portion of a Disputed Claim. Notwithstanding the foregoing, the issuer of a distribution hereunder will set aside for each Holder of a Disputed Claim such portion of Cash it believes solely in its discretion necessary to provide required distributions if that Claim were an Allowed Claim, either based upon the amount of the Claim as filed with the Bankruptcy Court or the amount of the Claim as estimated by the Bankruptcy Court.

2.    At such time as a Disputed Claim becomes, in whole or in part, an Allowed Claim, the issuer of a distribution hereunder shall distribute to the Holder thereof the distributions, if any, to which such Holder is then entitled under the Plan or the Liquidating Trust. Such distribution, if any, will be made as soon as practicable after the date that the order or judgment of the Bankruptcy Court allowing such Disputed Claim becomes a Final Order. No interest will be paid on Disputed Claims that later become Allowed, or with respect to any distribution in satisfaction thereof to a Holder.

## ARTICLE IX

## CONDITIONS PRECEDENT TO CONFIRMATION
## AND EFFECTIVE DATE OF THE PLAN

A.    *Conditions Precedent to Confirmation*

The following are conditions precedent to confirmation of this Plan that must be (i) satisfied or (ii) waived in accordance with Article IX.C below:

1.    The Sale Order shall have been entered by the Bankruptcy Court.

2.     The entry of an order by the Bankruptcy Court finding that the Disclosure Statement, which is in form and substance satisfactory to the Debtors and to the Term Loan Lenders, contains adequate information pursuant to Section 1125 of the Bankruptcy Code.

3.     The entry of the Confirmation Order by the Bankruptcy Court in form and substance satisfactory to the Debtors, to the Term Loan Lenders and to the DIP Lenders.

4.     The Plan Supplement and all of the schedules, documents, and exhibits contained therein shall have been filed in form and substance satisfactory to the Debtors and, to the extent adverse thereto, to the Term Loan Lenders and the DIP Lenders.

5.     The occurrence of the Confirmation Date.

B.     *Conditions Precedent to Effective Date of Plan*

The following are conditions precedent to the Effective Date of the Plan that must be (i) satisfied or (ii) waived in accordance with Article IX.C below:

1.     Confirmation shall have occurred and the Confirmation Order shall have been entered by the Bankruptcy Court.

2.     The Closing Date shall have occurred.

3.     There shall not be in effect on the Effective Date any (i) Order entered by a U.S. court, (ii) any order, opinion, ruling or other decision entered by any other court or governmental entity or (iii) United States or other applicable law staying, restraining, enjoining or otherwise prohibiting or making illegal the consummation of any of the transactions contemplated by the Plan.

4.     All other actions and documents necessary to implement the Plan shall have been effected or executed, including execution of the Liquidating Trust Agreement in form and substance satisfactory to the Debtors and, to the extent adverse thereto, to the Term Loan Lenders and to the DIP Lenders.

5.     The Liquidating Trust Agreement shall have been fully executed and the Liquidating Trust Assets shall have been transferred to the Liquidating Trust.

C.     *Waiver of Conditions Precedent*

Only the Debtors (and, as applicable, the Term Loan Lenders and DIP Lenders with the consent of the Debtors) may waive the conditions listed in Article IX of the Plan without notice to parties in interest or the Bankruptcy Court and without a hearing.

D.     *Effect of Non-Occurrence of Effective Date*

If the Confirmation Order is vacated, this Plan shall be null and void in all respects and nothing contained in this Plan or the Disclosure Statement shall:  (1) constitute a waiver or release of any Claims by or against, or any Equity Interests in, the Debtors; (2) prejudice in any

manner the rights of the Debtors or any other party; or (3) constitute an admission, acknowledgment, offer or undertaking by the Debtors in any respect.

## ARTICLE X

## RELEASE, EXCULPATION, INJUNCTIVE AND RELATED PROVISIONS

A.   *Mutual Release by Releasees*

*"Releasees" means the Purchaser, the Debtors, the Liquidating Trustee, each of the Holders of Equity Interests, each of the DIP Lenders, the DIP Agent, each of the Term Loan Lenders, the Administrative Agent, any Creditors' Committee and each member thereof, and each of their respective successors and predecessors and current and former control persons, shareholders, members, officers, directors, employees, affiliates and agents (and each of their respective attorneys, financial advisors, investment bankers, accountants, and other professionals retained by such persons).*

*As of the Effective Date, for good and valuable consideration, including, without limitation, the services of the Releasees to facilitate the Sale, the Plan and the expeditious restructuring of the Debtors, each of the Releasees shall be deemed to have unconditionally released and discharged one another from any and all Claims, obligations, rights, suits, damages, causes of action, remedies and liabilities whatsoever, including any Claims that could be asserted on behalf of the Debtors, whether known or unknown, foreseen or unforeseen, existing or hereafter arising, in law, equity or otherwise, that the Releasees or their subsidiaries would have been legally entitled to assert in their own right (whether individually or collectively) or on behalf of the Holder of any Claim or Equity Interest or other Person or Entity, based in whole or in part upon any act or omission, transaction, agreement, event or other occurrence taking place on or before the Effective Date; provided that these releases will have no effect on the liability of any Releasee arising from any act, omission, transaction, agreement, event or other occurrence, constituting willful misconduct, gross negligence, fraud or criminal conduct.  The releases set forth in this paragraph shall be binding upon and shall inure to the benefit of the Liquidating Trustee and any chapter 7 trustee in the event that the Chapter 11 Cases are converted to chapter 7.*

B.   *Releases by Holders of Claims*

*As of the Effective Date, for good and valuable consideration, each Holder of a Claim that has affirmatively voted to accept the Plan, or who, directly or indirectly, is entitled to receive a distribution under the Plan, including Persons entitled to receive a distribution via an attorney or agent shall be deemed to have unconditionally released and discharged the Releasees from any and all Claims, obligations, rights, suits, damages, causes of action, remedies and liabilities whatsoever, including any Claims that could be asserted on behalf of the Debtors, whether known or unknown, foreseen or unforeseen, existing or hereafter arising, in law, equity or otherwise, that such Holder of a Claim would have been legally entitled to assert in its own right (whether individually or collectively), based in whole or in part upon any act or omission, transaction, agreement, event or other occurrence taking place on or before the Effective Date, in any way relating or pertaining to (w) the purchase or sale,*

*or the rescission of a purchase or sale, of any security of the Debtors, (x) the Debtors or the operation or conduct of the business of the Debtors and their subsidiaries, (y) the Chapter 11 Cases and/or (z) the negotiation, formulation and preparation of the Sale and/or the Plan, or any related agreements, instruments or other documents; __provided__ that these releases will have no effect on the liability of any Releasee arising from any act, omission, transaction, agreement, event or other occurrence, constituting willful misconduct, gross negligence, fraud or criminal conduct. The releases set forth in this paragraph shall be binding upon and shall inure to the benefit of the Liquidating Trustee and any chapter 7 trustee in the event that the Chapter 11 Cases are converted to chapter 7.*

C.    __Injunction__

*Except as otherwise expressly provided in the Plan, all Holders of Claims and Equity Interests shall be permanently enjoined, from and after the Effective Date, from (a) commencing or continuing in any manner any action or other proceeding of any kind on any such Claim or Equity Interest against the Purchaser, the Debtors, their respective Estates or assets, or the other Releasees unless a previous order modifying the stay provided under Section 362 of the Bankruptcy Code was entered by the Bankruptcy Court; (b) enforcing, attaching, collecting or recovering by any manner or means of any judgment, award, decree or order against the Purchaser, the Debtors, their respective Estates or assets, or the other Releasees; and (c) creating, perfecting, or enforcing any encumbrance of any kind against the property or interests in property of the Purchaser, the Debtors, their respective Estates or assets, or the other Releasees, in each case in respect of any Claims arising prior to the Petition Date.*

D.    __Exculpation__

*The Purchaser, the Debtors, the Liquidating Trustee, the DIP Lenders, the DIP Agent, the Term Loan Lenders, the Administrative Agent, the Creditors' Committee, and their respective successors, predecessors, control persons, shareholders, members, officers, directors, employees, affiliates and agents (and their respective attorneys, financial advisors, investment bankers, accountants, and other professionals retained by such persons) shall neither have nor incur any liability to any Person or Entity (including any Holder of a Claim or Equity Interest) for any pre- or post-petition act taken or omitted to be taken in connection with or related to the formulation, negotiation, preparation, dissemination, implementation, administration, confirmation or occurrence of the Effective Date, the Disclosure Statement, the Plan, or any contract, instrument, release or other agreement or document created or entered into in connection with the Plan or any other prepetition or postpetition act taken or omitted to be taken in connection with, or in contemplation of, the restructuring of the Debtors.*

# ARTICLE XI

## VESTING AND PRESERVATION OF CAUSES OF ACTION

A.    *Vesting of Causes of Action*

Except as otherwise provided in the Plan, Causes of Action shall, on the Effective Date, automatically and irrevocably vest in the Liquidating Trust free and clear of liens, claims, encumbrances and interests.  The Liquidating Trustee, on behalf of the Liquidating Trust, shall have the exclusive right, authority, and discretion to institute, commence, pursue, prosecute, abandon, settle, or compromise any and all Causes of Action (under any theory of law, including, without limitation, the Bankruptcy Code, and in any court or other tribunal) without the consent or approval of any third party and without any further order of the Bankruptcy Court, except as otherwise provided herein or in the Liquidating Trust Agreement.  From and after the Effective Date, the Liquidating Trustee, in accordance with Section 1123(b)(3) of the Bankruptcy Code, and on behalf of the Liquidating Trust, shall serve as a representative of the Debtors' Estates and shall retain and possess the sole and exclusive right to commence, pursue, settle, compromise or abandon, as appropriate, any and all Causes of Action, whether arising before or after the Petition Date, in any court or other tribunal.

B.    *Reservation of Rights Regarding Causes of Action*

The Debtors and, after the Effective Date, the Liquidating Trustee, on behalf of the Liquidating Trust, reserve all rights to pursue any and all Causes of Action, and the Debtors hereby reserve the rights of the Liquidating Trust and the Liquidating Trustee, on behalf of the Liquidating Trust, to pursue, administer, settle, litigate, enforce and liquidate consistent with the terms and conditions of the Plan such Causes of Action.

Unless Causes of Action against a Person or Entity are expressly waived, relinquished, released, compromised or settled in the Plan, or any Final Order, the Debtors (before the Effective Date) and the Liquidating Trustee, on behalf of the Liquidating Trust (post-Effective Date), expressly reserve all Causes of Action for later adjudication and therefore, no preclusion doctrine or other rule of law, including, without limitation, the doctrines of *res judicata*, collateral estoppel, issue preclusion, claim preclusion, estoppel (judicial, equitable or otherwise) or *laches*, shall apply to such Causes of Action upon, after, or as a result of the confirmation or Effective Date of the Plan, or the Confirmation Order.  In addition, the Debtors and the Liquidating Trustee, on behalf of the Liquidating Trust and any successors in interest thereto, expressly reserve the right to pursue or adopt any Causes of Action not so waived, relinquished, released, compromised or settled that are alleged in any lawsuit in which the Debtors are a defendant or an interested party, against any Person or Entity, including, without limitation, the plaintiffs and co-defendants in such lawsuits.

# ARTICLE XII

## RETENTION OF JURISDICTION

Notwithstanding the entry of the Confirmation Order and the occurrence of the Effective Date, the Bankruptcy Court shall retain such jurisdiction over any matter arising under the Bankruptcy Code, or arising in or related to the Chapter 11 Cases or the Plan after Confirmation and after the Effective Date, and any other matter or proceeding that is within the Bankruptcy Court's jurisdiction pursuant to 28 U.S.C. § 1334 or 28 U.S.C. § 157, including, without limitation, jurisdiction to:

1.      Allow, disallow, determine, liquidate, classify, estimate or establish the priority or secured or unsecured status of any Claim or Equity Interest, including the resolution of any request for payment of any Administrative Expense Claim and the resolution of any and all objections to the allowance or priority of Claims;

2.      Grant or deny any applications for allowance of compensation or reimbursement of expenses authorized pursuant to the Bankruptcy Code or the Plan, for periods ending on or before the Effective Date;

3.      Resolve any matters related to the assumption, assumption and assignment or rejection of any executory contract and unexpired lease to which a Debtor is party or with respect to which a Debtor may be liable and to hear, determine and, if necessary, liquidate, any Claims arising therefrom;

4.      Ensure that distributions to Holders of Allowed Claims are accomplished pursuant to the provisions hereof;

5.      Decide or resolve any motions, adversary proceedings, contested or litigated matters and any other matters, including all Causes of Action and objections or estimations to Claims or Equity Interests, and grant or deny any applications involving a Debtor that may be pending on the Effective Date, or that, pursuant to the Plan, may be instituted by (i) the Liquidating Trustee or Liquidating Trust, or (ii) any other Person or Entity after the Effective Date; *provided*, *however*, that the Liquidating Trustee and the Liquidating Trust shall reserve the right to prosecute the Causes of Action in all proper jurisdictions;

6.      Enter such orders as may be necessary or appropriate to implement or consummate the provisions hereof and of all contracts, instruments, releases, indentures and other agreements or documents created in connection with the Plan, the Disclosure Statement or the Liquidating Trust Agreement;

7.      Resolve any cases, controversies, suits or disputes that may arise in connection with the consummation, interpretation or enforcement of the Plan, the Liquidating Trust Agreement or any Person's or Entity's obligations incurred in connection with the Plan or Liquidating Trust Agreement including those relating to determining the scope and extent of the Liquidating Trust Assets;

8.      Issue injunctions, enter and implement other orders or take such other actions as may be necessary or appropriate to restrain interference by any Person or Entity with consummation or enforcement of the Plan, except as otherwise provided herein;

9.      Resolve any cases, controversies, suits or disputes with respect to the releases, injunctions and other provisions contained in Article IX hereof and enter any orders that may be necessary or appropriate to implement such releases, injunctions and other provisions;

10.     Enter and implement any orders that are necessary or appropriate if the Confirmation Order is for any reason modified, stayed, reversed, revoked or vacated;

11.     Determine any other matters that may arise in connection with or related to this Plan, the Disclosure Statement, the Confirmation Order, the Liquidating Trust Agreement or any contract, instrument, release, indenture or other agreement or document created in connection with the Plan, the Disclosure Statement or the Liquidating Trust Agreement;

12.     Resolve any issues that arise in connection with the administration of and distributions from the Liquidating Trust; and

13.     Enter an order and/or Final Decree concluding the Chapter 11 Cases.

Notwithstanding any other provision in this article to the contrary, nothing herein shall prevent the Liquidating Trustee from commencing and prosecuting any Causes of Action before any other court or judicial body which would otherwise have appropriate jurisdiction over the matter and parties thereto, and nothing herein shall restrict any such courts or judicial bodies from hearing and resolving such matters.

## ARTICLE XIII

## MISCELLANEOUS PROVISIONS

A.      *Plan Supplement*

The Plan Supplement may be inspected in the office of the Clerk of the Bankruptcy Court or its designee during normal business hours. Holders of Claims and Equity Interests may obtain a copy of the Plan Supplement by contacting the Voting Agent, or by visiting http://chapter11.epiqsystems.com/pcaa. The documents contained in the Plan Supplement are an integral part of the Plan and shall be approved by the Bankruptcy Court pursuant to the Confirmation Order.

B.      *Dissolution of Creditors' Committee*

Upon the Effective Date, the Creditors' Committee shall be deemed dissolved, except with respect to, and to the extent of any applications for Professional Fee Claims or Creditors' Committee Member Expenses, and the Creditors' Committee Members and the Professionals retained by the Creditors' Committee shall be relieved and discharged of all duties related to the Chapter 11 Cases.

C.    *Payment of Statutory Fees*

All fees payable pursuant to Section 1930(a) of Title 28 of the United States Code, as determined by the Bankruptcy Court at the hearing pursuant to Section 1128 of the Bankruptcy Code, shall be paid for each quarter (including any fraction thereof) until the Chapter 11 Cases are converted, dismissed or closed, whichever occurs first, responsibility for which shall belong to the Liquidating Trustee and Debtors, as applicable.

D.    *Modification of Plan*

Subject to the limitations contained in the Plan:

1.    The Plan may be amended or modified by the Debtors (a) before the Confirmation Date, to the extent permitted by Section 1127 of the Bankruptcy Code; (b) after the Confirmation Date and prior to substantial consummation of the Plan, as defined in Section 1101(2) of the Bankruptcy Code, to the extent the Debtors institute proceedings in the Bankruptcy Court, pursuant to Section 1127(b) of the Bankruptcy Code, to remedy any defect or omission or reconcile any inconsistencies in the Plan or the Confirmation Order or to accomplish such matters as may be necessary or appropriate to carry out the purposes and effects of the Plan; *provided* that prior notice of such proceedings shall be served in accordance with the Bankruptcy Rules or Orders of the Bankruptcy Court; or (c) after the entry of the Confirmation Order, upon order of the Bankruptcy Court in accordance with Section 1127(b) of the Bankruptcy Code; *provided*, *further*, that the Plan will not be amended, modified or revoked without the consent of the Debtors, and the consent of the DIP Lenders and the Term Loan Lenders to the extent any amendment, modification or revocation is adverse to the DIP Lenders or Term Loan Lenders.

2.    The Debtors reserve the right to modify or amend the Plan upon a determination by the Bankruptcy Court that the Plan is not confirmable pursuant to Section 1129 of the Bankruptcy Code.  To the extent permissible under Section 1127 of the Bankruptcy Code without the need to re-solicit acceptances, the Debtors reserve the right to sever any provisions of the Plan that the Bankruptcy Court finds objectionable.

3.    After the Effective Date, the Liquidating Trustee may amend or modify, upon order of the Bankruptcy Court, the Plan in accordance with Section 1127(b) of the Bankruptcy Code or remedy any defect or omission or reconcile any inconsistency in the Plan in such manner as may be necessary to carry out the purpose and intent of the Plan.

E.    *Revocation of Plan*

The Debtors reserve the right to revoke or withdraw the Plan prior to the Confirmation Date and to file subsequent plans of reorganization or liquidation.  If the Debtors revoke or withdraw the Plan, or if Confirmation or the Effective Date does not occur, then (i) the Plan shall be null and void in all respects, (ii) any settlement or compromise embodied in the Plan (including the fixing or limiting to an amount certain any Claim or Equity Interest or Class of Claims or Equity Interests), assumption or rejection of executory contracts or leases effected by the Plan, and any document or agreement executed pursuant hereto, shall be deemed null and void, and (iii) nothing contained in the Plan shall (a) constitute a waiver or release of any Claims by or against, or any Equity Interests in, any Debtor or any other Person, (b) prejudice in any

manner the rights of such Debtor or any other Person, or (c) constitute an admission of any sort by any Debtor or any other Person.

F.      *Successors and Assigns*

The rights, benefits and obligations of any Person or Entity named or referred to herein shall be binding on, and shall inure to the benefit of, any heir, executor, administrator, successor or assign of such Person or Entity.

G.      *Reservation of Rights*

Except as expressly set forth herein, this Plan shall have no force or effect unless the Bankruptcy Court shall enter the Confirmation Order.  None of the filing of this Plan, any statement or provision contained herein, or the taking of any action by any Debtor with respect to this Plan, the Disclosure Statement or the Plan Supplement shall be or shall be deemed to be an admission or waiver of any rights of any Debtor with respect to the Holders of Claims or Equity Interests prior to the Effective Date.

H.      *Section 1146 Exemption*

Pursuant to Section 1146(a) of the Bankruptcy Code, under this Plan, (i) the issuance, distribution, transfer or exchange of any debt, equity security or other interest in the Debtors; (ii) the creation, modification, consolidation or recording of any mortgage, deed of trust, or other security interest, or the securing of additional indebtedness by such or other means; (iii) the making, assignment or recording of any lease or sublease; or (iv) the making, delivery or recording of any deed or other instrument of transfer under, in furtherance of, or in connection with, this Plan, including any deeds, bills of sale, assignments or other instrument of transfer executed in connection with any transaction arising out of, contemplated by, or in any way related to this Plan shall not be subject to any document recording tax, mortgage recording tax, stamp tax or similar government assessment, and the appropriate state or local government official or agent shall be directed by the Bankruptcy Court to forego the collection of any such tax or government assessment and to accept for filing and recording any of the foregoing instruments or other documents without the payment of any such tax or government assessment.

All subsequent issuances, transfers or exchanges of securities, or the making or delivery of any instrument of transfer by the Debtors in the Chapter 11 Cases, whether in connection with a sale pursuant to Section 363 of the Bankruptcy Code or otherwise, shall be deemed to be or have been done in furtherance of this Plan.

I.      *Further Assurances*

The Holders of Claims receiving distributions hereunder and all other parties in interest shall, from time to time, prepare, execute and deliver any agreements or documents and take any other actions as may be necessary or advisable to effectuate the provisions and intent of this Plan or the Liquidating Trust Agreement.

J.      *Service of Documents*

Any pleading, notice or other document required by the Plan to be served on or delivered upon the Debtors shall be sent by first class U.S. mail, postage prepaid, as follows:

> Milbank, Tweed, Hadley & M<sup>c</sup>Cloy LLP
> One Chase Manhattan Plaza
> New York, New York 10005
> Attn:   Matthew S. Barr, Esq.
>             Michael E. Comerford, Esq.

K.      *Transactions on Business Days*

If the date on which a transaction may occur under this Plan shall occur on a day that is not a Business Day, then such transaction shall instead occur on the next succeeding Business Day.

L.      *Filing of Additional Documents*

On or before the Effective Date, the Debtors may file with the Bankruptcy Court such agreements and other documents as may be necessary or appropriate to effectuate and further evidence the terms and provisions hereof.

M.      *Post-Effective Date Fees and Expenses*

From and after the Effective Date, the Liquidating Trustee, on behalf of the Liquidating Trust, shall, in the ordinary course of business and without the necessity for any approval by the Bankruptcy Court, pay the reasonable professional fees and expenses incurred by the Liquidating Trust, and any professionals retained by such Liquidating Trust, related to the consummation and to the implementation of this Plan, except as otherwise provided in the Liquidating Trust Agreement.

N.      *Severability*

The provisions of this Plan shall not be severable unless such severance is agreed to by the Debtors or, if after the Effective Date, by the Liquidating Trustee, on behalf of the Liquidating Trust, such severance would constitute a permissible modification of this Plan pursuant to Section 1127 of the Bankruptcy Code.

O.      *Conflicts*

To the extent any provision of the Liquidating Trust Agreement, the Disclosure Statement, or any document executed in connection therewith or any documents executed in connection with the Confirmation Order (or any exhibits, schedules, appendices, supplements or amendments to any of the foregoing) conflicts with, or is in any way inconsistent with, the terms of this Plan, the terms and provisions of the Confirmation Order shall govern and control.

P.      *Term of Injunctions or Stays*

Unless otherwise provided herein or in the Confirmation Order, all injunctions or stays in effect in the Chapter 11 Cases pursuant to Sections 105 or 362 of the Bankruptcy Code or any order of the Bankruptcy Court and still extant on the Confirmation Date (excluding any injunctions or stays contained in this Plan or the Confirmation Order), shall remain in full force and effect until the closing of the Chapter 11 Cases in accordance with Article XI.13 of the Plan. All injunctions or stays contained in this Plan or the Confirmation Order shall remain in full force and effect in accordance with their terms.

Q.      *Entire Agreement*

This Plan and the Plan Supplement supersede all previous and contemporaneous negotiations, promises, covenants, agreements, understandings and representations on such subjects, all of which have become merged and integrated into this Plan.

R.      *Closing of Chapter 11 Cases*

The Liquidating Trustee shall promptly, upon the full administration of the Chapter 11 Cases, file with the Bankruptcy Court all documents required by the Bankruptcy Rules and any applicable orders of the Bankruptcy Court to close the Chapter 11 Cases.

S.      *Change of Control Provisions*

Any acceleration, vesting or similar change of control rights under any employment, benefit or other arrangements triggered by the consummation of this Plan shall be waived or otherwise cancelled under this Plan.

[SIGNATURE ON NEXT PAGE]

Dated:  February 16, 2010

PCAA PARENT, LLC, on behalf of itself
and its affiliated debtors and debtors in possession

/s/ Charles Huntzinger_____
By:  Charles Huntzinger
Title:  President and Chief Executive Officer

<u>Exhibit A</u>

<u>Classes of General Unsecured Claims</u>

Class 6 – PCAA Parent, LLC

Class 7 –  PCAA Chicago, LLC

Class 8 – PCAA GP, LLC

Class 9 – PCAA LP, LLC

Class 10 – PCAA Properties, LLC

Class 11 – PCAA SP, LLC

Class 12 – Airport Parking Management, Inc.

Class 13 – PCAA Missouri, LLC

Class 14 – PCAA SP-OK, LLC

Class 15 – PCAA Oakland, LLC

Class 16 – Parking Company of America Airports, LLC

Class 17 – PCA Airports, Ltd.

Class 18 – Parking Company of America Airports Phoenix, LLC

Class 19 – RCL Properties, LLC