# EXHIBIT A

**Bidding Procedures**

# BIDDING PROCEDURES

Set forth below are the bidding procedures (the "Bidding Procedures") to be employed with respect to the Asset Purchase Agreement by and between PCAA Parent, LLC, and its affiliated debtors in possession that are parties to the Agreement (as defined herein) (collectively, the "Sellers"), and Corinthian-Bainbridge ZKS Holdings LLC (the "Buyer"), dated as of January 28, 2010 (including all exhibits, schedules and agreements attached thereto, the "Agreement"), with respect to the sale of substantially all of the assets of the Sellers and the assumption of certain liabilities of the Sellers as set forth in the Agreement,[1] together with the transfer to the Buyer (collectively, the "Sale") of the Sellers' rights and interests under certain related executory contracts and unexpired leases (the "Assumed Agreements") (collectively, the "Assets"). The Sale is subject to competitive bidding as set forth herein and to approval by the Bankruptcy Court pursuant to sections 363 and 365 of the Bankruptcy Code at a hearing scheduled for *May 14*, 2010 at *10:30 a.*m. or as soon after the Auction (as defined below) as the Bankruptcy Court's calendar will permit, but no later than May 21, 2010 (the "Sale Hearing").

## The Sale Hearing

At the Sale Hearing, the Sellers will seek entry of an order or orders, among other things, authorizing and approving the Sale (i) if no other Qualified Bid(s) (as defined below) is received, to the Buyer pursuant to the terms and conditions set forth in the Agreement or (ii) if another Qualified Bid(s) is received, to the Buyer or such other Qualified Bidder(s) (as defined below) as the Sellers, in the exercise of their business judgment (and in consultation with the Official Committee of Unsecured Creditors of the Sellers (the "Committee")) may determine to have made the highest or otherwise best offer or offers to purchase the Assets (the "Successful Bid"), consistent with the Bidding Procedures (the "Successful Bidder(s)"). The Sale Hearing (in consultation with the Committee) may be adjourned or rescheduled without notice, other than by an announcement of such adjournment at the Sale Hearing, provided that, unless such adjournment or rescheduling is at the request of the Bankruptcy Court, it is subject to the Buyer's consent, which may be withheld in its sole discretion.

## Bidding Process

The Sellers, in consultation with their legal and financial advisors and the Committee, shall (i) determine whether any person is a Qualified Bidder, (ii) coordinate the efforts of Qualified Bidders in conducting their respective due diligence investigations regarding the Assets and the Assumed Liabilities, (iii) receive bids from Qualified Bidders, and (iv) negotiate any bid made to purchase the Assets (collectively, the "Bidding Process"). Any person who wishes to participate in the Bidding Process must be a Qualified Bidder. Neither the Sellers nor their representatives shall be obligated to furnish any information of any kind whatsoever relating to the Assets or the Assumed Liabilities to any person who is not a Qualified Bidder. The Sellers shall have the right to adopt such other rules for the Bidding Process which, in their reasonable judgment (after consultation with the Committee) will better promote the goals of the Bidding Process and which are not materially inconsistent with any of the provisions of the Agreement, these Bidding Procedures, or of any Bankruptcy Court order.

---

[1] All capitalized terms not otherwise defined herein have the respective meanings ascribed to them in the Agreement.

## Participation Requirements

Unless otherwise ordered by the Bankruptcy Court for cause shown, to participate in the Bidding Process, each interested person (a "Potential Bidder") must deliver the following (unless previously delivered) to: SSG Capital Advisors, LLC, Five Tower Bridge, 300 Barr Harbor Drive, Suite 420, West Conshohocken, PA 19428, Attention: Robert Smith ("Banker"), by no later than 4:00 p.m. (Eastern Time) on March 31, 2010:

(i) An executed confidentiality agreement in form and substance satisfactory to the Sellers, which is no less favorable to the Sellers than the confidentiality agreement executed by the Buyer;

(ii) The identity of the ultimate equity owner(s) of the Potential Bidder (which shall be one or more individuals or, if the Potential Bidder is a publicly held entity, the identity of such entity and any owner (or affiliated group) of 10% or more of the voting equity thereof; and

(iii) Sufficient financial information to show the Potential Bidder's financial wherewithal to close the Sale and the Potential Bidder must express an intent to submit a bid that is not less than the Initial Overbid.

The Banker shall provide the Committee with copies of any information submitted by a Potential Bidder pursuant to these procedures.

A "Qualified Bidder" is a Potential Bidder that delivers the documents described in subparagraphs (i), (ii) and (iii) above, whom the Sellers, in consultation with the Committee, determine is reasonably likely to be able to consummate the Sale, if selected as the Successful Bidder, within a time frame acceptable to Sellers. The Buyer is deemed to be a Qualified Bidder.

No later than two (2) business days after Banker receives from a Potential Bidder all of the materials required by subparagraphs (i), (ii) and (iii) above, the Sellers, in consultation with the Committee, shall determine who is a Qualified Bidder and shall notify each Potential Bidder in writing, whether the Potential Bidder is a Qualified Bidder. At the same time that the Sellers notify a Potential Bidder that it is a Qualified Bidder, the Sellers shall (a) deliver to such Qualified Bidder a copy of the Agreement (including all schedules and exhibits thereto) and (b) allow such Qualified Bidder to conduct due diligence with respect to the Assets and the Assumed Liabilities as provided herein.

Each Potential Bidder, whether a Qualified Bidder or not, and its affiliates or joint venturers, as applicable, shall be deemed to have submitted to the exclusive jurisdiction of the Bankruptcy Court with respect to all matters relating to the Agreement, their bids, the Auction and the Sale.

### Due Diligence Access

Any party who has been approved as a Qualified Bidder shall be entitled to immediate access to all due diligence materials, including access to the Seller's online data room.

### Due Diligence

All due diligence requests shall be directed to the Banker at attention: Bob Smith (rsmith@ssgca.com) and Mike Gorman (mgorman@ssgca.com). Banker shall coordinate all reasonable requests for additional information and due diligence access from Qualified Bidders. Banker will afford Qualified Bidders access to Sellers' online data room, which shall contain the same documents made available to Buyer (including those documents or materials that reflect or respond to Buyer's own due diligence process and inquiries). Banker will respond to a Qualified Bidder's request for any additional due diligence information about the Assets as Banker, in consultation with Sellers and their other advisors and the Committee, determines to be reasonable and appropriate. Additional due diligence provided to any Qualified Bidder, including any documents or materials that reflect or respond to Buyer's own due diligence process and inquiries, will also be placed in Sellers' online data room. Sellers or their advisors shall promptly notify Buyer upon any such updates to the online data room. The Sellers shall not be obligated to furnish any due diligence information after the Bid Deadline (as defined below), and no conditions relating to the completion of due diligence shall be permitted to exist after the Bid Deadline.

### Bid Deadline

A Qualified Bidder that desires to make a bid shall deliver written copies of its bid to Banker not later than 4:00 p.m. (Eastern Time) on April 21, 2010 (the "Bid Deadline"). Banker shall then distribute a copy of each bid to the Sellers and their legal and other financial advisors and the Committee. Only Qualified Bidders that have submitted Qualified Bids prior to the Bid Deadline (as it may be extended by the Sellers in compliance with these Bidding Procedures) shall be entitled to bid at the Auction. The Sellers, in consultation with the Committee, may extend the Bid Deadline once or successively, but are not obligated to do so. If the Sellers extend the Bid Deadline, they shall promptly notify all Qualified Bidders of the extension.

### Bid Requirements

A bid is a written irrevocable offer from a Qualified Bidder (i) stating that such Qualified Bidder is prepared to purchase the Assets and assume the Assumed Liabilities upon the terms and conditions set forth in the asset purchase agreement substantially in the form of the Agreement (except for the terms relating to the Break-Up Fee and Expense Reimbursement) including, without limitation, for substantially all or a portion of the Assets, the transition services agreement substantially in the form of the Transition Services Agreement, (ii) accompanied by copies of such materials marked to show those amendments and modifications to the Agreement (the "Marked Agreement"), including, without limitation, the Transition Services Agreement (the "Marked Ancillary Agreements") that the Qualified Bidder proposes, in form and substance acceptable to the Sellers, and (iii) accompanied by (a) a certified or bank

check, or wire transfer or other immediately available funds, in the amount of five percent (5%) of the purchase price payable to the order of the Sellers as a good-faith deposit (the "Good Faith Deposit"), and (b) written evidence of available cash, a firm irrevocable commitment for financing or such other evidence of ability to consummate the transaction and to provide adequate assurance of future performance under the Assumed Agreements as the Sellers may request.

A bid will constitute a Qualified Bid only if the bid:

a. provides for the purchase of all or substantially all Assets for an aggregate purchase price that is greater than the sum of (i) the Purchase Price offered by the Buyer in the Agreement and (ii) the Break-Up Fee and Expense Reimbursement ("Buyer's Purchase Price"), or alternatively provides for the purchase of a portion of the Assets that Sellers determine in consultation with their advisors and the Committee when taken together with other Qualified Bids is in aggregate greater than the Buyer's Purchase Price;

b. is on terms that, in the Sellers' business judgment, in consultation with the Committee, are substantially the same or better than the terms of the Agreement, including, without limitation, the Transition Services Agreement;

c. is not conditioned on obtaining financing or any internal approval, or on the outcome or review of due diligence with respect to the Assets or the Assumed Liabilities or the Business, but may be subject to the accuracy in all material respects at the closing of specified representations and warranties or the satisfaction in all material respects at the closing of specified conditions, none of which shall be more burdensome when taken as a whole than those set forth in the Agreement;

d. contain a commitment to consummate the Sale pursuant to a chapter 11 plan within not more than 15 days after the Sale Hearing;

e. is irrevocable (in the form resulting from any modifications that may be made at the Auction) until the earlier of (i) the end of the business day following the closing and (ii) the withdrawal of the Assets for sale by the Sellers (the "Revocability Date");

f. does not request or entitle the bidder, other than the Buyer, to any breakup fee, termination fee, expense reimbursement or similar type of payment;

g acknowledges and represents that the bidder (i) has had an opportunity to inspect and examine the Assets and the Assumed Liabilities and to conduct any and all necessary due diligence with

4

respect thereto prior to making its bid, (ii) in making its bid, has relied solely on its own independent review, investigation and/or inspection of the Assets and the Assumed Liabilities, and (iii) did not rely on any written or oral statements, representations, promises, warranties or guaranties whatsoever, whether express, implied or by operation of law or otherwise regarding the Assets or the Assumed Liabilities, or the completeness of any information provided in connection therewith at the Auction, except as expressly stated in the Agreement or these Bidding Procedures;

h. fully discloses the identity of each entity that will be bidding for the Assets or otherwise participating in connection with such bid, and the complete terms of any such participation; and

i. includes evidence, in form and substance satisfactory to the Sellers, of authorization and approval from the bidder's board of directors (or comparable governing body) with respect to the submission, delivery and closing of the Marked Agreement and the Marked Ancillary Agreements.

A bid received from a Qualified Bidder before the Bid Deadline that meets all of the above requirements shall constitute a "Qualified Bid". Notwithstanding the foregoing, the Buyer shall be deemed a Qualified Bidder and the Agreement a Qualified Bid for all purposes in connection with the Bidding Process and the Auction.

### "As Is, Where Is"

The Sale shall be on an "as is, where is" basis and without representations or warranties of any kind, nature or description by the Sellers, its agents or its estate, except to the extent expressly set forth in the Agreement or the Marked Agreement, as the case may be. Except as otherwise provided in the Agreement or the Marked Agreement, as the case may be, all of the Sellers' right, title and interest in the Assets shall be sold free and clear of all interests, liens, charges, claims, pledges, security interests, options, voting trusts or similar restrictions on voting or transfer or other encumbrances (collectively, "Encumbrances") in accordance with section 363 of the Bankruptcy Code, such Encumbrances, if any, to attach to the net proceeds of the Sale, with the same priority as they attached to the relevant Assets.

### Auction

If any Qualified Bid(s) (other than the Buyer's bid) are received by the Bid Deadline, the Sellers will conduct an auction for the Assets (the "Auction"). If no other Qualified Bid(s) is received by the Bid Deadline, the Sellers will not conduct the Auction and shall designate the Buyer's bid as the Successful Bid for the purposes of these Bidding Procedures.

Prior to the Auction, the Sellers will notify all Qualified Bidders that submitted Qualified Bids and the Committee of the highest or otherwise best Qualified Bid, as determined in the Sellers' discretion after consultation with the Committee (the "Baseline Bid"). Sellers shall provide Buyer a copy of the Marked Agreement corresponding to the Baseline Bid no later than two (2) Business Days before the Auction.

The Auction shall take place at 10:00 a.m. (Eastern Time) on April 27, 2010, at the offices of Milbank, Tweed, Hadley & McCloy LLP, or such later time or other place as the Sellers shall notify all Qualified Bidders who have submitted Qualified Bids, it being understood that the Auction shall take place no sooner than two (2) Business Days after Buyer and other Qualified Bidders receive a copy of the Marked Agreement corresponding to the Baseline Bid.

The Auction shall be conducted in accordance with the following procedures: (i) only the Sellers, the Buyer, other Qualified Bidders who have timely submitted Qualified Bids, advisors of the Committee and the administrative agents and lenders for the Sellers' prepetition secured credit facilities shall be allowed to attend the Auction (and the legal and financial advisors to each of the foregoing); (ii) unless otherwise ordered by the Bankruptcy Court for cause shown or unless the Sellers after consultation with the Committee and upon consent of the Buyer, waive any requirements relating to the qualification of Qualified Bidders, only a Qualified Bidder who has submitted a Qualified Bid will be eligible to participate in the Auction; (iii) all Qualified Bidders must be present at the Auction in person or through a qualified representative; and (iv) once the Auction is commenced, all bids shall be made and received in one room, on an open basis, and all Qualified Bidders shall be entitled to be present for all bidding with the understanding that (a) the true identity of each Qualified Bidder shall be fully disclosed to all other Qualified Bidders, and (b) all material terms of all Qualified Bids will be fully disclosed to all Qualified Bidders participating in the Auction throughout the entire Bidding Process. The Sellers may employ and announce at the Auction additional procedural rules that are reasonable under the circumstances for conducting the Auction after consultation with the Committee.

At the Auction, Qualified Bidders (including the Buyer) will be permitted to increase their bids. The bidding shall start from the Baseline Bid. If the Baseline Bid is the Buyer's bid, the next bid submitted at the Auction must exceed the Buyer's bid (the Buyer's bid being inclusive of the Break-up Fee and Expense Reimbursement) by an amount at least equal to two hundred and fifty thousand dollars ($250,000) (the "Initial Overbid"). All subsequent overbids must be in increments of at least one hundred and fifty thousand dollars ($150,000) ("Subsequent Overbids"). For the purpose of evaluating the value of the consideration provided by subsequent bids, the Sellers will give effect to the Break-Up Fee and the Expense Reimbursement that may be payable to the Buyer under the Agreement and shall credit such amounts as part of any initial or subsequent bid submitted by Buyer. No other Qualified Bidder will be allowed to credit bid (excluding the Sellers' prepetition secured lenders who will be allowed to credit bid and participate in the Auction notwithstanding anything else herein; provided that the Committee reserves all of its rights to object to such credit bid) any allowed secured claims it may hold against the Sellers.

Immediately prior to the conclusion of the Auction, the Sellers, in consultation with their financial and legal advisors and the Committee, shall (i) review each Qualified Bid on the basis of its financial and contractual terms and the factors relevant to the Sale process and the best interests of the Sellers' estate, including those factors affecting the speed and certainty of consummating the Sale, (ii) identify the Successful Bid, (iii) identify the next highest or otherwise best offer after the Successful Bid (the "<u>Next Highest Bid</u>"), <u>provided</u> <u>that</u> the Buyer, in its sole discretion, may decline to be designated Next Highest Bid, and (iv) notify all Qualified Bidders present at the Auction of the identities of the Successful Bidder and the bidder that has submitted the Next Highest Bid (the "<u>Next Highest Bidder</u>"), and the respective amounts of their bids. At the Sale Hearing, the Sellers shall present the Successful Bid to the Bankruptcy Court for approval.

The Sellers may, in consultation with the Committee, adopt rules for the Bidding Process at the Auction that, in its judgment will better promote the goals of the Bidding Process, so long as they are not materially inconsistent with any of the provisions of the Agreement, the Bidding Procedures, or any Bankruptcy Court order, and so long as the Buyer consents to such changes (which consent shall not be unreasonably withheld).

## Acceptance of Successful Bid

The Sellers presently intend to sell the Assets to the Successful Bidder, whether such entity is the Buyer or another Qualified Bidder. However, the Sellers' presentation of the Successful Bid to the Bankruptcy Court for approval does not constitute the Sellers' acceptance of the bid (except with respect to the Buyer's bid reflected in the Agreement, as it may be modified at the Auction). The Sellers will be deemed to have accepted the Successful Bid only when such bid has been approved by the Bankruptcy Court at the Sale Hearing.

The Sellers and the Successful Bidder shall close the Sale within fifteen (15) days after the Sale Hearing, which can be extended in the Seller's reasonable discretion after consultation with the Committee (unless the Buyer is the Successful Bidder in which case such deadline can be extended upon the Seller's and Buyer's consent, after consultation with the Committee). In the event that the Successful Bidder fails to close the Sale during such time period for any reason (unless such date has been extended), then the Sellers shall be authorized, but not required, to close with the Next Highest Bidder (it being understood that the Buyer, in its sole discretion, may decline to be designated the Next Highest Bid at the auction), without notice to any other party or further court order. If the Sellers decide to close with the Next Highest Bidder, the Sellers and the Next Highest Bidder shall have an additional five (5) business days to close, which can be extended in the Sellers' reasonable discretion after consultation with the Committee.

The Sellers and the Successful Bidder shall close the Sale at the date the Plan becomes effective or, to the extent applicable, on the closing date otherwise set forth in the Successful Bid.

## Return of Good Faith Deposit

The Good Faith Deposits of all Qualified Bidders, including the Buyer, shall be held in one or more interest-bearing escrow accounts by the Sellers, but shall not become property of the Sellers' estate absent further order of the Bankruptcy Court. Upon the return of the Good Faith Deposits, their respective owners shall receive any and all interest that will have accrued thereon.

All Qualified Bids must remain open, notwithstanding Bankruptcy Court approval of the Sale to the Successful Bidder, until the Revocability Date; provided however, that the Buyer's bid need not remain open if it is not deemed the Successful Bid at the Auction. If the Successful Bidder (or the Next Highest Bidder, if applicable) timely closes the Sale, its Good Faith Deposit shall be credited towards the Purchase Price. If the Successful Bidder (or the Next Highest Bidder, if applicable) fails to timely close the Sale, its Good Faith Deposit shall be disposed of as provided in the Agreement or the applicable Marked Agreement.

## Modifications

The Sellers may, upon the consent of the Buyer and in consultation with the Committee, extend or alter any deadline contained herein if it determines that any such extension or alteration will better promote the goals of the Bidding Process. At or before the Sale Hearing, the Bankruptcy Court or the Sellers, in consultation with the Committee, may impose such other terms and conditions as it may determine to be in the best interests of the Sellers' estate, its creditors and other parties in interest (with the consent of the Buyer, such consent not to be unreasonably withheld).